# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CENTRO DE TRABAJADORES UNIDOS, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>SCOTT BESSENT, in his official capacity as Secretary of the Treasury, et al.,<br><br>    Defendants. | Civil Action No. 25-677 (DLF) |

## DEFENDANTS' JOINT RESPONSE TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND MOTION TO DISMISS

## INTRODUCTION

Plaintiffs, two immigrant rights advocacy groups based in Illinois, have filed suit to stop a supposed plan for the Internal Revenue Service to provide tax return information to the Department of Homeland Security ("DHS"). The only support Plaintiffs cite for this action is a February 2025 article published in *The Washington Post*. ECF No. 1 ¶ 29 n. 9. Now, based on one newspaper article, Plaintiffs move for a broad temporary restraining order to prevent the IRS from sharing any tax return information to any federal or state entities "assisting in the enforcement of immigration laws." Plaintiffs have not shown any irreparable or imminent harm necessitating a temporary restraining order. Furthermore, Plaintiffs cannot establish a likelihood of success on their ultimate relief because they lack standing to bring the claim under Article III and because they have failed to state a cause of action under the Administrative Procedure Act ("APA").

The Court should deny Plaintiff's motion for a temporary restraining order. And for the same reasons, this case should be dismissed.

## FACTUAL AND LEGAL BACKGROUND

### I.   Tax Return Information and Prohibition Against Disclosure

Plaintiffs allege that the IRS "will seek to transmit" tax return information, including Individual Tax Return Identification Numbers ("ITINs"), to DHS. ECF No. 1 ¶ 31. The IRS issues ITINs to alien taxpayers "for use in connection with filing requirements" under the Internal Revenue Code. 26 C.F.R. § 301.6109-1(d)(3)(i); *see also* 26 U.S.C. § 6109(i); *Hansen v. Dept. of Treasury*, 528 F.3d 597 (9th Cir. 2007). A taxpayer must submit a Form W-7 to apply for an ITIN. *See* 26 C.F.R. § 301.6109-1(d)(3)(ii). The Form W-7 asks for information including an applicant's mailing and foreign address, country of citizen, type of United States visa, and date of entry into the United States. *See id.*; Form W-7, *Application for IRS Individual Taxpayer*

*Identification Number*, *available at* https://www.irs.gov/pub/irs-pdf/fw7.pdf (last visited Mar. 17, 2025).

Section 6103 of the Internal Revenue Code sets forth the general rule "that 'returns' or 'return information' as defined therein shall be confidential." *Church of Scientology v. IRS*, 484 U.S. 9, 10 (1987); *see also* I.R.C. § 6103(a). "Congress has defined 'return information' broadly." *Lehrfeld v. Richardson*, 132 F.3d 1463, 1463-64 (D.C. Cir. 1998). It includes a taxpayer's identity; whether the taxpayer's return is subject to examination or other investigation or processing; and "any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability" under the Internal Revenue Code. 26 U.S.C. § 6103(b)(2)(A). The statute also contains numerous exceptions to the prohibition against the disclosure of return information. *See* 26 U.S.C. §§ 6103(c)-(o). And Section 7431 expressly creates a cause of action for violations of Section 6103 committed by United States officers or employees. 26 U.S.C. § 7431(a)(1).

## II.   Standards for Emergency Relief

"The standard for issuance of the 'extraordinary and drastic remedy' of a temporary restraining order . . . is by now well-established." *Aviles-Wynkoop v. Neal*, 978 F. Supp. 2d 15, 21 (D.D.C. 2013) (quoting *Munaf v. Geren*, 553 U.S. 674, 689 (2008)). It is "never awarded as of right." *Kim v. Fin. Indus. Reg. Auth., Inc.*, 698 F. Supp. 3d 147, 154 (D.D.C. 2023). A movant may be awarded such an extraordinary remedy only "upon a clear showing" that it is "entitled to such relief." *Winter v. Nat. Res. Def. Counsel, Inc.*, 555 U.S. 7, 22 (2008). To establish entitlement, Plaintiffs bear the burden of establishing (1) a likelihood of success on the merits, (2) irreparable harm in the absence of preliminary relief, (3) the balance of the equities favor the movant, and (4) an injunction is in the public interest. *Aviles-Wynkoop*, 978 F. Supp. 2d at 21.

3

The last two factors "merge when the Government is the party opposing the preliminary injunction." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

Irreparable harm is a threshold showing for a TRO applicant: it is the "basis of injunctive relief in the federal courts" and its absence is "grounds for refusing to issue a preliminary injunction." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) (internal quotation marks omitted) (discussing preliminary injunction standard). "'Irreparable harm' is an imminent injury that is both great and certain, and that legal remedies cannot repair." *City of Moundridge v. Exxon Mobil Corp.*, 429 F. Supp. 2d 117, 127 (D.D.C. 2006) (citing *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)).

### III.   Procedural History and Factual Background

Plaintiffs filed this suit on March 7, 2025, raising a claim under the APA. ECF No. 1 ¶ 37. They also claim a "non-statutory right of action to enjoin and declare unlawful official action that is ultra vires." ECF No. 1 ¶ 42. Plaintiffs moved for a temporary restraining order on March 14, 2025. ECF No. 11. That same day, the Court ordered Defendants to file opposition to the motion by March 17, 2025, and scheduled a hearing on Plaintiffs' motion for March 19, 2025.

As of March 17, 2025, the IRS has not released to the Department of Homeland Security any tax return information discussed in the complaint. *See* Declaration of Kathleen Walters ¶ 3, attached as **Exhibit A**. As of March 17, 2025, the IRS has also not received any requests for tax return information for immigration enforcement from President Trump under Section 6103(g)(1) or otherwise. *Id.* ¶ 4.

4

**ARGUMENT**

<u>Response to Motion for Temporary Restraining Order</u>

### I. Plaintiffs Cannot Succeed on the Merits of the Claim

Plaintiffs' request for a temporary restraining order should be denied because they cannot prevail on the merits of their claim. Plaintiffs lack standing to bring this suit and cannot plead a cognizable claim under the APA.

### A. Standing

In the TRO context, "plaintiff[s] must demonstrate a substantial likelihood of standing." *Doctors for Am. v. OPM*, --- F. Supp. 3d ---, 2025 WL 452707, at *3 (D.D.C. Feb. 11, 2025) (internal quotation marks omitted). To do so, they must provide evidence of specific facts that, if true, demonstrate a substantial likelihood that standing exists. *Nguyen v. U.S. Dept. of Homeland Sec.*, 460 F. Supp. 3d 27, 33 (D.D.C. 2020).

Under Article III, "a claimant must present an injury that is concrete, particularized, and actual or imminent; fairly traceable to the defendant's challenged behavior; and likely to be redressed by a favorable ruling." *Davis v. FEC*, 554 U.S. 724, 733 (2008) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). An organization can have standing on behalf of itself or its members. *See Elec. Privacy Info. Ctr. v. United States DOC*, 928 F.3d 95, 100–01 (D.C. Cir. 2019). For an organization to have direct standing, it must show "a concrete and demonstrable injury to [its] activities that is more than simply a setback to the organization's abstract social interests." *Id.* (quoting *Am. Soc. for Prevention of Cruelty to Animals v. Feld Entm't Inc.*, 659 F.3d 13, 25 (D.C. Cir. 2011)). Alternatively, an association can have associational standing representing its members if: "(1) at least one of [its] members has standing to sue in her or his own right, (2) the interests the association seeks to protect are germane to its purpose, and (3) neither the claim asserted nor the relief request requires the participation of an

5

individual member in the lawsuit." *Elec. Privacy*, 928 F.3d at 101 (quoting *Am. Libr. Ass'n v. FCC*, 401 F.3d 489, 492 (D.C. Cir. 2005)). Neither type of standing exists here.

1. *Plaintiffs Lack Direct Organizational Standing Because They Have Failed to Allege a Concrete, Particularized Imminent Injury*

Broadly, there is no direct organizational standing because there is no injury. A plaintiff can establish standing by showing "a substantial risk of future injury that is traceable to the Government defendants and likely to be addressed by an injunction against them." *Murthy v. Missouri*, 603 U.S. 43, 45–46 (2024). A potential future injury does not create standing unless it is "certainly impending." *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) (internal citations omitted). Standing based on an increased risk of future harm requires "*both* (i) *a substantially* increased risk of harm and (ii) *a substantial* probability of harm with that increase taken into account." *Public Citizen, Inc. v. NHTSA*, 513 F.3d 234, 237–38 (D.C. Cir. 2008) (internal citations omitted).

In the complaint, Plaintiffs have only requested that this Court issue an injunction requiring the IRS to follow the law on disclosing tax return information. *See* ECF No. 1 at 11 (requesting an injunction preventing disclosure of returns and return information "unless disclosure of such information is specifically permitted by an exception to the prohibition of section 6103(a)"). A plaintiff "whose only claim is an abstract interest in seeing that other parties follow the law" is not injured. *Indus. Energy Consumers of Am. v. FERC*, 125 F.4th 1156, 1164 (D.C. Cir. 2025). Similarly, a murky interest in protection "from the executive branch's alleged unwillingness to follow the law [] does not constitute a concrete injury sufficient for Article III standing." *Menoken v. Miles*, 270 F. Supp. 3d 200, 212 (D.D.C. 2017).

Nor have Plaintiffs alleged any other specific, concrete injury to themselves. Plaintiff Centro de Trabajadores Unidos ("CTU") describes itself as a "grassroots member-led community

6

organization and worker center serving Chicago's southeast side and south suburbs." ECF No. 11-2 ¶ 1. Its work includes "educating workers about their right to organize, sharing information about leadership opportunities and legal rights in immigrant communities, assisting workers [seeking] to establish business cooperatives, and engaging local parents who wish to improve [community] schools through volunteering with CTU's parent-mentor program." *Id.* And while CTU says that the risk of removal of its members "would increase significantly" if DHS obtained return information, *id.* ¶ 5, and that its members "would be at great risk of severe harm" resulting from "arrest, detention, and removal from the United States," *id.* ¶ 6, it does not identify how CTU itself, as opposed to its members, would be harmed. Likewise, Plaintiff Immigrant Solidarity DuPage ("ISD") "offers classes, cultural events, meetings and community education" through its center Casa DuPage. ECF No. 11-3 ¶ 1. It identifies risks to its members, but none to itself. *See id.* ¶¶ 5-6. Plaintiffs are primarily educational entities not focused on protecting tax return information or even challenging immigration enforcement. *See* ECF Nos. 11-2 and 11-3. At most, the organizations advocate for enhanced immigrant rights in the workplace. *See* ECF No. 11-2 ¶ 1, 11-3 ¶ 1. A theoretical release of tax return information to DHS would not hamper any of CTU or ISD's educational initiatives or their ability to advocate. At most, the alleged future action Plaintiffs seek to stop would at most be "a setback to [their] abstract social interests," which is insufficient to confer organizational standing. *Elec. Privacy*, 928 F.3d at 100- –01.

 2. *Plaintiffs Lack Associational Standing Because They Have Not Demonstrated that Any Particular Member Has Standing*

CTU and ISD also cannot show associational standing. First, they have failed to demonstrate that at least one of their members has standing in his or her own right. As this Court recently explained, an organization seeking associational standing "must point to a particular

member and establish she would have standing if she were a plaintiff herself." *AFL-CIO v. Dep't of Labor*, --- F. Supp. 3d ---, 2025 WL 543938, at *3 (D.D.C. Feb. 7, 2025). Where the Plaintiffs fail to identify a specific member who would suffer harm, it is not enough that their executives "submitted declarations that plaintiffs' members will be harmed." *Id.*

Even if Plaintiffs had submitted such a declaration, it would not necessarily be sufficient to show standing. First, without (1) specific details on the individual taxpayers affected, (2) knowing what they reported to the IRS, and (3) knowing which exemption is relevant to that specific taxpayer, it is impossible to determine whether the disclosure would in fact be unlawful. Tax return information can be disclosed to other Federal agencies under certain circumstances, including for criminal investigations not related to tax administration. For instance, the IRS "shall disclose return information (other than taxpayer return information)" to officers of another agency who are personally and directly engaged in a criminal investigation, provided the head of the agency makes an adequate written request. *See* 26 U.S.C. § 6103(i)(2). Depending on their individual status and conduct, undocumented immigrants can be criminally prosecuted. *See, e.g.*, 8 U.S.C. § 1253(a)(1)(A) (certain aliens who willfully remain in the United States for over 90 days after a final removal order is issued can be imprisoned for up to four years); 8 U.S.C. § 1326(a) (an alien who illegally reenters the United States can be imprisoned for up to two years). Thus, determining whether and under which exception to Section 6103(a) any particular taxpayer's return information could be lawfully disclosed requires examining the taxpayer's specific circumstances at the time of the offense. Likewise, without the taxpayer's specific circumstances, Plaintiffs cannot concretely show that the disclosure would be unlawful.

Second, any future harm to the member is too speculative to confer standing. The core harm to their members that plaintiffs identify is an increase in the risk of removal from the

8

United States. See ECF No. 11-2 ¶¶ 5-6; ECF No. 11-3 ¶¶ 5-6. But that is conjecture. Accepting it would require the Court to assume a future series of events in which (1) DHS requests that specific member's information from the IRS; (2) disclosure of the requested information would be illegal; (3) the IRS decides to disclose the information anyway; (4) access to the information substantially increases the risk of removal beyond what existed from the information DHS already had; and (5) including that increase, the member has a substantial probability for removal. *See Public Citizen*, 513 F.3d at 237 (standard for increased-risk-of-harm standing). That chain of events is too removed from the facts alleged in the complaint to confer standing.

### B. No Cause of Action Under APA

If a plaintiff is adversely affected by the action of a federal agency, the APA provides for judicial review of "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704; *see also* 5 U.S.C. § 702. An adequate remedy need not be identical to APA relief. *See Citizens for Responsibility & Ethics in Washington v. DOJ*, 846 F.3d 1235, 1245 (D.C. Cir. 2017). A remedy is considered "adequate" when there is legislative intent to "create a special, alternative remedy and thereby bar APA review." *Id.* at 1244. When a statute offers "an independent cause of action or an alternative review process," courts have found the remedy adequate. *Id.* at 1245 (quoting *El Rio Santa Cruz Neighborhood Health Center v. HHS*, 396 F.3d 1265, 1270 (D.C. Cir. 2005)). *See also Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988) ("§ 704 'does not provide additional judicial remedies in situations where the Congress has provided special and adequate review procedures.'"). If a plaintiff has an adequate legal remedy, it cannot state a cause of action under the APA. *See Perry Capital LLC v. Mnuchin*, 864 F.3d 591, 620-21 (D.C. Cir. 2017).

APA review is inappropriate because Congress has already created a specific legal remedy for unauthorized disclosures of tax return information—26 U.S.C. § 7431. Under Section

9

7431, a taxpayer whose tax return information has been unlawfully released is entitled to $1,000 per disclosure or actual damages. There is no indication in the statutory text that Congress intended to permit any other remedy for violations of Section 6103. Therefore, *if* the IRS releases tax return information to DHS, and *if* such disclosures violate Section 6103, then the affected taxpayers can obtain relief through an independent cause of action under Section 7431. Thus, theoretical future disclosures cannot be stopped under the APA.

### C. Equitable Relief is Inappropriate

Plaintiffs offer a second cause of action. They seek a "non-statutory" injunction and a finding that the IRS's proposed disclosures are *ultra vires*. However, equitable relief is "not available when a plaintiff has an adequate legal remedy" that is as efficient as equity, both in respect to the final relief and in the mode of obtaining it. *FDIC v. Bank of Am., N.A.*, 308 F. Supp. 3d 197, 202 (D.D.C. 2018). Here, as explained above, Congress created an adequate remedy at law. Section 7431 of the Internal Revenue Code provides a legal cause of action to a person whose tax return or return information is unlawfully disclosed. *See Sierra Club v. Trump*, 929 F.3d 670, 697 (9th Cir. 2019) (internal citations omitted) ("Congress may…limit a court's equitable power to enjoin acts violating federal law…where Congress has demonstrated an 'intent to foreclose' that form of relief…."). *See also Dalton v. Specter*, 511 U.S. 462, 477 (1994) ("The judicial power of the United States conferred by Article III of the Constitution is upheld just as surely by withholding judicial relief where Congress has permissibly foreclosed it, as it is by granting such relief where authorized by the Constitution or by statute."). Plaintiffs will no doubt argue that the legal remedy is inadequate because it does not stop the harm of removal or deportation. But removal is a separate harm from the harm of unlawful disclosure. It would not be carried out by any Defendants named in this action. And as explained above,

removal is too remote from the act of disclosing tax return information to be cognizable as a harm in this suit, so it also cannot form the basis of an equitable cause of action.

Even setting aside the issue of adequate legal relief, Plaintiffs cannot state a claim for relief based on a non-statutory *ultra vires* theory. To make such a claim, a plaintiff must show that, "(i) the statutory preclusion of review is implied rather than express; (ii) there is no alternative procedure for review of the statutory claim; and (iii) the agency plainly acts in excess of its delegated powers and contrary to a specific prohibition in the statute that is clear and mandatory." *DCH Reg'l Med. Ctr. v. Azar*, 925 F.3d 503, 509 (D.C. Cir. 2019) (internal citations omitted). Even if Plaintiffs can meet the first of those criteria—despite Congress creating an express remedy for precisely the type of harm Plaintiffs complain about—they cannot meet the other two. As explained above, Congress has provided taxpayers with the option of seeking judicial review of IRS disclosures of their return information in federal district court through Section 7431. And disclosing return information is not plainly in excess of the IRS's delegated powers or contrary to a specific prohibition in the statute. Section 6103 authorizes the IRS to disclose return information under numerous different circumstances. *See* 26 U.S.C. §§ 6103(g), (h), (i), (*l*). Because disclosing return information is well within the normal ambit of the IRS's duties, the IRS does not act ultra vires when it does so. *Cf. Ctr. for Biological Diversity v. Trump*, 453 F. Supp. 3d 11, 49-51 (D.D.C. 2020) (finding that plaintiffs stated ultra vires cause of action concerning transfer of funds from military construction housing to border wall construction, but not concerning use of funds from Treasury Forfeiture Fund).

Thus, equitable relief is not available to Plaintiffs.

## II. There Is No Irreparable Harm

Plaintiffs cannot demonstrate irreparable harm if the temporary injunction is denied. As discussed *supra*, it is not even clear there is harm without examining the disclosures on an

11

individual basis. There are scenarios in which undocumented immigrants can be charged with criminal offenses, and accordingly, disclosure of tax return information under Section 6103(i) could be permissible. *See, e.g.*, 8 U.S.C. § 1253(a). Plaintiffs tacitly acknowledge as much in their complaint. *See* ECF No. 1 at 11 (requesting injunction that allows disclosures "permitted by an exception" in § 6103). But "[c]ourts will not issue injunctions against administrative officers on the mere apprehension that they will not do their duty or will not follow the law." *Waite v. Macy*, 246 U.S. 606, 609 (1918). See also *NLRB v. Express Pub. Co.*, 312 U.S. 426, 435-36 (1941) ("[T]he mere fact that a court has found that a defendant has committed an act in violation of a statute does not justify an injunction broadly to obey the statute and thus subject the defendant to contempt proceedings if he shall at any time in the future commit some new violation unlike and unrelated to that with which he was originally charged."). The Court should presume that the IRS will follow section 6103 in making any disclosures, which means that there is no imminent, concrete harm to plaintiffs or their members.

In any event, any theoretical harm is also not irreparable. As explained above, Section 7431 creates an avenue for potentially unlimited monetary damages to rectify any harm caused by unlawful tax return disclosures.

### III.   Balance of the Equities and Public Interest

Plaintiffs claim that the balance of the equities weighs in favor of granting the injunction because there is no harm or injury if the Government is enjoined from releasing tax return information. That is patently untrue—Plaintiffs' proposed relief is so broad, it would stop, or at least chill, lawful disclosure requests under Section 6103(i) and potentially hamper lawful criminal investigations. As discussed *supra*, there is no way to determine whether a disclosure request falls under one of Section 6103's exceptions without examining the request—once one is made—on an individual basis. The Government and the public have an interest in the efficient

12

progress and resolution of criminal investigations. These factors should weigh against issuing the TRO.

### IV. The Government is Entitled to a Bond if a TRO is Issued.

If the Court grants Plaintiffs' Motion and issues a TRO, the United States requests that Plaintiffs first be required to post a bond to cover "costs and damages sustained [if the United States is later] found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Courts have broad discretion to "determine the appropriate amount of an injunction bond." *P.J.E.S. v. Wolf*, 502 F. Supp. 3d 492, 520 (D.D.C. 2020) (Sullivan, J.). *See also Delta Sigma Theta Sorority, Inc. v. Allen Professional Graphics Grp., LLC*, 212 F. Supp. 3d 116, 122 (D.D.C. 2014) (setting a bond under Fed. R. Civ. P. 65(c) at $5,000) (Lamberth, J.); *Delta Sigma Theta Sorority, Inc. v. Bivins*, 215 F. Supp. 3d 17, 22 (D.D.C. 2013) (Howell, J.) (setting a bond under Fed. R. Civ. P. 65(c) at $5,000). Bonds serve both to "compensate defendants who were mistakenly enjoined" and "force plaintiffs to 'think carefully' before accepting interlocutory relief." *Boynes v. Limetree Bay Ventures, LLC*, 110 F.4th 604, 611 (3d Cir. 2024).

Thus, if Plaintiffs' Motion for a TRO is granted, the United States asks this Court to first require Plaintiffs to post a bond under Fed. R. Civ. P. 65(c) in an amount reasonable under the circumstances of the case.

## MOTION TO DISMISS

The United States also requests that the Court dismiss Plaintiffs' complaint under Fed. R. Civ. P. 12(b)(1), for lack of subject matter jurisdiction, and 12(b)(6), for failure to state a claim.[1]

---

[1] Plaintiffs have not filed proof of service for the Attorney General and the IRS on the docket, so it does not appear that the United States has been properly served with process under Federal Rule of Civil Procedure 4(i). Although Plaintiffs have time to fix that defect, the United States also moves to dismiss for failure of service of process, *see* Fed. R. Civ. P. 12(b)(5), to avoid waiving that issue, *see* Fed. R. Civ. P. 12(h)(1).

Plaintiffs lack subject matter jurisdiction to bring this suit because they have no standing. *Hoffman v. Jeffords*, 175 F. Supp. 2d 49, 53 (D.D.C. 2001) (Lamberth, J.) (standing is a threshold jurisdictional issue). As discussed *supra*, Plaintiffs do not meet the fundamental standing requirement of being injured. *Davis*, 554 U.S. at 733. Plaintiffs cannot demonstrate either organizational or associational standing. Furthermore, they cannot state a claim for relief under the APA or under a non-statutory ultra vires theory. APA review is unavailable because undocumented immigrants have another adequate legal remedy if there is an unlawful release of tax return information—they can sue for unlimited damages under Section 7431. This Court should also deny Plaintiffs' request for equitable relief because there is a clear statutory remedy. Congress instead created an avenue for taxpayers to receive compensation in the rare event that their return information was unlawfully disclosed. Therefore, for the reasons described here and *supra* on pages five through ten, the United States moves that the complaint be dismissed.

## CONCLUSION

Plaintiffs, acting on nothing but a news report of alleged internal discussions at the IRS, have raced to stop the Government from taking some supposed future action. But not only are Plaintiffs not entitled to a TRO, they lack the basic jurisdictional requirements to bring a suit. Plaintiffs are not entitled to a TRO primarily because they cannot succeed on the merits of their claim—they lack standing and cannot state a claim for relief. There is also no irreparable harm, and a balance of the equities and the public interest weigh against granting a TRO. Thus, the United States asks for the Court not only to deny Plaintiffs' motion for a TRO, but to dismiss their case.

Date: March 17, 2025

*/s/ Andrew J. Weisberg*
Joseph A. Sergi (D.C. Bar No. 480837)
Senior Litigation Counsel

Andrew J. Weisberg (N.Y. Bar No. 5616321)
Trial Attorney
Tax Division
U.S. Department of Justice
P.O. Box 14198
Washington, DC 20044
Telephone: (202) 305-0868
Joseph.A.Sergi@usdoj.gov

*Counsel for Defendants*

# CERTIFICATE OF SERVICE

I certify that on March 17, 2025, I filed the foregoing Joint Response to Plaintiffs' Motion for a Temporary Restraining Order and Motion to Dismiss with the Clerk of Court using the CM/ECF system, which will serve counsel for the plaintiffs.

*/s/ Andrew J. Weisberg*
Andrew J. Weisberg
Trial Attorney, Tax Division
U.S. Department of Justice