UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Centro de Trabajadores Unidos, et al., <br><br> Plaintiffs, <br><br> v. <br><br> Scott Bessent, in his official capacity as Secretary of the Treasury, et al., <br><br> Defendants. | Civil Action No. 25-677 (DLF) |

REPLY IN SUPPORT OF
PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER

Kevin L. Herrera
   (Motion for *pro hac vice* forthcoming)
Mark H. Birhanu
   (Motion for *pro hac vice* forthcoming)
Raise the Floor Alliance
1 N. LaSalle Street, Suite 1275
Chicago, Illinois 60602
(312) 795-9115
kherrera@raisethefflooralliance.org

Nandan M. Joshi
   (DC Bar No. 456750)
Michael T. Kirkpatrick
   (DC Bar No. 486293)
Public Citizen Litigation Group
1600 20th Street, NW
Washington, DC 20009
(202) 588-7733
njoshi@citizen.org

Alan B. Morrison
   (DC Bar No. 073114)
George Washington Law School
2000 H Street, NW
Washington, DC 20052
(202) 994-7120
abmorrison@law.gwu.edu

*Counsel for Plaintiffs*

March 18, 2025

## INTRODUCTION

Plaintiffs Centro de Trabajadores Unidos and Immigrant Solidarity DuPage filed this lawsuit in response to credible reporting that the Department of Homeland Security (DHS) and its subagency Immigration and Customs Enforcement (ICE) had requested the Internal Revenue Service (IRS) to hand over the tax information of 700,000 individuals for immigration enforcement purposes.[1] DHS's request came less than two months after President Trump, on the first day of his term, issued an executive order that his administration would remove "all" undocumented individuals from the United States,[2] that agencies should start sharing their data to "maximize governmental efficiency and productivity,"[3] and that DHS should share data with the states.[4] The request also comes on the heels of ICE obtaining access to a database managed by the Department of Health and Human Services containing information about unaccompanied minors.[5]

Eight years ago, in response to immigrants' fears during the first Trump administration that their tax data would not be secure, the IRS assured immigrants that it lacked authority "to share tax data with ICE."[6] The IRS has not provided any such assurance this time. Notably, though, in responding to Plaintiffs' motion for a temporary restraining order (TRO) in this case, the IRS does

---

[1] Andrew Duehren, *Homeland Security Officials Push I.R.S. for 700,000 Immigrants' Addresses*, N.Y. Times, Feb. 25, 2025; Jacob Bogage et al., *DHS asks IRS for addresses of people believed to be in U.S. illegally*, Wash. Post., Feb. 28, 2025; @jacobbogage.bsky.social, Bluesky (Feb. 28, 2025, 11:14 pm), https://bsky.app/profile/jacobbogage.bsky.social/post/3ljc2oduenc25.

[2] Exec. Order 14165, § 2(d), 90 Fed. Reg. 8467, 8467 (Jan. 30, 2025); Exec. Order 14159, § 2, 90 Fed. Reg. 8443, 8443 (Jan. 29, 2025).

[3] Exec. Order 14158, 90 Fed. Reg. 8441 (Jan. 29, 2025).

[4] Exec. Order 14159, § 18, 90 Fed. Reg. at 8446 (Jan. 29, 2025).

[5] Ximena Bustillo, *ICE officers granted access to unaccompanied minors database*, NPR, Feb. 14, 2025.

[6] Maria Sacchetti, *Undocumented and paying taxes, they seek a foothold in the American Dream*, Wash. Post, Mar. 11, 2017.

1

not contend that 26 U.S.C. § 6103 authorizes it to share taxpayer information for purposes of immigration enforcement. Moreover, the IRS does not deny that DHS has requested the taxpayer information at issue in this case.[7] Indeed, the IRS has refused to assure Plaintiffs that it will not provide the information to DHS during the pendency of this litigation.

The IRS's principal response to Plaintiffs' motion is that the Court may not consider the merits of Plaintiffs' claims until it is too late to prevent the harm to Plaintiffs' members that an unlawful disclosure would cause. That is incorrect. Because the threat of an unlawful disclosure is real and, once actualized, cannot be undone, the Court should grant Plaintiffs' motion for a temporary restraining order to maintain the status quo until the issues raised in Plaintiffs' complaint can be addressed.

## ARGUMENT

**I.     Plaintiffs are likely to succeed on the merits of their claims.**

Defendants do not dispute that Plaintiffs are likely to succeed on the merits of their claims if the Court reaches the merits. Defendants' silence on the merits makes sense because section 6103 is crystal clear: "[r]eturns and return information shall be confidential" and may only be disclosed "as authorized" by statute. 26 U.S.C. § 6103(a). No matter how useful tax return information may be to the administration's immigration enforcement agenda, Congress has chosen to bar disclosure of private tax return information for that purpose.

Defendants' opposition to the TRO motion rests instead on arguments that the Court should not reach the merits of Plaintiffs' claims. Those arguments are wrong.

---

[7] *See* Decl. of Kathleen Evey Walters, ECF 13-1, ¶ 4 (stating that President Trump and the White House have not requested IRS tax information for immigration enforcement but failing to address reports that DHS has made such a request).

a.       **Plaintiffs are likely to demonstrate associational standing.**

To be entitled to a temporary restraining order, a plaintiff must demonstrate a "substantial likelihood of standing." *Nguyen v. U.S. Dep't of Homeland Sec.*, 460 F. Supp. 3d 27, 33 (D.D.C. 2020) (quoting *Elec. Privacy Inf. Ctr. v. Pres. Advisory Comm'n on Election Integrity*, 878 F.3d 371, 377 (D.C. Cir. 2017)). When the plaintiff is a membership organization, like Plaintiffs here, they have may assert associational standing if "'(1) at least one member of the association has standing to sue in her own right (based on a showing of harm, causation, and redressability), (2) the interests the association seeks to protect by suing on its members' behalf are germane to its purpose, and (3) neither the asserted claim nor the relief requested requires individual members to participate in the litigation.'" *Ctr. for Biological Diversity v. Regan*, 734 F. Supp. 3d 1 (D.D.C. 2024) (quoting *Ctr. for Biological Diversity v. EPA*, 56 F.4th 55, 66 (D.C. Cir. 2022)). An associational plaintiff may "survive a facial challenge to its standing without identifying specific, injured members by name in its complaint." *Ranchers-Cattlemen Action Legal Fund, United Stockgrowers of Am. v. United States Dep't of Agric.*, 573 F. Supp. 3d 324, 336 (D.D.C. 2021).

Defendants correctly do not challenge the latter two elements of associational standing. Plaintiffs have submitted declarations that demonstrate their interest advancing the rights and interests of immigrant workers, including with respect to the responsibility of workers to file tax returns and pay federal income taxes. Guajardo Decl., ECF 11-2; Cavazos Decl., ECF 11-3. And "when an association seeks prospective relief on behalf of its members, actual participation by individual members is generally not required." *Am. Ass'n of Cosmetology Sch. v. Devos*, 258 F. Supp. 3d 50, 67 (D.D.C. 2017).

Although Defendants argue that Plaintiffs were required to submit an individual member declaration to obtain relief at the TRO stage of the litigation, Opp. 8 (citing *AFL-CIO v. Dep't of*

3

*Labor*, No. 25-339, 2025 WL 543938, at *3 (D.D.C. Feb. 7, 2025)), that argument is incorrect. In a complaint, a plaintiff can rest on a general allegation of an Article III injury. *See Food & Water Watch, Inc. v. Vilsack*, 800 F.3d 905, 913 (D.C. Cir. 2015). By contrast, at summary judgment, a plaintiff must submit "affidavits or other evidence showing, through specific facts" that the plaintiff has suffered an injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 563 (1992). These principles, as applied to associational plaintiffs suing on behalf of their members, do not require plaintiffs to identify an injured member in the complaint, but normally require such identification at summary judgment. *See Ranchers-Cattlemen Action Legal Fund*, 573 F. Supp. 3d at 336. At interim stages of the litigation—for example, to obtain a preliminary injunction—a plaintiff "must show a substantial likelihood of success of [Article III] standing." *Food & Water Watch*, 800 F.3d at 913 (internal quotation marks omitted). Plaintiffs have satisfied the substantial-likelihood standard here. Plaintiffs' declarations confirm that they have members who use individual taxpayer identification numbers to file their federal tax returns because they are ineligible for Social Security numbers because of their immigration status. *See* Guajardo Decl., ¶ 2–4, ECF 11-2; Cavazos Decl., ECF 11-3; *see also Hotel & Rest. Emps. Union, Loc. 25 v. Smith*, 846 F.2d 1499, 1506 (D.C. Cir. 1988) ("Naming those [union] members adds no essential information bearing on the injury component of standing."). Thus, there is absolute certainty that Plaintiffs' members who use ITINs have submitted personal information—including their names and addresses—to the IRS. And Defendants do not dispute that the personal information of these taxpayers is protected under section 6103. In the context of the claims presented here, Plaintiffs' evidence is sufficient for this Court to find a "substantial likelihood of success" in establishing standing at summary judgment. To conclude otherwise would be to conflate the summary-judgment standard with the standard needed to support a TRO.

Nonetheless, to avoid any doubt, Plaintiffs have filed herewith a declaration from a member of Centro de Trabajadores Unidos that confirms the existence of an injured member.[8]

Defendants also contend that no member declaration would be sufficient without "(1) specific details on the individual taxpayers affected, (2) knowing what they reported to the IRS, and (3) knowing which exemption is relevant to that specific taxpayer." Opp. 8. Not so. The only "specific detail" relevant to Plaintiffs' claims is that their members who use ITINs because they are undocumented provide the IRS with personal information in connection with their duty to pay federal taxes. And as to "which exemption is relevant to that specific taxpayer," the disclosure of return and return information for immigration enforcement is not covered by *any* exception in section 6103.

Although, as Defendants point out, Opp. 8, certain criminal statutes relate to immigration matters, Congress specifically addressed when, and under what conditions, the IRS may disclose taxpayer information to support criminal investigations and prosecutions. *See* 26 U.S.C. § 6103(i). For instance, disclosures under section 6103(i)(1) for criminal investigations require the approval of federal district judge or magistrate judge, while disclosures under 6103(i)(e)(A) or (C) allow the IRS to disclose return or return information (but not taxpayer return information) "to the extent necessary" to advise a federal agency about criminal or terrorist activities. None of these exceptions for criminal matters authorize wholesale disclosure of taxpayer information to DHS or ICE for purely civil immigration enforcement purposes.

---

[8] Centro de Trabajadores Unidos member Jane Doe submits her declaration pseudonymously given her concerns that publicly identifying herself would place her at risk of being subjected to removal proceedings. *See* Doe Decl. ¶ 6. *See Advocs. for Highway & Auto Safety v. FMCSA*, 41 F.4th 586, 594 (D.C. Cir. 2022) ("anonymity is no barrier to standing on this record") (citing *NB ex rel. Peacock v. District of Columbia*, 682 F.3d 77, 86 (D.C. Cir. 2012)); *NAACP v. Trump*, 298 F. Supp. 3d 209, 225 (D.D.C. 2018) (finding associational standing based on anonymous affidavits from organization's members) (subsequent history omitted).

5

Finally, Defendants claim that Plaintiffs have not shown a substantial likelihood of standing because the risk of removal of Plaintiffs' members is "speculative." Opp. 8–9. But the President has made clear that he seeks to "[r]emov[e] promptly *all* aliens who enter or remain in violation of Federal law," Exec. Order 14165, § 2(d), 90 Fed. Reg. at 8467 (emphasis added), and the provision of taxpayer information to DHS would serve no purpose other than the President's immigration-enforcement agenda. The IRS could have stipulated that it will not provide ITIN taxpayer information to DHS during the pendency of this litigation. That it refused to do so demonstrates the need for a temporary restraining order.

  **b. Plaintiffs may pursue declaratory and injunctive relief.**

Defendants claim that 26 U.S.C. § 7431 bars the declaratory and injunctive relief that Plaintiffs seek under the Administrative Procedure Act (APA) and a non-statutory action for ultra vires conduct. Section 7431 authorizes a civil action for damages against an officer or employee who "knowingly, or by reason of negligence, inspects or discloses return or return information" in violation of section 6103. Contrary to Defendant's contention, section 7431 does not foreclose Plaintiffs' claims.

**1.** The APA provides that "final agency action for which there is no other adequate remedy in a court [is] subject to judicial review." 5 U.S.C.A. § 704. To determine "whether an alternative remedy is 'adequate' and therefore preclusive of APA review, [courts] look for 'clear and convincing evidence' of 'legislative intent' to create a special, alternative remedy and thereby bar APA review." *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, 846 F.3d 1235, 1244 (D.C. Cir. 2017) (*CREW*) (quoting *Garcia v. Vilsack*, 563 F.3d 519, 523 (D.C. Cir. 2009)). While "[a]n alternative that provides for *de novo* district-court review of the challenged agency action offers … evidence of Congress' will" to displace an APA remedy, *id.* at

6

1245, the potency of this evidence is fatally diminished where there is a significant "gap between the *relief* [the alternative] provides and the relief … [sought] under the APA," *id.* at 1246 (emphasis added). For example, the availability of "a naked money judgment against the United States" under an alternative statutory scheme is not "an adequate substitute for prospective relief" under the APA where a plaintiff seeks "entry of declaratory or injunctive relief that requires the [government] to modify future practices." *Bowen v. Massachusetts*, 487 U.S. 879, 905 (1988); *cf. Garcia*, 563 F.3d at 525 (holding that an alternative remedial scheme was adequate where a successful plaintiff could "obtain declaratory and injunctive relief against [an] agency itself, in addition to money damages, and such remedies would presumably deter [the agency] to the same extent as a successful APA claim").

Here, section 7431 does not provide the relief that Plaintiffs seek: declaratory and injunctive relief to ensure that Defendants do not disclose confidential taxpayer information to DHS, ICE, and other authorities for purposes of immigration enforcement. *Cf. Bowen*, 487 U.S. at 903 (noting that Congress withheld APA remedies when an adequate alternative remedy already existed so as not to "duplicate existing procedures for review of agency action"); *Radack v. U.S. Dep't of Justice*, 402 F. Supp. 2d 99, 104 (D.D.C. 2005) ("Because Radack seeks declaratory and injunctive relief in addition to damages, the Privacy Act does not provide an 'adequate remedy.'" (citing *Transohio Sav. Bank v. Dir., Off. of Thrift Supervision*, 967 F.2d 598, 608 (D.C. Cir. 1992)). Defendants' argument that "the statutory text [of section 7431]" does not indicate "that Congress intended to permit any other remedy," Opp. 10, is therefore misplaced. Because Congress did not expressly foreclose an APA remedy in section 7431, the relevant question is whether section 7431 *alone* represents "'clear and convincing evidence' of 'legislative intent'" to bar APA review." *CREW*, 846 F.3d at 1244. For the reasons explained above, the answer to that question is "no."

7

**2.** Defendants' attempt to use section 7431 to defeat Plaintiffs' ultra vires claim for declaratory and injunctive relief suffers from a similar defect. The "[m]ere existence of a remedy at law has not sufficed to warrant denial of equitable intervention." *Council of & for the Blind of Delaware Cnty. Valley, Inc. v. Regan*, 709 F.2d 1521, 1550 n.76 (D.C. Cir. 1983). And as the D.C. Circuit has held, the "enactment of the APA did not repeal the review of ultra vires action recognized long before." *Chamber of Com. of the U.S. v. Reich*, 74 F.3d 1322, 1328 (D.C. Cir. 1996) (quoting *Dart v. United States*, 848 F.2d 217, 224 (D.C. Cir. 1988)). Congress did not foreclose relief under an ultra vires claim simply by enacting a damages remedy for knowing or negligent violations of section 6103.

Defendants argue that, to state an *ultra vires* claim, a plaintiff must show that, "(i) the statutory preclusion of review is implied rather than express; (ii) there is no alternative procedure for review of the statutory claim; and (iii) the agency plainly acts in excess of its delegated powers and contrary to a specific prohibition in the statute that is clear and mandatory." Opp. 11 (quoting *DCH Reg'l Med. Ctr. v. Azar*, 925 F.3d 503, 509 (D.C. Cir. 2019)). But that heightened standard applies only where "Congress has precluded review," *Ctr. for Biological Diversity v. Trump*, 453 F. Supp. 3d 11, 47 (D.D.C. 2020). Congress has not done so here. In any event, an award of damages for a violation that has already occurred is not an "alternative procedure" for "review" of a claim for equitable relief to prevent the harm. And although Defendants argue that "disclosing return information is not plainly in excess of the IRS's delegated powers or contrary to a specific prohibition in the statute," Opp. 11, they do not even attempt to argue that disclosing taxpayer information to immigration authorities for purposes of immigration enforcement is authorized under section 6103.

## II.  Plaintiffs will suffer irreparable harm absent a TRO.

Plaintiffs' memorandum explained the irreparable harm that Plaintiffs' members face absent emergency relief. Mem. 13–16. Immigrants like many of Plaintiffs' members who work and earn income in the United States, but who lack authorization to do so, nonetheless have a legal obligation to file tax returns and pay taxes, which necessarily requires them to disclose sensitive personal information to the IRS. Absent legal assurances that the IRS will maintain the confidentiality of their personal information, these taxpayers face an impossible dilemma between complying with their tax obligations on the one hand and protecting themselves and their dependents from arrest and removal on the other. That harm to Plaintiffs' members goes above and beyond the privacy harms that arise when sensitive personal information is unlawfully shared to a wide group of people who are not authorized to view it.

Defendants do not seriously dispute the irreparable harm. Rather, they assert that certain disclosures of taxpayer information "could be permissible." Opp. 12. But Defendants do not contend that a disclosure of taxpayer information to immigration authorities for immigration enforcement—such as the bulk transfer of tax information of 700,000 immigrants that DHS reportedly seeks, *see supra* n.1—falls within any statutory exception. And they do not dispute that, if personal taxpayer data were transferred in mass to immigration authorities, there would be no feasible way to claw that information back and restore the status quo ante.

Defendants contend that the Court should find no irreparable harm because the "Court should presume that the IRS will follow section 6103 in making any disclosures." Opp. 12. But unlike in the first Trump administration, the IRS has not reassured the public that it will not "share tax data with ICE." *See supra* n.6. Defendants suggest that such reassurance is not needed because "one newspaper article" reported on DHS's request for taxpayer data. Opp. 12. But that newspaper article was based a review of DHS's memo to the IRS and backed up by "five people familiar with

9

the situation who spoke on the condition of anonymity out of fear of professional reprisals." Bogage Article, supra n.1. And, notably, although IRS's Chief Privacy Officer Kathy Walters asserts that the IRS "has not disclosed" tax return information "discussed in the complaint" to DHS, ECF 14-1, she has not denied that DHS has made the request or that the IRS had rejected it under the prior acting commissioner. The absence of such reassurance is especially troubling because that acting commissioner has been replaced by a new acting commissioner who is reportedly receptive to the request. *Id*.

Finally, the possibility of money damages under section 7431 does not foreclose a finding of irreparable harm justifying grant of a TRO. Even putting aside that damages cannot remedy the harm that unlawful disclosure would cause in this case, section 7431 does not preclude a court from issuing declaratory relief to plaintiffs faced with "uncertainty and insecurity" about the lawfulness of a disclosure under section 6103. *See Tierney v. Schweiker*, 718 F.2d 449, 456 (D.C. Cir. 1983). Whether or not declaratory relief at the end of this litigation would obviate the need for a permanent injunction, *see id*., temporary interim relief is necessary to prevent the IRS from disclosing return information for immigration purposes while this litigation is ongoing and to ensure that this Court can reach a final decision on the merits of Plaintiffs' claims before any unlawful disclosure occurs.

**III.    The balance of equities and the public interest support grant of a TRO.**

Plaintiffs have explained that the equities and the public interest favor grant of a TRO, especially in light of the "extremely high likelihood of success" of Plaintiffs' claim that section 6103 does not authorize disclosure of tax information for immigration enforcement purposes. Mem. 16–17. Defendants' only basis for disputing that the equities and the public interest favor grant of a TRO is their concern that a TRO would prohibit the IRS from disclosing return information "on an individual basis" pursuant to the authorized exception for criminal

10

investigations under section 6103(i). Opp. 12. It would not. Plaintiffs' claims do not concern individualized requests for tax information in accordance with the terms of section 6103(i). Rather, Plaintiffs' claims address the threatened mass transfer of information to DHS, ICE, or other authorities for the purpose of identifying individuals for removal from the United States—a purpose that Congress did not authorize.

## IV. The Court should not require a bond.

Defendants briefly suggest that, if the Court issues a TRO, it should require Plaintiffs to post security under Federal Rule of Civil Procedure 65(c), but Defendants have not even hinted at what kind of costs they would incur from *not* complying with DHS's request for information required to be kept confidential under section 6103. "Courts in this Circuit have found [that] the Rule 'vests broad discretion in the district court to determine the appropriate amount of an injunction bond,' including the discretion to require no bond at all." *Simms v. District of Columbia*, 872 F. Supp. 2d 90, 107 (D.D.C. 2012) (cleaned up). Given that Plaintiffs' claims do not concern the expenditure of money or monetary damages, and given that Defendants do not even attempt to grapple with the merits of Plaintiffs' claims, a bond would not be appropriate in this case. *See also NRDC v. Morton*, 337 F. Supp. 167, 168 (D.D.C. 1971) (imposing nominal bond where substantial security "would have the effect of denying the plaintiffs their right to judicial review of administrative action").

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' motion for a TRO.

Dated: March 18, 2025                                              Respectfully submitted,

                                                             /s/ Michael T. Kirkpatrick

Kevin L. Herrera                                              Michael T. Kirkpatrick
   (Motion for *pro hac vice* forthcoming)             (DC Bar No. 486293)
Mark H. Birhanu                                               Nandan M. Joshi
   (Motion for *pro hac vice* forthcoming)             (DC Bar No. 456750)
Raise the Floor Alliance                                      Public Citizen Litigation Group
1 N. LaSalle Street, Suite 1275                               1600 20th Street, NW
Chicago, Illinois 60602                                       Washington, DC 20009
 (312) 795-9115                                               (202) 588-7733
kherrera@raisethefloolralliance.org                           njoshi@citizen.org

                                                      Alan B. Morrison
                                                         (DC Bar No. 073114)
                                                   George Washington Law School,
                                                   2000 H Street, NW
                                                   Washington, DC 20052
                                                   (202) 994-7120
                                                   abmorrison@law.gwu.edu