# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CENTRO DE TRABAJADORES UNIDOS,
    9805 S. Ewing Ave.
    Chicago, IL 60617,

IMMIGRANT SOLIDARITY DUPAGE,
    311 S. Naperville Rd.
    Wheaton, IL 60187,

SOMOS UN PUEBLO UNIDO,
    1804 Espinacitas St.
    Santa Fe, NM 87505,

and

INCLUSIVE ACTION FOR THE CITY,
    2900 E Cesar E Chavez
    Los Angeles, CA 90033,

        Plaintiffs,

        v.

SCOTT BESSENT,
in his official capacity as Secretary of the Treasury,
    1500 Pennsylvania Ave., NW
    Washington, DC 20220,

INTERNAL REVENUE SERVICE,
    1111 Constitution Ave., NW
    Washington, DC 20224,

MELANIE KRAUSE,
in her official capacity as acting Commissioner of
Internal Revenue,
    1111 Constitution Ave., NW
    Washington, DC 20224,

DEPARTMENT OF HOMELAND SECURITY,
    245 Murray Lane, SW
    Washington, DC 20528,

KRISTI NOEM,
in her official capacity as Secretary of Homeland
Security,
    245 Murray Lane, SW
    Washington, DC 20528,

Civil Action No.  25-677 (DLF)

U.S. IMMIGRATION AND CUSTOMS
ENFORCEMENT
    500 12th St., SW
    Washington, DC 20536

and

TODD M. LYONS,
in his official capacity as acting Director of U.S.
Immigration and Customs Enforcement,
    500 12th St., SW
    Washington, DC 20536

                    Defendants.

**AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1.      Plaintiffs Centro de Trabajadores Unidos, Immigrant Solidarity DuPage, Somos Un Pueblo Unido, and Inclusive Action for the City file this action seeking declaratory and injunctive relief against Defendants Scott Bessent, in his official capacity as Secretary of the Treasury; the Internal Revenue Service (IRS); Melanie Krause, in her official capacity as acting Commissioner of Internal Revenue; the Department of Homeland Security (DHS); Kristi Noem, in her official capacity as Secretary of Homeland Security; U.S. Immigration and Customs Enforcement (ICE); and Todd M. Lyons, in his official capacity as acting Director of ICE.

2.      Defendants Bessent, IRS, and Krause (collectively, Treasury Defendants) are agency and agency officials with control over records submitted to the IRS by taxpayers and others in connection with the payment of federal taxes. Defendants DHS, Noem, ICE, and Lyons (collectively, DHS Defendants) are the agency and agency officials charged with enforcement of federal immigration laws, including the authority to locate, arrest, and remove individuals not authorized to be present in the United States.

3.      This action seeks to prevent the unlawful disclosure and inspection of taxpayer information—what is referred to in the Internal Revenue Code (IRC) as return and return

information—of individuals not authorized to be present in the United States for purposes of enabling DHS Defendants to locate such individuals to enforce the immigration laws. The IRC requires such individuals to file tax returns and pay federal taxes notwithstanding their immigration status. Pursuant to congressional authorization, the IRS has developed a program for assigning individual taxpayer identification numbers (ITINs) to these individual taxpayers, who are not eligible for Social Security numbers (SSNs) due to their immigration status.

4.      The IRC carefully prescribes the circumstances in which taxpayer information may be disclosed or inspected for non-tax purposes. The IRC does not permit disclosure or inspection of taxpayer information to facilitate the civil enforcement of immigration laws. Although the IRC permits disclosure and inspection of taxpayer information if relevant to a criminal investigation or proceeding, it does not authorize the IRS to disclose taxpayer information to criminal investigators for the purpose of locating an individual, unless a court determines, upon application by Department of Justice officials, that the individual is a fugitive from justice.

5.      Defendants seek to circumvent these restrictions to enable DHS Defendants to use IRS records to confirm the location of individuals subject to immigration enforcement. Under Defendants' reported plan, DHS Defendants would provide the IRS with approximately 700,000 names and addresses of individuals who DHS Defendants assert are subject to criminal investigation for an immigration-related infraction. For each individual on DHS Defendants' list, the IRS would confirm whether the address matches the address for that person reflected in the IRS's records.

6.      DHS Defendants cannot feasibly have open criminal investigations on all or even most of the 700,000 individuals on its list. Rather, the reported plan between DHS Defendants and the IRS is designed to circumvent the IRC's limits on disclosing and inspecting taxpayer

information to facilitate ICE's ability to find, arrest, and remove individuals from the United States under its civil enforcement authority.

7.      If that plan takes effect, and the IRS provides ICE with the information that it seeks, it will be virtually impossible to undo the harm caused by the unlawful disclosure and inspection of confidential taxpayer information.

8.      Plaintiffs accordingly bring this action seeking a declaration that Treasury Defendants may not lawfully disclose taxpayer information to DHS Defendants or any other person, and that DHS Defendants may not lawfully inspect or use such information, where the purpose of the disclosure or inspection is to assist DHS Defendants in locating an individual for purposes of enforcing the immigration laws. This declaration would not limit a court's authority to authorize disclosures of taxpayer information for purposes of locating fugitives from justice pursuant to the procedures set out in 26 U.S.C. § 6103(i)(5). Plaintiffs also seek an injunction prohibiting Defendants from disclosing or inspecting taxpayer information in a manner that is inconsistent with the requested declaration.

## JURISDICTION

9.      This Court has jurisdiction over this action under 28 U.S.C. § 1331 because Plaintiffs' claims arise under federal law.

## PARTIES

10.      Plaintiff Centro de Trabajadores Unidos (CTU) is a not-for-profit corporation located in Chicago, Illinois and serving Chicago's southeast side and south suburbs. As a member-led community organization and worker center, CTU strives to build immigrant and worker power by working to advance systemic change that promotes racial, gender and economic justice and stabilizes low-income immigrant communities and communities of color. Founded in 2008, CTU's

programming and initiatives reflect its vision to build neighborhood institutions that represent the interests of working people. CTU represents and serves hundreds of members and their surrounding communities through programs supporting workers' rights, organizing and civic education in immigrant communities, through assistance for members seeking to establish business cooperatives, and through parent-mentor programs intended to increase member engagement with local schools.

11.    Plaintiff Immigrant Solidarity DuPage (ISD) is a not-for-profit corporation located in Wheaton, Illinois and serving DuPage County, Illinois and the western suburbs of Chicago. Founded in 2007, ISD's mission is to educate, organize, and mobilize DuPage County around the rights, culture and collective struggles of the Latino community. ISD organizes with members in campaigns to advance the dignity of workers by conducting know-your-rights presentations and offering technical assistance to worker-led efforts to highlight employer abuses. ISD also operates a community center offering a variety of classes, cultural events, meeting space, and workshops on community rights.

12.    Plaintiff Somos Un Pueblo Unido (Somos) is a not-for-profit corporation located in Santa Fe, New Mexico, and serving communities throughout the state of New Mexico. Founded in 1995, Somos is a statewide, immigrant-led membership organization dedicated to advancing worker and racial justice. Somos works with communities in New Mexico on education and legal support, engages in impact litigation to protect and expand workers' rights, leads and supports grassroots campaigns for local and national policies that strengthen New Mexico communities, and creates leadership opportunities for immigrants and low-wage workers. During its thirty-year history, Somos has fought to grow opportunities for its members who file their federal and New Mexico state taxes using an ITIN, including supporting passage of state legislation that allowed

applicants for driver's licenses and higher education benefits to use their ITIN as proof of identity and residency. Somos also brought a lawsuit against the New Mexico Taxation and Revenue Department for unlawfully denying ITIN filers access to their tax refunds.

13.     Plaintiff Inclusive Action for the City (IAC) is a not-for-profit corporation located in Los Angeles, California, and a certified Community Development Financial Institution whose mission is to serve underinvested communities and build thriving local economies by improving access to capital and advancing policy through collaborative research and community-driven advocacy. IAC provides low-interest loans to entrepreneurs in the Los Angeles area, including to individuals who lack an immigration status that would make them eligible for SSNs. Many of IAC's borrowers rely on ITINs to pay taxes, secure business permits, and engage in other forms of financial and business transactions.

14.     Scott Bessent is the Secretary of the Treasury. In that capacity, he is responsible for administration and enforcement of the Internal Revenue Code. 26 U.S.C. § 7801(a)(1).

15.     Defendant IRS is a federal agency headquartered in Washington, D.C. and is responsible for implementation of the internal revenue laws.

16.     Defendant Melanie Krause is the acting Commissioner for Internal Revenue. In that capacity, she is responsible for execution and application of the internal revenue laws. 26 U.S.C. § 7803(a)(2). She is also responsible for ensuring that IRS employees "are familiar with and act in accord with taxpayer rights," including "the right to privacy" and "the right to confidentiality." *Id*. § 7803(a)(3)(G), (H).

17.     Defendant DHS is an agency of the United States.

18.     Defendant Kristi Noem is the Secretary of Homeland Security. She is responsible for carrying out federal immigration enforcement functions. 6 U.S.C. §§ 202(3), 251(2).

19.     Defendant ICE is an agency of the United States and a component of DHS. It is responsible for enforcing the immigration laws within the United States. 6 U.S.C. § 542; H. Doc. 108-32 (2003).

20.     Defendant Todd M. Lyons is the acting Director of ICE.

## FACTUAL BACKGROUND

**The administration's immigration enforcement agenda**

21.     President Donald J. Trump, during his campaign for President, promised voters that he would deport millions of people who are not authorized to be present in the United States. Since the election in November, and now as President, he has frequently restated his intention to honor that promise.

22.     On the first day of his term, President Trump issued an executive order establishing the federal government's policy of "[r]emoving promptly all aliens who enter or remain in violation of Federal law." Exec. Order 14165, § 2(d), 90 Fed. Reg. 8467, 8467 (Jan. 30, 2025).

23.     In a second executive order issued on the same day, President Trump declared a federal policy of "execut[ing] the immigration laws against all inadmissible and removable aliens." Exec. Order 14159, § 2, 90 Fed. Reg. 8443, 8443 (Jan. 29, 2025).

24.     DHS, through its subagency ICE, is responsible for enforcing federal immigration laws. Specifically, ICE manages all aspects of the immigration enforcement process, including the identification, arrest, detention, and removal of aliens who are subject to removal or are unlawfully present in the United States. Executive Order 14159 charged DHS with ensuring "the successful enforcement of final orders of removal" and stated "that the primary mission of [ICE] is the enforcement of the provisions of the [Immigration and Nationality Act] and other Federal laws

related to the illegal entry and unlawful presence of aliens in the United States and the enforcement of the purposes of this order." § 4, 90 Fed. Reg. at 8444.

25.     President Trump has imposed quotas on ICE to increase arrests from a few hundred per day to between 1200 to 1500 per day.[1] The White House Deputy Chief of Staff for Policy Stephen Miller has described these quotas as a "floor, not a ceiling."[2]

26.     In early February, top officials at ICE were removed from their positions for failing to arrest and deport individuals at a pace desired by the administration.[3] At about the same time, DHS asked Secretary Bessent to deputize IRS agents to engage in immigration enforcement activities.[4] On or about February 21, the acting director of ICE was removed from his post due to ICE's inability to accelerate deportations.[5]

27.     President Trump and DHS have taken action to enlist the aid of state authorities in the enforcement of immigration laws. President Trump has directed DHS to enter into agreements with states to "ensure State and local law enforcement agencies across the United States can assist with the protection of the American people" by authorizing "State and local law enforcement officials … to perform the functions of immigration officers in relation to the investigation,

---

[1] Nick Miroff & Maria Sacchetti, *Trump officials issue quotas to ICE officers to ramp up arrests*, Wash. Post, Jan. 26, 2025.

[2] Priscilla Alvarez, *White House pressures ICE to pick up pace of migrant arrests, sources say*, CNN, Feb. 7, 2025.

[3] Nick Miroff, *Top ICE officials reassigned amid strain to meet Trump deportation goals*, Wash. Post, Feb. 11, 2025.

[4] Hamed Aleaziz & Andrew Duehren, *I.R.S. Agents Are Asked to Help With Immigration Crackdown*, N.Y. Times, Feb. 10, 2025.

[5] Michelle Hackman, *Trump Administration to Replace Acting ICE Director*, Wall St. J., Feb. 21, 2025.

apprehension, or detention of aliens in the United States under the direction and the supervision of the Secretary of Homeland Security." Exec. Order 14159, § 11, 90 Fed. Reg. at 8445.

28.     On January 23, 2025, DHS made a finding of a "Mass Influx of Aliens," 90 Fed. Reg. 8399 (Jan. 29, 2025), which triggers a regulatory provision permitting DHS to request assistance from state and local governments in the administration of immigration laws. 28 C.F.R. § 65.83. DHS has extended the finding through September 2025. 90 Fed. Reg. 13622 (Mar. 25, 2025) (Mass Influx Extension).

29.     The Trump administration has begun taking steps to collect information about individuals for potential immigration enforcement.

30.     President Trump has issued an executive order to facilitate the sharing of data between agencies. He has directed the U.S. DOGE Service (USDS) to "work with Agency Heads to promote inter-operability between agency networks and systems" and "facilitate responsible data collection and synchronization." He has directed agency heads to assure that "USDS has full and prompt access to all unclassified agency records, software systems, and IT systems." Exec. Order 14158, § 4, 90 Fed. Reg. 8441 (Jan. 29, 2025). He recently issued an executive order to eliminate "information silos" among federal agencies. Exec. Order 14243, 90 Fed. Reg. 13681 (Mar. 25, 2025). President Trump has also directed DHS specifically to share information with states for immigration enforcement purposes. Exec. Order 14159, § 18, 90 Fed. Reg. at 8446.

31.     The administration has incorrectly characterized every individual not authorized to be present in the United States as a criminal. In a January 29, 2025 briefing, White House Press Secretary Karoline Leavitt stated that a foreign national "who illegally enters the United States" is "by definition, a criminal." In response to a specific question asking how many recent ICE arrestees "have a criminal record versus those who are just in the country illegally," Ms. Leavett

responded: "All of them, because they illegally broke our nation's laws, and, therefore, they are criminals, as far as this administration goes. I know the last administration didn't see it that way, so it's a big culture shift in our nation to view someone who breaks our immigration laws as a criminal."

32.     Unauthorized physical presence in the United States and accepting employment in the United States while present without authorization are not, standing alone, violations of federal criminal law.

33.     More than thirteen million individuals are potentially subject to the President's mass deportation plans.[6] The responsibility for finding and removing these individuals falls on ICE's Enforcement and Removal Operations (ERO), which "manages all aspects of the immigration enforcement process, including the identification, arrest, detention and removal of aliens who are subject to removal or are unlawfully present in the U.S."[7] ERO has 7282 officers to carry out these functions, although approximately 1295 of these positions are vacant. Mass Influx Extension, 90 Fed. Reg. at 13623. Under ICE's Criminal Alien Program and National Fugitive Operations Program, ERO is also responsible for identifying, locating, arresting, and removing immigrants who have committed crimes and remain at-large.[8]

34.     Since President Trump took office, ICE has arrested 32,809 individuals and removed 29,033 individuals. Of those arrested, 24,091 had criminal convictions or pending criminal charges. Mass Influx Extension, 90 Fed. Reg. at 13623.

---

[6] https://www.americanimmigrationcouncil.org/research/mass-deportation.

[7] https://www.ice.gov/about-ice/ero.

[8] https://www.ice.gov/identify-and-arrest/criminal-alien-program; https://www.ice.gov/identify-and-arrest/fugitive-operations.

35.    To carry out President Trump's goal of removing all individuals not lawfully present in the United States, DHS Defendants must first identify and locate individuals who are subject to removal. To that end, DHS Defendants are seeking access to taxpayer information because, within the federal government, the IRS's systems house the largest single source of the names and current addresses of individuals not authorized to be present in the United States.

36.    Immigration enforcement officials have reportedly requested that the IRS "divulge the home addresses," as well as phone numbers and email addresses, "of 700,000 people suspected of being in the country illegally."[9] DHS reportedly has sought this information for weeks.

37.    The IRS, under prior leadership, refused to provide the requested information, concluding that doing so would violate the law. On February 28, 2025, current Acting Commissioner Defendant Krause replaced the prior acting commissioner. The IRS under Acting Commissioner Krause has been negotiating an agreement with DHS Defendants under which the IRS may share confidential taxpayer information with DHS and ICE, and they are reportedly close to terms.[10]

38.    Under the proposed agreement, DHS Defendants would provide the IRS with approximately 700,000 names and addresses of individuals who DHS Defendants assert are subject to criminal investigation for an immigration-related infraction. For each individual on DHS Defendants' list, the IRS would confirm whether the address matches the address for that person reflected in the IRS's records.

---

[9] Jacob Bogage et al., *DHS asks IRS for addresses of people believed to be in U.S. illegally*, Wash. Post., Feb. 28, 2025.

[10] *See* Jacob Bogage & Jeff Stein, *IRS nears deal with ICE to share addresses of suspected undocumented immigrants*, Wash. Post, Mar. 22, 2025; Richard Rubin & Michelle Hackman, *IRS Nears Deal to Share Data for Immigration Enforcement*, Wall St. J., Mar. 22, 2025; Andrew Duehren & Eileen Sullivan, *I.R.S. Prepares to Help Find Immigrants Targeted for Deportation*, N.Y. Times, Mar. 22, 2025.

**Confidentiality of taxpayer records**

39.     Under the IRC, all income earned in the United States is subject to federal income tax, regardless of whether the taxpayer has been lawfully admitted. 26 U.S.C. §§ 1, 2(d), 871, 7701(b)(1). Any taxpayer who fails to file federal income tax returns required by law and to pay taxes on their income is subject to civil liability and penalties, and, in cases of willful attempts to evade taxes, criminal liability, including a fine of up to $100,000 and five years in prison. 26 U.S.C. §§ 6651, 7201.

40.     United States citizens are entitled to obtain an SSN, which is used for filing their federal income and other tax returns and in making tax payments.

41.     Individuals who are not lawfully present in the United States are not entitled to obtain an SSN. Instead, in 1996, Congress enacted 26 U.S.C. § 6109, which authorized the IRS to develop a process through which individuals who are not eligible for an SSN can apply for and obtain an ITIN to enable them to file tax returns and pay federal income taxes as required by law. Obtaining an ITIN requires applicants to provide their full name and address, as well as other identifying information about themselves, such as their date of birth, their home country, passport number, and driver's license, required by the IRS Form W-7.[11]

42.     Millions of individuals in the U.S. have filed ITIN applications.[12] Those applications, the returns of taxpayers who file using ITINs, and other tax records contain personal information—including names, current addresses, and, in many cases, information about dependents—that would greatly facilitate DHS Defendants' efforts to identify and locate millions of individuals who are potentially subject to removal. Access to this sensitive data by DHS

---

[11] https://www.irs.gov/pub/irs-pdf/fw7.pdf.

[12] https://itep.org/itin-filer-data-gap-how-changing-laws-lack-of-data-disaggregation-limit-inclusive-tax-policy/.

Defendants would thereby expose millions of taxpayers to the administration's aggressive immigration enforcement tactics.

43.     Internal Revenue Code section 6103 forbids Treasury Defendants from complying with requests—whether from the President, DHS Defendants, or a state—to share return or return information for purposes of civil immigration enforcement. Section 6103(a) declares that "[r]eturns and return information shall be confidential" and may not be disclosed except as "authorized" by the IRC. IRC section 7213 makes it unlawful for federal or state officers and employees to disclose return or return information unless authorized by statute. IRC section 7213A makes the unauthorized inspection of return or return information unlawful as well.

44.     Subsections (c)–(o) of section 6103 contain specific exceptions to the prohibitions on disclosure and inspection of return and return information in subsection (a). Most of these subsections contain further specific exceptions. None of these exceptions authorizes Treasury Defendants to disclose taxpayer returns and return information—including ITIN records—to DHS Defendants to facilitate civil enforcement of immigration laws.

45.     Subsection (g) of section 6103 authorizes the President of the United States or his office to obtain return and return information if the President makes a "written request," "signed by him personally," that identifies the taxpayer's "name and address." Because this exception requires the President to identify by name the taxpayer whose return or return information is requested, it does not authorize the President to obtain returns or return information on a mass scale for purposes of identifying targets for immigration enforcement.

46.     Although section 6103 includes no language authorizing disclosure of return and return information for civil immigration enforcement, section 6103(i) authorizes such disclosure for certain criminal investigations and proceedings. Several provisions of section 6103(i) permit

disclosure of tax information in criminal matters only pursuant to a court order. *See* 26 U.S.C. § 6103(i)(1)(A), (i)(4), (i)(5).

47.    Section 6103(i)(5) specifically addresses disclosure and inspection of taxpayer information for purposes of locating an individual. Under that provision, high-level officials of the Department of Justice (DOJ), U.S. Attorneys, special prosecutors, or an attorney in charge of a criminal division organized crime strike force may submit an application to a district court judge or magistrate judge for an ex parte order for "the return of an individual or return information with respect to such individual" to be used "exclusively for use in locating such individual." This process applies when "(i) a Federal arrest warrant relating to the commission of a Federal felony offense has been issued for an individual who is a fugitive from justice, (ii) the return of such individual or return information with respect to such individual is sought exclusively for use in locating such individual, and (iii) there is reasonable cause to believe that such return or return information may be relevant in determining the location of such individual." The IRC does not authorize the disclosure or inspection of taxpayer information to locate individuals potentially subject to criminal liability in any other circumstance, let alone for the purpose of civilly enforcing the immigration laws.

48.    Section 6103(i)(2) permits the disclosure of taxpayer information for criminal matters without a court order. This provision requires the IRS to disclose return information (but not returns or taxpayer return information other than the taxpayer's identity) upon request by the "head of any Federal agency." The return information may be disclosed only to "officers and employees of such agency who are personally and directly engaged in" preparing for a judicial or administrative proceeding to enforce a specifically designated Federal criminal statute, an investigation which may result in such a proceeding, or a grand jury proceeding. Any return

information disclosed under section 6102(i)(2) must be "solely for the use of such officers and employees" in carrying out those activities.

49.     To obtain taxpayer information under section 6103(i)(2), the head of an agency must provide a request in writing that includes the "(i) name and address of the taxpayer with respect to whom the requested return information relates; (ii) the taxable period or periods to which such return information relates; (iii) the statutory authority under which the proceeding or investigation described in subparagraph (A) is being conducted; and (iv) the specific reason or reasons why such disclosure is, or may be, relevant to such proceeding or investigation."

50.     Because a request under section 6103(i)(2) requires the requesting agency to provide the address of the taxpayer, DHS Defendants cannot lawfully invoke that provision to obtain address information from the IRS. As the Internal Revenue Manual states: "Requests for addresses only cannot be honored because IRC 6103(i)(2) requires that the requester provide an address." IRM 11.3.28.5. The IRS's Disclosure and Privacy Law Reference likewise states: "Requests under section 6103(i)(2) seeking only taxpayers' addresses do not comply with the section." IRS Publication 4369, at 5-4.

51.     Under the anticipated agreement between the IRS and DHS Defendants, the IRS would be required to confirm whether a particular taxpayer's address provided by DHS Defendants matches the information in the tax records of that taxpayer. Any such confirmation would disclose return information because it would disclose whether the taxpayer has filed a return or other tax information, as well as the taxpayer's current address or the fact that the taxpayer resides at a location different from the address provided by DHS Defendants.

52.     Section 6103(i)(2) permits disclosure of return information only on an individualized, case-by-case basis to the extent relevant to a specific investigation being

conducted. Section 6103(i)(2) does not authorize the IRS to disclose taxpayer information about multiple individuals on a mass basis.

53.    Section 6103(i)(2) does not authorize disclosure or inspection of taxpayer information for purposes of locating the taxpayer. Section 6103(i)(5) authorizes access to location information contained in tax records, but only when the individual at issue is a fugitive from justice and a court authorizes the disclosure.

54.    Section 6103(i)(2) requires the requested taxpayer information to be solely for use in preparing criminal investigations or proceedings. DHS Defendants—and ERO in particular—cannot feasibly have 700,000 investigations open against individuals for criminal prosecution, nor can they feasibly have assigned officers or employees to be "personally and directly engaged in" 700,000 open criminal investigations, as required by section 6103(i)(2).

55.    DHS Defendants instead seek confirmation of address information for the purpose of locating targets for civil removal. Because ERO both engages in civil enforcement of federal immigration laws and assists with enforcement of criminal immigration statutes, a mass disclosure of taxpayers' address information to DHS Defendants could not feasibly be confined to immigration personnel working on criminal investigations or proceedings. The IRS's confirmation of address information would enable DHS Defendants to dedicate their civil enforcement resources to pursuing individuals that they can more easily locate. Section 6103(i)(2) does not authorize disclosure or inspection of taxpayer information for that purpose.

56.    In 2017, the IRS announced to the public that section 6103 did not authorize it "to share tax data with ICE."[13] To entertain and enter into an information sharing agreement with DHS

---

[13] Maria Sacchetti, *Undocumented and paying taxes, they seek a foothold in the American Dream*, Wash. Post, Mar. 11, 2017.

Defendants, the IRS would have to change its interpretation of section 6103 and conclude that section 6103 authorizes the sharing of tax data with ICE. The IRS has not provided a reasoned explanation for that change.

57.    The IRS has also stated that a request for taxpayer address information would not be proper under section 6103(i)(2). To entertain and enter into an information sharing agreement with DHS Defendants, the IRS would have to change its interpretation of 6103(i)(2) and conclude that section 6103(i)(2) authorizes the requests for access to taxpayer address information. The IRS has not provided a reasoned explanation for that change.

**Harm to Plaintiffs**

58.    Plaintiffs CTU and ISD are membership organizations that operate in the Chicago area, and Somos is a membership organization that operates in New Mexico. CTU, ISD, and Somos each advocate for the interests of their immigrant members. Although some of Plaintiffs' members are eligible to obtain social security numbers and use those numbers to file their tax returns and pay their federal taxes, many of Plaintiffs' members require ITINs in order to comply with their tax obligations because they are not authorized to work in the United States. CTU, ISD, and Somos each encourage their members who lack social security numbers to obtain ITINs and pay the federal and state taxes that they owe. Workers like Plaintiffs' members who rely on ITINs are understandably concerned that the confidential information they provide to the IRS will be shared with immigration authorities. Plaintiffs' members face the reasonable fear that the mere act of complying with their duty to file tax returns and pay taxes could subject them to consequences such as separation from their families and communities and forced removal from the country where they have made their lives. On the other hand, failure to file a tax return would violate federal law,

subject Plaintiffs' members to tax enforcement, and potentially harm their ability to improve their immigration status in the future.

59.    Somos's members would also face harm at the state level if Defendants share information in violation of section 6103. New Mexico statutes and regulations that grant or have granted access to benefits such as driver's licenses, tuition equity, and relief during emergencies like the COVID-19 pandemic specifically incorporate ITINs and/or proof of filing taxes using an ITIN as a means by which individuals can show identity and eligibility for those benefits. Somos's members would lose access to these and other fundamental state benefits contemplated by New Mexico law if they are deterred from applying for an ITIN or filing their taxes using an ITIN due to fear of their information being unlawfully shared beyond the IRS and used for immigration enforcement.

60.    Plaintiff IAC would suffer harm if tax information is not kept confidential in accordance with section 6103. A significant portion of IAC's business involves lending to entrepreneurs who lack an immigration status that permits them to work in the United States. Like other lending institutions, IAC's lending activities require it to evaluate borrowers' financial situation. This financial analysis entails review of borrowers' tax filings, as well as records such as local business permits. Like an SSN, "an ITIN has become widely accepted by third parties outside of the IRS for use as a valid identification number for many nontax purposes," including obtaining loans and credit cards, opening businesses and bank accounts, getting driver's licenses, and establishing a credit history.[14] IAC encourages prospective borrowers to obtain an ITIN to be able to engage in the full range of financial and legal transactions for which an identification

---

[14] Treasury Inspector Gen. for Tax Admin., Admin. of the Individual Taxpayer Identification Number Program, Rep. No. 2024-400-012, at 1 (Dec. 19, 2023), https://www.tigta.gov/sites/default/files/reports/2024-11/2024400012fr.pdf.

number is required. But if taxpayer information is not kept confidential as required by law, and is unlawfully disclosed to immigration authorities for purposes of facilitating mass removal of immigrants, IAC's prospective clients will be much less likely to obtain ITINs and pay their taxes, and thereby be less likely to participate in the full economy and seek out and obtain loans from IAC. The resulting loss of business opportunity will harm IAC.

61.    With the impending agreement between Treasury Defendants and DHS Defendants that will provide for the sharing of address information, the harms to Plaintiffs are imminent. Once the agreement is finalized, the IRS will begin sharing taxpayer information on a mass scale with DHS Defendants as soon as it is technologically feasible for it to do so. And once the IRS unlawfully shares information with DHS Defendants, it will be virtually impossible to undo the harm through an order limiting its use or further dissemination.

## CLAIMS FOR RELIEF

### First Cause of Action
### (Agency action not in accordance with law, against Treasury Defendants)

62.    Under the Administrative Procedure Act, a court shall "hold unlawful and set aside agency action" that is "not in accordance with law." 5 U.S.C. § 706(2)(A).

63.    Treasury Defendants' decision to disclose the return and return information of Plaintiffs' members to DHS Defendants for the purpose of identifying the locations of individuals for immigration enforcement is final agency action.

64.    Such a disclosure would violate IRC § 6103 and be contrary to law.

65.    If such a disclosure occurs, it will be impossible after the fact to prevent the harm caused by the unlawful dissemination.

66.    Declaratory and injunctive relief is necessary to prevent Treasury Defendants from disclosing the return and return information of Plaintiffs' members to DHS Defendants for the

purpose of identifying the locations of individuals for immigration enforcement without a court order.

## Second Cause of Action
### (Arbitrary and capricious agency action, against Treasury Defendants)

67.    Under the Administrative Procedure Act, a court shall "hold unlawful and set aside agency action" that is "arbitrary" or "capricious." 5 U.S.C. § 706(2)(A).

68.    Treasury Defendants' decision to disclose the return and return information of Plaintiffs' members to DHS Defendants for the purpose of identifying the locations of individuals for immigration enforcement is final agency action.

69.    Treasury Defendants' decision is arbitrary and capricious, made without providing an adequate explanation for the decision, and for changing its view that the IRS lacks statutory authority to provide return and return information to ICE, and without taking into account taxpayers' reliance interests.

70.    Treasury Defendants' decision is arbitrary and capricious, made without providing an adequate explanation for the decision and for changing its view that 26 U.S.C. § 6103(i)(2) does not authorize requests seeking disclosure of taxpayer address information.

71.    If such a disclosure occurs, it will be impossible after the fact to prevent the harm caused by the unlawful dissemination.

72.    Declaratory and injunctive relief is necessary to prevent Treasury Defendants from disclosing the return and return information of Plaintiffs' members to DHS Defendants for the purpose of identifying the locations of individuals for immigration enforcement.

**Third Cause of Action**
**(Non-statutory review of violation of 26 U.S.C. § 6103, against Treasury Defendants)**

73.    Section 6103 requires Treasury Defendants to keep return and return information confidential and to not disclose it to any person unless the disclosure falls within an express statutory exception.

74.    No express statutory exception authorizes the disclosure of return and return information for purposes of identifying the locations of individuals for immigration enforcement without a court order.

75.    Injunctive relief is necessary to prevent Treasury Defendants from disclosing the return and return information of Plaintiffs' members to DHS Defendants for the purpose of identifying the locations of individuals for immigration enforcement without a court order.

**Fourth Cause of Action**
**(Agency action contrary to law, against DHS Defendants)**

76.    Under the Administrative Procedure Act, a court shall "hold unlawful and set aside agency action" that is "not in accordance with law." 5 U.S.C. § 706(2)(A).

77.    DHS Defendants' inspection of the return and return information of Plaintiffs' members for the purpose of identifying the locations of individuals for immigration enforcement would be final agency action.

78.    DHS Defendants lack authority to inspect return and return information for such a purpose unless such information is obtained pursuant to a court order.

79.    If such an unlawful inspection occurs, it will be impossible after the fact to prevent the harm caused by the unlawful inspection.

80.    Declaratory and injunctive relief is necessary to prevent DHS Defendants from inspecting the return and return information of Plaintiffs' members for the purpose of identifying the locations of individuals for immigration enforcement without a court order.

### Fifth Cause of Action
### (Non-statutory review of violation of 26 U.S.C. §§ 6103 and 7213A, against DHS Defendants)

81.    Sections 6103 and 7213A make it unlawful for DHS Defendants to inspect return and return information whose disclosure is not authorized by an express statutory exception.

82.    Absent a court order, the disclosure of return and return information for purposes of identifying the locations of individuals for immigration enforcement is not authorized by statute.

83.    Injunctive relief is necessary to prevent DHS Defendants from inspecting the return and return information of Plaintiffs' members for the purpose of identifying the locations of individuals for immigration enforcement in the absence of such a court order.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court:

(a) Declare that Treasury Defendants may not, absent court order, disclose return or return information, including by confirming taxpayer addresses, to DHS Defendants or any other agency or person for the purpose of identifying the locations of individuals for immigration enforcement.

(b) Declare that DHS Defendants may not, absent a court order, inspect return or return information for the purpose of identifying the locations of individuals for immigration enforcement.

(c) Enjoin Treasury Defendants from disclosing return or return information in a manner inconsistent with the Court's declaration.

(d) Enjoin DHS Defendants from inspecting return or return information in a manner inconsistent with the Court's declaration.

(d) Grant any other appropriate relief.

Dated: March 26, 2025

Respectfully submitted,

/s/ Nandan M. Joshi
Nandan M. Joshi
   (DC Bar. No. 456750)

Kevin L. Herrera
   (Motion for pro hac vice forthcoming)
Mark H. Birhanu
   (Motion for pro hac vice forthcoming)
Raise the Floor Alliance
1 N. LaSalle St., Ste. 1275
Chicago, Illinois 60602
(312) 795-9115
kherrera@raisethefflooralliance.org

Michael T. Kirkpatrick
   (DC Bar. No. 486293)
Public Citizen Litigation Group
1600 20th Street, NW
Washington, DC 20009
(202) 588-7733
njoshi@citizen.org

Alan B. Morrison
   (DC Bar No. 073114)
George Washington Law School,
2000 H Street NW
Washington D.C. 20052
(202) 994-7120
abmorrison@law.gwu.edu