# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

CENTRO DE TRABAJADORES
UNIDOS, et al.,

      Plaintiffs,

       v.

SCOTT BESSENT, in his official
capacity as Secretary of the Treasury, et
al.,

      Defendants.

Civil Action No. 25-677 (DLF)

# DEFENDANTS' JOINT OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND MOTION TO <u>DISMISS THE AMENDED COMPLAINT</u>

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ iii

INTRODUCTION ............................................................................................................... 1

FACTUAL AND LEGAL BACKGROUND ...................................................................... 2

    I.   Tax Return Information and Disclosure ................................................................ 2

    II.   Factual Background .............................................................................................. 4

    III.   Procedural History ............................................................................................ 5

    IV.   Standards for Preliminary Injunction ................................................................ 6

ARGUMENT ...................................................................................................................... 7

    I.   Plaintiffs Cannot Succeed on the Merits of the Claim ........................................ 7

        A.   Standing ........................................................................................................ 7

        B.   No Cause of Action Under APA ................................................................. 15

        C.   Equitable Relief is Inappropriate ............................................................... 18

    II.   There Is No Irreparable Harm ............................................................................ 19

    III.   Balance of the Equities and Public Interest .................................................... 19

    IV.   The Court Should Limit Any Preliminary Injunction to the Plaintiffs and their Members .. ................................................................................................................ 20

    V.   The Government is Entitled to a Bond if a Preliminary Injunction is Issued. ................... 22

Motion to Dismiss ............................................................................................................ 23

CONCLUSION ................................................................................................................. 24

# TABLE OF AUTHORITIES

**Cases**

*AFL-CIO v. Dep't of Labor,*
  --- F. Supp. 3d ---, 2025 ............................................................................................. 9

*Am. Library Ass'n v. FCC,*
  401 F.3d 489 (D.C. Cir. 2005) ................................................................................... 8

*Am. Soc. for Prevention of Cruelty to Animals v. Feld Entm't Inc.,*
  659 F.3d 13 (D.C. Cir. 2011) ..................................................................................... 7

*Ardestani v. I.N.S.,*
  502 U.S. 129 (1991) .................................................................................................. 18

*Arpaio v. Obama,*
  797 F.3d 11 (D.C. Cir. 2015) ................................................................................... 10

*Ariz. All. for Retired Ams. v. Mayes,*
  117 F.4th 1165 (9th Cir. 2024) ................................................................................ 12

*Bernstein v. Kerry,*
  962 F. Supp. 2d 122 (D.D.C. 2013) ......................................................................... 11

*Bowen v. Massachusetts,*
  487 U.S. 879 (1988) .................................................................................................. 17

*Boynes v. Limetree Bay Ventures, LLC,*
  110 F.4th 604 (3d Cir. 2024) .................................................................................... 22

*Califano v. Yamasaki,*
  442 U.S. 682 (1979) ............................................................................................. 21-22

*Church of Scientology v. IRS,*
  484 U.S. 9 (1987) ........................................................................................................ 2

*Citizens for Responsibility & Ethics in Washington v. DOJ,*
  846 F.3d 1235 (D.C. Cir. 2017) ............................................................................... 17

*Clapper v. Amnesty Int'l USA,*
  568 U.S. 398 (2013) .................................................................................................. 10

*Dalton v. Specter,*
  511 U.S. 462 (1994) .................................................................................................. 18

*Davis v. FEC,*
  554 U.S. 724 (2008) ............................................................................................. 7, 23

*Delta Sigma Theta Sorority, Inc. v. Allen Professional Graphics Grp., LLC,*
  212 F. Supp. 3d 116 (D.D.C. 2014) ......................................................................... 22

*Delta Sigma Theta Sorority, Inc. v. Bivins,*
  215 F. Supp. 3d 17 (D.D.C. 2013) ...................................................... 22

*Dep't of Homeland Sec. v. New York,*
  140 S. Ct. 599 (Jan. 27, 2020) ............................................................ 22

*Elec. Privacy Info. Ctr. v. United States Dep't of Commerce*
  (EPIC), 928 F.3d 95–01 (D.C. Cir. 2019) ........................................ 7, 15

*Fair Employment Council of Greater Washington, Inc. v. BMC Mktg. Corp.,*
  28 F.3d 1268 (D.C. Cir. 1994) .......................................................... 13

*FDA v. All. for Hippocratic Med.,*
  602 U.S. 367 (2024) .......................................................................... 12

*FDIC v. Bank of Am., N.A.,*
  308 F. Supp. 3d 197 (D.D.C. 2018) ................................................... 18

*Food & Water Watch, Inc. v. Vilsack,*
  808 F.3d 905 (D.C. Cir. 2015) ........................................................ 7, 10

*Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.,*
  460 F.3d 13 (D.C. Cir. 2006) ............................................................ 16

*Gill v. Whitford,*
  585 U.S. 48 (2018) ............................................................................ 20

*Hansen v. Dept. of Treasury,*
  528 F.3d 597 (9th Cir. 2007) .............................................................. 4

*Hanson v. Smith,*
  120 F.4th 223 (D.C. Cir. 2024) ........................................................... 6

*Havens Realty Corp. v. Coleman,*
  455 U.S. 363 (1982) ..................................................................... 12, 13

*Indep. Equip. Dealers Ass'n v. EPA,*
  372 F.3d 420 (D.C. Cir. 2004) .......................................................... 15

*Iowaska Church of Healing v. Werfel,*
  105 F.4th 402 (D.C. Cir. 2024) ........................................................ 13

*Kareem v. Haspel,*
  986 F.3d 859 (D.C. Cir. 2021) .......................................................... 23

*Lehrfeld v. Richardson,*
  132 F.3d 1463 (D.C. Cir. 1998) .......................................................... 2

*Lewis v. Casey,*
  518 U.S. 343 (1996) ..................................................................... 20, 21

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ........................................................................ 7, 13

*Madsen v. Women's Health Ctr., Inc.*,
   512 U.S. 753 (1994) ............................................................................. 21

*Murthy v. Missouri*,
   603 U.S. 43–46 (2024) ......................................................................... 10

*NLRB v. Express Pub. Co.*,
   312 U.S. 426 (1941) ............................................................................. 19

*NTEU v. United States*,
   101 F.3d 1423 (D.C. Cir. 1996) .......................................................... 13

*Obama v. Klayman*,
   800 F.3d 559 (D.C. Cir. 2015) ............................................................... 7

*P.J.E.S. v. Wolf*,
   502 F. Supp. 3d 492 (D.D.C. 2020) .................................................... 22

*Perry Capital LLC v. Mnuchin*,
   864 F.3d 591 (D.C. Cir. 2017) ............................................................ 17

*Public Citizen, Inc. v. NHTSA*,
   513 F.3d 234 (D.C. Cir. 2008) .................................................. 10, 11, 12

*Sierra Club v. Trump*,
   929 F.3d 670 (9th Cir. 2019) .............................................................. 18

*Simon v. Eastern Ky. Welfare Rights Org.*,
   426 U.S. 26 (1976) .............................................................................. 13

*Singh v. Berger*,
   56 F.4th 88 (D.C. Cir. 2022) ................................................................. 6

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009) .............................................................................. 9

*Syncor Int'l Corp. v. Shalala*,
   127 F.3d 90 (D.C. Cir. 1997) ......................................................... 16, 17

*United States Army Corps of Eng'rs v. Hawkes Co.*,
   578 U.S. 590 (2016) ............................................................................ 15

*Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*,
   454 U.S. 464 (1982) ............................................................................ 11

*Vill. of Bald Head Island v. Army Corp of Eng'rs*,
   714 F.3d 186 (4th Cir. 2013) .......................................................... 15, 16

*Waite v. Macy*,
    246 U.S. 606 (1918) ............................................................................ 19

*Whitmore v. Arkansas*,
    495 U.S. 149 (1990) ............................................................................ 10

**Statutes**

5 U.S.C. § 551 ............................................................................ 15, 16

5 U.S.C. § 553 ............................................................................ 16

5 U.S.C. § 702 ............................................................................ 15

5 U.S.C. § 704 ............................................................................ 15

8 U.S.C. § 1253 ............................................................................ 1, 8, 19

8 U.S.C. § 1326 ............................................................................ 1, 8

26 U.S.C. § 501 ............................................................................ 13, 14

26 U.S.C. § 6103 ............................................... 1, 2, 3, 5, 6, 8, 9, 10, 11, 15, 16, 17, 19, 20, 21, 23

26 U.S.C. § 6109 ............................................................................ 4

26 U.S.C. § 7431 ............................................................................ 2, 17, 18, 19, 23

26 U.S.C. § 7213 ............................................................................ 2

**Treasury Regulations**

26 C.F.R. § 301.6103 ............................................................................ 3, 4

26 C.F.R. § 301.6109-1 ............................................................................ 4, 5

26 C.F.R. § 6103 ............................................................................ 4

**IRS Documents**

Form W-7 ............................................................................ 4

IRS Publication 1075 ............................................................................ 4, 5

## INTRODUCTION

Section 6103 of the Internal Revenue Code generally restricts the IRS from disclosing any tax return information. However, adherence to Section 6103 includes properly applying its numerous exceptions, such as Section 6103(i)(2), which requires the IRS to disclose certain information to criminal investigators when it receives a proper request. Plaintiffs, four immigrant rights advocacy groups, have filed suit to stop a plan they anticipate may result in the IRS unlawfully providing tax return information to the Department of Homeland Security ("DHS") and U.S. Immigration and Customs Enforcement ("ICE"). They now seek a preliminary injunction commanding the IRS to follow their flawed interpretation of Section 6103(i)(2) and prohibiting DHS and ICE from using any return information received from the IRS. ECF No. 28. But this case presents no such harm.

The Memorandum of Understanding ("MOU") signed by the Department of the Treasury and DHS reiterates the agencies' commitment to sharing information only in the way that Section 6103 permits and includes clear guardrails to ensure compliance with Section 6103. Some statutes impose criminal penalties for immigration-related offenses. *See, e.g.*, 8 U.S.C. § 1253(a)(1)(A) (certain aliens who willfully remain in the United States for over 90 days after a final removal order is issued can be imprisoned for up to four years); 8 U.S.C. § 1326(a) (an alien who illegally reenters the United States can be imprisoned for up to two years). As laid out in the MOU, DHS can legally request return information relating to individuals under criminal investigation, and the IRS *must* provide it. Plaintiffs cannot show any irreparable harm proximately caused by the Defendants necessitating a preliminary injunction, because the conduct expressly contemplated in the MOU and at issue in Plaintiff's Amended Complaint— providing information to assist criminal investigations—is lawful.

1

Furthermore, Plaintiffs cannot establish a likelihood of success on their ultimate relief because they lack standing under Article III, they have failed to state a cause of action under the Administrative Procedure Act ("APA"), and there is no legal mechanism for them to seek "non-statutory review."

Thus, the Court should deny Plaintiffs' motion for a preliminary injunction and dismiss this case.

## FACTUAL AND LEGAL BACKGROUND

### I.    Tax Return Information and Disclosure

Section 6103 of the Internal Revenue Code sets forth the general rule "that 'returns' or 'return information' as defined therein shall be confidential." *Church of Scientology v. IRS*, 484 U.S. 9, 10 (1987); *see also* 26 U.S.C. § 6103(a). "Congress has defined 'return information' broadly." *Lehrfeld v. Richardson*, 132 F.3d 1463, 1463-64 (D.C. Cir. 1998). It includes a taxpayer's identity; whether the taxpayer's return is subject to examination or other investigation or processing; and "any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability" under the Internal Revenue Code. 26 U.S.C. § 6103(b)(2)(A). Section 7431 expressly creates the sole civil cause of action for violations of Section 6103 committed by United States officers or employees. 26 U.S.C. § 7431(a)(1). The willful unauthorized disclosure and inspection of tax return information also carry criminal penalties. *See* 26 U.S.C. §§ 7213 (unauthorized disclosure), 7213A (unauthorized inspection).

At the same time, Section 6103 contains numerous exceptions to the disclosure prohibition, including some that *require* disclosure of information. *See* 26 U.S.C. §§ 6103(c)-(o). The exception relevant here is Section 6103(i)(2). Under the exception, the IRS *must* provide requested return information to officers and employees of the requesting agency "who are

2

personally and directly engaged in" preparation for a criminal proceeding; an investigation that may result in a proceeding; or a federal grand jury proceeding. *See* § 6103(i)(2)(A) (cross-referencing § 6103(i)(1)(A)(i, iii)); 26 C.F.R. § 301.6103(i)-1(a). The agency must make a request that includes the following: (1) the taxpayer's name and address; (2) the relevant taxable periods; (3) the statutory authority for the criminal investigation; and (4) the reasons the tax return information is relevant to the investigation. *See* § 6103(i)(2)(A)–(B). The disclosure must be "solely for the use of" the officers and employees "personally and directly engaged in" the criminal investigation or proceeding. § 6103(i)(2)(A). And even then, the IRS must only "disclose return information (other than taxpayer return information)." § 6103(i)(2)(A). *See also* § 6103(b)(3) (defining "taxpayer return information"); § 6103(i)(2)(C) (explaining that for the purposes of (i)(2), "a taxpayer's identity shall not be treated as taxpayer return information").[1]

Like the IRS, the agency receiving return information under Section 6103(i)(2) must follow stringent safeguards for protecting the information. *See* 26 U.S.C. § 6103(p)(4). And because the receiving agency is bound by Section 6103(a)'s confidentiality mandate, redisclosures of return information must also be authorized under Section 6103. *See* § 6103(p)(4)(C); § 6103(p)(2)(B); 26 C.F.R. § 301.6103(p)(2)(B)-1. The receiving agency must establish and maintain a system of records that tracks its requests and the return information it receives. § 6103(p)(4)(A). The records must be securely stored and access must be restricted to agency personnel whose duties require access and to whom disclosures may be made. § 6103(p)(4)(B), (C). And the IRS has issued detailed guidance that recipients of return

---

[1] This is one of the principal distinctions between Section 6103(i)(1), which requires a court order but generally permits investigators to obtain "any return or return information," § 6103(i)(1)(A), and Section 6103(i)(2), which does not require a court order but does not allow investigators to obtain certain information.

information must follow. *See* 26 C.F.R. § 6103(p)(4)-1; IRS Pub. 1075, *Tax Information Security Guidelines* (Nov. 2021), *available at* https://www.irs.gov/pub/irs-pdf/p1075.pdf (last visited Apr. 7, 2025), *permalinked at* https://perma.cc/WSK5-FLVH. For instance, return information must be stored in a system that prevents unauthorized access and permits regular audits to ensure unauthorized access does not occur. Pub. 1075 at 50, 104. If return information is commingled in a file with information obtained from elsewhere, the entire file must be secured. *See id.* at 55. The return information must be returned or destroyed after it is used. *See* § 6103(p)(4)(F)(ii). And if the IRS determines that a receiving agency is not meeting these requirements, it can terminate the agency's access to return information. *See* § 6103(p)(7); 26 C.F.R. § 301.6103(p)(7)-1.

Plaintiffs allege that the IRS "will seek to transmit" tax return information for immigrants "who are subject to removal." ECF No. 17 ¶ 35. *See also id.* ¶ 38. The IRS issues Individual Taxpayer Identification Numbers (ITINs) to alien taxpayers "for use in connection with filing requirements" under the Internal Revenue Code. 26 C.F.R. § 301.6109-1(d)(3)(i); *see also* 26 U.S.C. § 6109(i); *Hansen v. Dept. of Treasury*, 528 F.3d 597 (9th Cir. 2007). A taxpayer must submit a Form W-7 to apply for an ITIN. *See* 26 C.F.R. § 301.6109-1(d)(3)(ii). The Form W-7 asks for information including an applicant's mailing and foreign address, country of citizen, type of United States visa, and date of entry into the United States. *See id.*; Form W-7, *Application for IRS Individual Taxpayer Identification Number* (Dec. 2024), *available at* https://www.irs.gov/pub/irs-pdf/fw7.pdf (last visited Apr. 7, 2025), *permalinked at* https://perma.cc/2MRX-B7X3.

## II.    Factual Background

On April 7, 2025, DHS and the Department of Treasury executed a Memorandum of Understanding ("MOU") to create a framework for information sharing between the agencies.

*See* Declaration of Kathleen Evey Walters ¶ 3, attached as **Exhibit A**. The MOU governs

requests submitted by DHS or ICE for return information (other than taxpayer return

information) under Section 6103(i)(2). *Id.*; MOU ¶¶ 1, 3.[2] Under the MOU, the IRS will only

disclose the return information to DHS or ICE if the requirements of Section 6103(i)(2) are met.

*See* MOU ¶ 1(e). If the IRS determines that the request meets the requirements for disclosure set

forth in Section 6103(i)(2), the IRS will release the requested information to DHS or ICE. *Id.* ¶¶

3, 5(B), 6(B). Because DHS or ICE will make the request under the MOU under Section

6103(i)(2), the IRS is not authorized to release taxpayer return information (as defined in Section

6103(b)(3)). *Id.* ¶ 2. DHS and ICE must safeguard any return information disclosed by the IRS in

compliance with the requirements of Section 6103(p)(4) and in accordance with the standards

established in IRS Publication 1075. *Id.* ¶ 9(A). As of April 7, 2025, no information has been

provided by the IRS to DHS. *See* Walters Decl. ¶ 4. Between March 17, 2025, and April 7, 2025,

the IRS has not received any requests for taxpayer information from DHS or ICE and has not

provided any return information to DHS or ICE. *Id.* ¶ 5.

## III.    Procedural History

Plaintiffs filed this suit on March 7, 2025, raising a claim under the Administrative

Procedure Act (APA). ECF No. 1 ¶ 37. They also claimed a "non-statutory right of action to

enjoin and declare unlawful official action that is ultra vires." ECF No. 1 ¶ 42. Plaintiffs moved

for a temporary restraining order on March 14, 2025. ECF No. 11. That same day, the Court

ordered Defendants to file opposition to the motion by March 17, 2025, and scheduled a hearing

on Plaintiffs' motion for March 19, 2025. The United States opposed Plaintiffs' motion and

---

[2] Law enforcement sensitive material in the MOU has been redacted.

moved to dismiss the complaint. ECF No. 14. At the hearing, the Court denied the motion for a temporary restraining order and ordered Plaintiffs to respond to the motion to dismiss. ECF No. 16.

On March 26, 2025, Plaintiffs filed an amended complaint, adding two new Plaintiffs and the Department of Homeland Security ("DHS") and Immigration and Customs Enforcement ("ICE") as Defendants.[3] ECF No. 17. Plaintiffs raise five causes of action—three under the APA, and two seeking "non-statutory review." *Id.* ¶¶ 62–83. On March 31, 2025, the Plaintiffs moved for a preliminary injunction because "a deal between the IRS and DHS is imminent, and under that deal, the IRS will provide taxpayer address information to ICE for the ostensible purpose of enforcing criminal immigration laws." ECF No. 28-1.

## IV.    Standards for Preliminary Injunction

To show entitlement to a preliminary injunction, a plaintiff must demonstrate: "(1) 'he is likely to succeed on the merits,' (2) 'he is likely to suffer irreparable harm in the absence of preliminary relief,' (3) 'the balance of equities tips in his favor,' and (4) issuing 'an injunction is in the public interest.'" *Hanson v. Smith*, 120 F.4th 223, 231 (D.C. Cir. 2024) (quoting *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008)). Preliminary injunctions are intended to be a "stopgap measure [to]…preserve the relative positions of the parties" while the final disposition of a case is pending. *Singh v. Berger*, 56 F.4th 88, 95 (D.C. Cir. 2022) (quoting *Sherley v. Sebelius*, 689 F.3d 776, 781–82 (D.C. Cir. 2012)).

---

[3] Defendants' first motion to dismiss was rendered moot by the filing of the amended complaint.

## ARGUMENT

*Response to Motion for a Preliminary Injunction*

### I.    **Plaintiffs Cannot Succeed on the Merits of the Claim**

Plaintiffs' request for a preliminary injunction should be denied because they cannot prevail on the merits of their claim. Plaintiffs lack standing to bring this suit and cannot plead a cognizable claim under the APA.

#### A.  Standing

A party seeking a preliminary injunction "must show a 'substantial likelihood of standing'" to demonstrate entitlement to relief. *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015) (quoting *Obama v. Klayman*, 800 F.3d 559, 565 (D.C. Cir. 2015)).

Under Article III, "a claimant must present an injury that is concrete, particularized, and actual or imminent; fairly traceable to the defendant's challenged behavior; and likely to be redressed by a favorable ruling." *Davis v. FEC*, 554 U.S. 724, 733 (2008) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). An organization can have standing on behalf of itself or its members. *See Elec. Privacy Info. Ctr. v. United States Dep't of Commerce (EPIC)*, 928 F.3d 95, 100–01 (D.C. Cir. 2019). For an organization to have direct standing, it must show "a concrete and demonstrable injury to [its] activities that is more than simply a setback to the organization's abstract social interests." *Id.* at 100 (quoting *Am. Soc. for Prevention of Cruelty to Animals v. Feld Entm't Inc.*, 659 F.3d 13, 25 (D.C. Cir. 2011)). Alternatively, an association can have associational standing representing its members if: "(1) at least one of [its] members has standing to sue in her or his own right, (2) the interests the association seeks to protect are germane to its purpose, and (3) neither the claim asserted nor the relief request requires the participation of an individual member in the lawsuit." *EPIC*, 928 F.3d

at 101 (quoting *Am. Library Ass'n v. FCC*, 401 F.3d 489, 492 (D.C. Cir. 2005)). Neither type of standing exists here.

Plaintiffs have failed to identify whether any of their individual members is under criminal investigation and therefore come within the class of individuals whose return information *might* be disclosed under the MOU and Section 6103(i)(2). Even if one of their declarants is, Plaintiffs can only speculate that the particular declarant's information will be disclosed at some point in the future.

Critically, even if the information is disclosed, it is not a cognizable harm because the disclosure is lawful. As explained in detail above, the IRS must disclose return information (other than taxpayer return information) to officers of another agency who are personally and directly engaged in a criminal investigation if the head of the agency makes an adequate written request. *See* 26 U.S.C. § 6103(i)(2). Depending on their individual status and conduct, aliens can be prosecuted for immigration crimes. *See, e.g.*, 8 U.S.C. § 1253(a)(1)(A) (certain aliens who willfully remain in the United States for over 90 days after a final removal order is issued can be imprisoned for up to four years); 8 U.S.C. § 1326(a) (an alien who illegally reenters the United States after a lawful order of removal can be imprisoned for up to two years). Thus, even if one of Plaintiff's members falls into the class of people who might have their information requested, and even if that member's information is in fact requested, neither the member nor any Plaintiff has suffered cognizable harm.

1.   *Plaintiffs Lack Associational Standing Because They Have not Established that Any Particular Member Has Standing*

Plaintiffs Centro de Trabajadores Unidos ("CTU"), Immigrant Solidarity DuPage ("ISD"), and Somos Un Pueblo Unido ("Somos") all claim associational standing. *See* ECF No. 28-1 at 9–12. But they have failed to demonstrate that at least one of their members has standing

in his or her own right. As this Court recently explained, an organization seeking associational standing "must point to a particular member and establish she would have standing if she were a plaintiff herself." *AFL-CIO v. Dep't of Labor*, --- F. Supp. 3d ---, 2025 WL 543938, at *3 (D.D.C. Feb. 7, 2025). *See also Summers v. Earth Island Inst.*, 555 U.S. 488 (2009) (a showing of a statistical probability a member will be injured is not enough to confer standing). CTU and ISD have provided declarations from anonymous members, but each declaration fails to establish that the specific member will be harmed by the MOU or information exchanged under the MOU. Somos did not provide such a declaration, and it should be denied associational standing on that ground alone, as well as for the reasons below.

First, the MOU only permits the lawful exchange of information for taxpayers who are under criminal investigation or subject to a criminal proceeding. *See* MOU ¶ 6(C)(3). *See also* 26 U.S.C. § 6103(i)(2). No declarant suggests that they have committed a crime, much less that they are under criminal investigation. *See generally* ECF No. 28-9 (declaration of Jane Doe, CTU member); ECF No. 28-10 (declaration of John Doe, ISD member); ECF No. 28-11 (declaration of James Doe, ISD member).

Second, even if those members might have committed a crime that means they might be subject to criminal immigration proceedings, any future harm to the member from disclosure of return information based on the MOU's framework is too speculative to confer standing.[4] The core harm to their members that Plaintiffs identify is an increase in the risk of removal from the United States. See ECF No. 28-6 ¶¶ 5-6; ECF No. 28-7 ¶¶ 5-6; ECF No. 28-8 ¶¶ 5–6. But that is

_____

[4] Some of Somos's clients are under a final order of removal and file tax returns. ECF No. 28-8 ¶ 9. It is still speculation to suppose that any of those clients will be criminally investigated and that their information will be requested under the MOU—if the lawful exchange of information can be called a harm at all.

conjecture. Accepting it would require the Court to assume a future series of events in which (1) DHS requests that specific member's information from the IRS; (2) disclosure of the requested information would be illegal; (3) the IRS decides to disclose the information anyway in contravention of the MOU and Section 6103; (4) access to the information substantially increases the risk of removal beyond what existed from the information DHS already had; and (5) including that increase, the member has a substantial probability for removal. *See Public Citizen, Inc. v. NHTSA*, 513 F.3d 234, 237 (D.C. Cir. 2008) (standard for increased-risk-of-harm standing). This "speculative chain of possibilities does not establish" that any cognizable harm "is certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013). *See also Food & Water Watch*, 808 F.3d at 913 (quoting *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) ("When considering any chain of allegations for standing purposes, we may reject as overly speculative those links which are predictions of future events (especially future actions to be taken by third parties).").

      2.   *Plaintiffs Lack Direct Organizational Standing Because They Have Failed to Allege a Concrete, Particularized Imminent Injury*

Only Plaintiff Inclusive Action for the City ("IAC") claims organizational standing. *See* ECF No. 28-1, pg. 11. It lacks standing because it cannot show an injury traceable to any action by Defendants. A plaintiff can establish standing by showing "a substantial risk of future injury that is traceable to the Government defendants and likely to be addressed by an injunction against them." *Murthy v. Missouri*, 603 U.S. 43, 45–46 (2024). A potential future injury creates standing only if it is "certainly impending." *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) (internal citations omitted). Standing based on an increased risk of future harm requires "*both* (i) *a substantially* increased risk of harm and (ii) *a substantial* probability of harm with that increase taken into account." *Public Citizen*, 513 F.3d at 237–38 (internal citations omitted).

IAC is a "certified Community Development Financial Institution" that has directly provided microloans and grants to its Los Angeles-area clients, who include individuals who use ITINs. *Id.*; ECF No. 28-12 ¶¶ 2-3. IAC claims that if the IRS provides DHS and ICE with return information for ITIN holders, some potential clients will be discouraged from applying for ITINs and paying federal taxes, which will then harm IAC by "reduc[ing] demand for [its] services and potentially increase default rates from existing businesses." ECF No. 28-1 at 11–12. *See also* ECF 28-12 ¶¶ 8-9.

IAC's claim for standing is based on its clients' "understand[ing] that the Tax Code protects them from having the information that they provide to the IRS disclosed to people outside the IRS, including to those working for other parts of the federal government." ECF No. 28-12 ¶ 6. *See also id.* ¶ 7. But as explained above, while Internal Revenue Code provides strong protection for taxpayer information, its disclosure limits are not absolute and never have been. The MOU inflicts no cognizable harm on IAC. It only provides a technical framework for the IRS to provide return information to DHS and ICE under 26 U.S.C. § 6103(i)(2)—lawfully. Standing cannot be based on a plaintiff's interest in seeing "the government following the law." *Bernstein v. Kerry*, 962 F. Supp. 2d 122 (D.D.C. 2013) (citing *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 482–83 (1982)) (Huvelle, J.). The IRS has always been required to provide return information if a valid request is made under § 6103(i)(2), even without the MOU.  The MOU simply establishes procedures and guardrails for ensuring that such requests and subsequent transfers of information are handled lawfully and securely. For DHS and ICE, Plaintiffs have not pointed to any evidence that information will be misused. In short, IAC cannot show that the MOU or the lawful exchange of

information under the MOU either substantially increases its risk of harm or that it has substantial probability of harm as a result. *See Public Citizen*, 513 F.3d at 237-38.

Plaintiffs also cannot assert organizational standing based on allegations that they have diverted resources in response to their fear that IRS might share tax information with DHS. *See FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024). In *Alliance for Hippocratic Medicine*, the Supreme Court clarified that it is "incorrect" that standing exists when "an organization diverts its resources in response to a defendant's actions." *Id.* at 395. *See also Ariz. All. for Retired Ams. v. Mayes*, 117 F.4th 1165, 1177 (9th Cir. 2024) (explaining that after *Hippocratic Medicine*, an organization cannot rely on "the diversion of resources in response to a policy to confer standing"). The Supreme Court stated, in particular, that its decision in *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), was "an unusual case" whose holding should not be extended "beyond its context." *All. for Hippocratic Med.*, 602 U.S.. at 396. In *Havens Realty*, the Supreme Court held that a non-profit housing organization had standing based on allegations that the defendants had provided false information to the housing organization's employees, which "directly affected and interfered with [the organization's] core business activities." *Id.* at 395; *see also Havens*, 455 U.S. at 378-79. Nothing similar has occurred here. The MOU does not interfere with IAC's "core business activities"—it is just a framework for streamlining IRS responses to lawful requests for information from DHS or ICE. Furthermore, the MOU does not allow for unlawful activity by Defendants and, therefore, cannot directly conflict with IAC's mission. IAC provides loans to entrepreneurs, including immigrants. *See* ECF No. 28-12 ¶¶ 1-3, 9-10. Notably, it does not itself assist its clients to apply for ITINs or prepare their tax returns. *See id.* ¶¶ 5-6. The MOU provides a framework for sharing data about taxpayers under criminal investigation. *See* MOU ¶ 1. That is much less of a direct conflict than in other cases where

courts found standing: for instance, a fair housing nonprofit suing over violations of the Fair Housing Act or a fair employment group suing over the discriminatory practices of an employment agency. *See NTEU v. United States*, 101 F.3d 1423, 1428-29 (D.C. Cir. 1996) (discussing and distinguishing *Havens* and *Fair Employment Council of Greater Washington, Inc. v. BMC Mktg. Corp.*, 28 F.3d 1268, 1270 (D.C. Cir. 1994), among other cases).

That difference underlines a second problem with IAC's standing claim. Even if IAC has a concrete injury, it is not traceable to the Defendants' conduct. IAC's claimed injury, a reduction in demand for its services and increased default rates, is based on the premise that some potential clients, third parties to this case, will not apply for ITINs or file tax returns. An injury caused by "the independent action of some third party not before the court" cannot be traceable to the Defendants' conduct. *Lujan*, 504 U.S. at 560 (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976)). IAC's argument is analogous to the plaintiff's position in *Iowaska Church of Healing v. Werfel*, 105 F.4th 402 (D.C. Cir. 2024). There, the plaintiff sued the IRS over denial of its tax-exempt status under I.R.C. § 501(c)(3). *Id.* at 406. Its standing argument rested in part on an alleged "economic injury in the form of lost income and profits" because the denial of tax-exempt status allegedly "caused the Church to have no membership income or contributions with which to carry on its programs for nearly three years." *Id.* at 410 (internal quotation marks omitted). The D.C. Circuit held that any injury was not traceable to the IRS's denial of tax-exempt status, but rested on the independent decisions of the third-party donors not to contribute funds to the church. *Id.* at 413. Similarly, if IAC's injury occurs, it will rest on the decisions of its members and potential clients not to apply for ITINs, not to file returns, or to close existing businesses.

IAC has no injury that is traceable to the MOU or the exchange of information under the MOU. It lacks organizational standing. And although they do not appear to assert it, so do the other Plaintiffs. Plaintiff CTU describes itself as a "grassroots member-led community organization and worker center serving Chicago's southeast side and south suburbs." ECF No. 28-6 ¶ 1. Its work includes "educating workers about their right to organize, sharing information about leadership opportunities and legal rights in immigrant communities, assisting workers see[k]ing to establish business cooperatives, and engaging local parents who wish to improve community schools…." *Id.* Plaintiff ISD similarly "organizes with members in campaigns to advance the dignity of workers" through community education and operating a community center. ECF No. 28-7 ¶ 1. Plaintiff Somos is "an immigrant-led membership organization…dedicated to advancing worker and racial justice…through education and legal support, [including] engag[ing] in impact litigation to protect and expand workers' rights…." ECF No. 28-8 ¶ 1. And while CTU says that the risk of removal of its members "would increase significantly" if DHS obtained return information, ECF No. 28-6 ¶ 5, and that its members "would be at great risk of severe harm" resulting from "arrest, detention, and removal from the United States," *id.* ¶ 6, it does not identify how CTU itself, as opposed to its members, would be harmed. Likewise, ISD and Somos identify risks to their members, but none to themselves. *See* ECF No. 28-7 ¶¶ 5–6; ECF No. 28-8 ¶¶ 5–6. Plaintiffs are primarily educational entities not focused on protecting tax return information or even challenging immigration enforcement. *See* ECF Nos. 28-6, 28-7, 28-8. At most, the organizations advocate for enhanced immigrant rights in the workplace. *See* ECF Nos. 28-6 ¶ 1, 28-7 ¶ 1, 28-8 ¶ 1. A theoretical release of tax return information to DHS would not hamper any of Plaintiffs' educational initiatives or their ability to advocate, even through impact litigation for workers' rights. At most, the alleged future action

Plaintiffs seek to stop would be "a setback to [their] abstract social interests," which is insufficient to confer organizational standing. *EPIC*, 928 F.3d at 100–01. Moreover, the perceived harms that Plaintiffs allege are caused by disclosures are caused by the IRS's compliance with Section 6103(i)(2) and not the MOU. Plaintiffs are not challenging the legitimacy of the statute or the exception. They merely assume the IRS will violate it.

### B.  No Cause of Action Under APA

If a plaintiff is adversely affected by the action of a federal agency, the APA provides for judicial review of "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704; *see also* 5 U.S.C. § 702.

#### 1.  *The MOU Is Not an Agency Action, Much Less a Final Agency Action*

Final agency action is "the consummation of the agency's decisionmaking process" and marks when "rights or obligations have been determined, or from which legal consequences will flow." *United States Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 597 (2016). An agency action "includes the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof." 5 U.S.C. § 551(13). While broad, that definition is "not so all-encompassing as to authorize [courts] to exercise judicial review [over] everything done by an administrative agency." *Indep. Equip. Dealers Ass'n v. EPA*, 372 F.3d 420, 427 (D.C. Cir. 2004) (Roberts, J.). As the Fourth Circuit has explained, "[t]he term 'action' as used in the APA is a term of art that does not include all conduct such as, for example, constructing a building, operating a program, or performing a contract. Rather, the APA's definition of agency action focuses on an agency's determination of rights and obligations." *Vill. of Bald Head Island v. Army Corp of Eng'rs*, 714 F.3d 186, 193 (4th Cir. 2013), *aff'g* 833 F. Supp. 2d 524, 532 (E.D.N.C. 2011) (finding that agency letters did not constitute agency action).

The signing of an MOU between DHS and the IRS is not an agency action. It is merely a technical framework for future information sharing between the two agencies—the anticipation of agency action rather than agency action itself. *See Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*, 460 F.3d 13 (D.C. Cir. 2006). There was no "determination of rights or obligations," *Village of Bald Head Island*, 714 F.3d at 193, upon the agencies signing the MOU: the IRS has always been required to provide nontaxpayer return information to DHS if the request complied with Section 6103(i)(2). The signing of the MOU is also not a determination of rights or obligations because it is only parroting the IRS's preexisting statutory obligations under Section 6103.

If the MOU is any kind of agency action, it is a statement of general applicability and future effect designed to implement policy—which the APA terms a rule. *See* 5 U.S.C. § 551(4). But it is not a rule subject to notice-and-comment review. Statements of policy need not go through that process. *See* 5 U.S.C. § 553(b)(A). *See also, e.g.*, *Syncor Int'l Corp. v. Shalala*, 127 F.3d 90, 93 (D.C. Cir. 1997). And the only way to characterize the MOU is as a general statement of policy.

An agency's statement of policy "does not seek to impose or elaborate or interpret a legal norm. It merely represents an agency position with respect to how it will treat—typically enforce—the governing legal norm." *Syncor Int'l*, 127 F.3d at 94. Here, the MOU confers no rights on DHS it did not already have. It merely sets out the process by which DHS may request information under § 6103(i)(2). Thus, the MOU does not seek to impose or elaborate on the statute's requirements. It simply restates them and reaffirms DHS's obligation to treat properly any return information it receives. *See* MOU ¶¶ 5-6, 9. The IRS retains the right to reject any request from DHS that does not meet the statutory requirements. *Id.* ¶ 5(B). And if DHS's

16

request meets the statutory requirements, the IRS must comply, but not because of the MOU. It must do so because the language in Section 6103(i)(2) is mandatory. The Secretary of the Treasury "*shall* disclose return information (other than taxpayer return information)" to non-Treasury employees upon a proper request. § 6103(i)(2)(A) (emphasis added). Accordingly, the IRS has not bound itself to a particular legal position for any specific case, meaning that the MOU is no more than a policy statement. *See Syncor Int'l*, 127 F.3d at 94.

### 2.    *Affected Taxpayers Have an Adequate Legal Remedy*

An adequate remedy need not be identical to APA relief. *See Citizens for Responsibility & Ethics in Washington v. DOJ*, 846 F.3d 1235, 1245 (D.C. Cir. 2017). A remedy is considered "adequate" when there is legislative intent to "create a special, alternative remedy and thereby bar APA review." *Id.* at 1244. When a statute offers "an independent cause of action or an alternative review process," courts have found the remedy adequate. *Id.* at 1245 (quoting *El Rio Santa Cruz Neighborhood Health Center v. HHS*, 396 F.3d 1265, 1270 (D.C. Cir. 2005)). *See also Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988) ("§ 704 'does not provide additional judicial remedies in situations where the Congress has provided special and adequate review procedures.'"). If a plaintiff has an adequate legal remedy, it cannot state a cause of action under the APA. *See Perry Capital LLC v. Mnuchin*, 864 F.3d 591, 620-21 (D.C. Cir. 2017).

APA review is inappropriate because Congress has created a specific legal remedy for unauthorized disclosures of tax return information—Section 7431. Under Section 7431, a taxpayer whose tax return information has been unlawfully released is entitled to $1,000 per disclosure or actual damages. There is no indication in the statutory text that Congress intended to permit any other remedy for violations of Section 6103. Therefore, *if* the IRS releases tax return information to DHS, and *if* such disclosures violate Section 6103, then the affected taxpayers can obtain relief through an independent cause of action under Section 7431. Plaintiffs

will no doubt argue that the legal remedy is inadequate because it does not stop the harm of removal from the United States. But removal is a separate harm from unlawful disclosure. It also comes as part of a separate legal process, distinct from the unlawful disclosure or from the APA. Remedies for the harm of removal should be sought through immigration-related proceedings, not the APA. *See, e.g.*, *Ardestani v. I.N.S.*, 502 U.S. 129, 133 (1991) ("Although immigration proceedings are required by statute to be determined on the record after a hearing, we previously have decided that they are not governed by the APA." (citation omitted)). Thus, theoretical future disclosures cannot be stopped under the APA.

### C.  Equitable Relief is Inappropriate

Plaintiffs also offer causes of action asking for "non-statutory review." However, equitable relief is "not available when a plaintiff has an adequate legal remedy" that is as efficient as equity, both in respect to the final relief and in the mode of obtaining it. *FDIC v. Bank of Am., N.A.*, 308 F. Supp. 3d 197, 202 (D.D.C. 2018). Here, as explained above, Congress created an adequate remedy at law specifically for unlawful disclosures. Section 7431 of the Internal Revenue Code provides a legal cause of action to a person whose tax return or return information is unlawfully disclosed. *See Sierra Club v. Trump*, 929 F.3d 670, 697 (9th Cir. 2019) (internal citations omitted) ("Congress may…limit a court's equitable power to enjoin acts violating federal law…where Congress has demonstrated an 'intent to foreclose' that form of relief…."). *See also Dalton v. Specter*, 511 U.S. 462, 477 (1994) ("The judicial power of the United States conferred by Article III of the Constitution is upheld just as surely by withholding judicial relief where Congress has permissibly foreclosed it, as it is by granting such relief where authorized by the Constitution or by statute."). And as explained above, removal is too remote from the act of disclosing tax return information to be cognizable as a harm in this suit, so it also

cannot form the basis of an equitable cause of action. The remedy for any immigration harm should be sought in an immigration-related proceeding.

Thus, equitable relief is not available to Plaintiffs.

## II.    There Is No Irreparable Harm

Plaintiffs cannot demonstrate irreparable harm if the preliminary injunction is denied. As discussed above, they have not shown any concrete, impending harm, let alone an irreparable one. In some cases, aliens can be charged with criminal offenses, and accordingly, disclosure of tax return information under Section 6103(i) could be required. *See, e.g.*, 8 U.S.C. § 1253(a). Plaintiffs acknowledge as much in their complaint. *See* ECF No. 17 ¶ 46. But "[c]ourts will not issue injunctions against administrative officers on the mere apprehension that they will not do their duty or will not follow the law." *Waite v. Macy*, 246 U.S. 606, 609 (1918). *See also NLRB v. Express Pub. Co.*, 312 U.S. 426, 435-36 (1941) ("[T]he mere fact that a court has found that a defendant has committed an act in violation of a statute does not justify an injunction broadly to obey the statute and thus subject the defendant to contempt proceedings if he shall at any time in the future commit some new violation unlike and unrelated to that with which he was originally charged."). The MOU between DHS and the IRS reiterates that the IRS will only release information if a request is submitted in compliance with § 6103(i)(2). There is thus no imminent, concrete harm to plaintiffs or their members.

In any event, any theoretical harm is also not irreparable. As explained above, Section 7431 creates a cause of action for monetary damages to rectify any harm caused by unlawful tax return disclosures.

## III.    Balance of the Equities and Public Interest

Plaintiffs claim that the balance of the equities weighs in favor of granting the injunction because there is no harm or injury if the Government is enjoined from releasing tax return

information. That is patently untrue—Plaintiffs' proposed relief is so broad, it would stop, or at least chill, lawful disclosure requests under Section 6103(i) and potentially hamper lawful criminal investigations.

The MOU reiterates that the IRS will only release nontaxpayer return information to DHS if the requests comply with Section 6103(i)(2). The language of Section 6103(i)(2) does not give the IRS any discretion to reject a lawful request. As a result, Plaintiffs' Motion, which purports to stop illegal activity, is asking the Court for an Order that would instruct the IRS to violate the law as the proposed injunctions would prevent the IRS from complying with its statutory obligations under Section 6103. The proposed preliminary injunction would place a complete stop on any information sharing between the Defendants absent a court order or unless the Defendants meet the Plaintiffs' flawed interpretation of Section 6103(i)(2).[5] The Government and the public also have an interest in the efficient progress and resolution of criminal investigations. These factors should weigh against issuing the preliminary injunction.

## IV.    The Court Should Limit Any Preliminary Injunction to the Plaintiffs and their Members

No relief is warranted in this case. But if the Court decides to grant a preliminary injunction, it should limit the injunction's scope to Plaintiffs and their members. A "plaintiff's remedy must be limited to the inadequacy that produced his injury in fact." *Gill v. Whitford*, 585 U.S. 48, 66 (2018) (quoting *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (internal quotation marks and brackets omitted)). It is "improper" to "gran[t] a remedy beyond what [is] necessary to

---

[5] The proposed preliminary injunction prohibits information sharing "for the purpose of obtaining or confirming the identity or location of an individual." There is nothing in Section 6103(i)(2) that prohibits information sharing for this purpose if all the requirements of the exception are met.

provide relief" to the plaintiffs. *Lewis*, 518 U.S. at 360. Likewise, injunctive relief "should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) (stating "general rule") (internal quotation marks omitted).

A broad, universal injunction here would contravene both the plaintiff-side and defendant-side principles that an injunction should be tailored to the injury. First, a universal injunction is not appropriate because it would afford relief to individuals who were not plaintiffs in the lawsuit or members of a class, and whom the Court should therefore not consider in crafting relief. *See Lewis*, 518 U.S. at 358. And universal relief is not necessary to provide relief to members of CTU, ISD, and Somos. Each of those organizations presumably maintains a members list, and the Court could narrowly tailor any relief to the Plaintiffs' members. Because CTU, ISD, and Somos seek associational standing, their harm is derivative.[6]

Second, a universal injunction would impose substantial and unnecessary costs on the government. Section 6103(i)(2) permits the disclosure of return information in certain circumstances. Broader relief than necessary would impinge on the government's proper role in investigating and prosecuting crimes, including immigration crimes.

In addition to being unnecessary, a universal injunction is poor policy. Nationwide relief circumvents the procedural rules on class actions. *See* Fed. R. Civ. P. 23; *see also Califano v. Yamasaki*, 442 U.S. 682, 702-03 (1979) (observing that nationwide relief can be obtained by an

---

[6] IAC may argue that it needs a universal injunction to remedy its harm because it does not know who its future clients might be. *See* ECF No. 28-12 ¶¶ 8 (discussing demand for services), 9 (discussing potential borrowers). That only highlights that IAC lacks a concrete, traceable injury. The effects of the MOU on IAC will depend on the independent decisions and actions of those future clients, who are third parties to this case.

appropriately certified nationwide class). Universal injunctions encourage forum shopping. *Dep't of Homeland Sec. v. New York*, 140 S. Ct. 599, 600-01 (Jan. 27, 2020) (Gorsuch, J., concurring in stay). And they mean that the stakes in litigation "are asymmetric," because while plaintiffs can gain relief by winning in *any* case, the government must *every* case to implement a new action. *Id.*

The Court should limit any injunction to Plaintiffs and their members.

**V.    The Government is Entitled to a Bond if a Preliminary Injunction is Issued.**

If the Court grants Plaintiffs' Motion and issues a preliminary injunction, the United States requests that Plaintiffs first be required to post a bond to cover "costs and damages sustained [if the United States is later] found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Courts have broad discretion to "determine the appropriate amount of an injunction bond." *P.J.E.S. v. Wolf*, 502 F. Supp. 3d 492, 520 (D.D.C. 2020) (Sullivan, J.). *See also Delta Sigma Theta Sorority, Inc. v. Allen Professional Graphics Grp., LLC*, 212 F. Supp. 3d 116, 122 (D.D.C. 2014) (setting a bond under Fed. R. Civ. P. 65(c) at $5,000) (Lamberth, J.; *Delta Sigma Theta Sorority, Inc. v. Bivins*, 215 F. Supp. 3d 17, 22 (D.D.C. 2013) (Howell, J.) (setting a bond under Fed. R. Civ. P. 65(c) at $5,000). Bonds serve both to "compensate defendants who were mistakenly enjoined" and "force plaintiffs to 'think carefully' before accepting interlocutory relief." *Boynes v. Limetree Bay Ventures, LLC*, 110 F.4th 604, 611 (3d Cir. 2024).

Thus, if Plaintiffs' Motion is granted, the United States asks this Court to first require Plaintiffs to post a bond under Fed. R. Civ. P. 65(c) in an amount reasonable under the circumstances of the case. If the Court finds the Defendants are entitled to an injunction, it should also require a bond, and the Defendants ask for 48 hours to submit supplemental briefing on an appropriate amount.

**MOTION TO DISMISS**

The United States also requests that the Court dismiss Plaintiffs' complaint under Fed. R. Civ. P. 12(b)(1), for lack of subject matter jurisdiction, and 12(b)(6), for failure to state a claim.

Plaintiffs lack subject matter jurisdiction to bring this suit because they lack standing. *Kareem v. Haspel*, 986 F.3d 859, 865 (D.C. Cir. 2021) ("[S]tanding is a threshold jurisdictional issue."). As discussed above, Plaintiffs do not meet the fundamental standing requirement of being injured. *Davis*, 554 U.S. at 733. Plaintiffs cannot demonstrate either organizational or associational standing.

Furthermore, they cannot state a claim for relief under the APA or under a non-statutory theory. APA review is unavailable because there is no final agency action. The information sharing agreement between DHS and the IRS that the Plaintiffs highlight as the basis of their complaint echoes the IRS's statutory obligations under Section 6103(i)(2). The MOU provides a framework for the process for DHS to make information requests already contemplated under the Internal Revenue Code and for the IRS to respond to those requests. But it does not change the requirements Section 6103(i)(2) imposes for what information DHS must submit, the legal standard DHS's request  must meet, or the return information that the IRS must disclose in response. No rights or obligations have been determined through the MOU's signing. Taxpayers have another adequate legal remedy if there is an unlawful release of tax return information— they can sue for unlimited damages under Section 7431. This Court should also deny Plaintiffs' request for equitable relief because there is a clear statutory remedy. Congress instead created an avenue for taxpayers to receive compensation in the rare event that their return information was unlawfully disclosed. Therefore, for the reasons described here and above on pages seven through eighteen, the complaint should be dismissed.

## CONCLUSION

Plaintiffs lack the basic jurisdictional requirements to bring a suit. Plaintiffs are not entitled to a preliminary injunction largely because they cannot succeed on the merits of their claim—they lack standing and cannot state a claim for relief. There is also no irreparable harm, and a balance of the equities and the public interest weigh against granting a preliminary injunction. Thus, the United States asks for the Court not only to deny Plaintiffs' motion for a preliminary injunction, but to dismiss their case.

Date: April 7, 2025

*/s/ Andrew J. Weisberg*
Joseph A. Sergi (D.C. Bar No. 480837)
Senior Litigation Counsel

Andrew J. Weisberg (N.Y. Bar No. 5616321)
Trial Attorney
Tax Division
U.S. Department of Justice
P.O. Box 14198
Washington, DC 20044
Telephone: (202) 305-0868
Joseph.A.Sergi@usdoj.gov

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I certify that on April 7, 2025, I filed the foregoing Opposition to Plaintiffs' Motion for Preliminary Injunction and Motion to Dismiss the Amended Complaint with the Clerk of Court using the CM/ECF system, which will serve counsel for Plaintiffs.

*/s/ Andrew J. Weisberg*
Andrew J. Weisberg
Trial Attorney, Tax Division
U.S. Department of Justice
