UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CENTRO DE TRABAJADORES UNIDOS, et al.,<br><br>    Plaintiffs,<br><br>        v.<br><br>SCOTT BESSENT, in his official capacity as Secretary of the Treasury, et al.,<br><br>    Defendants. | Civil Action No. 25-677 (DLF) |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
TO COMPEL PRODUCTION OF UNREDACTED EXHIBIT**

<u>Background</u>

Unless an exception applies, "Section 6103 of the Internal Revenue Code lays down a general rule that 'returns' and 'return information' as defined therein shall be confidential." *Church of Scientology of California v. Internal Revenue Service*, 484 U.S. 9, 10 (1987); *accord Messinger v. United States*, 769 F. Supp. 935, 939 (D. Md. 1991); *see* I.R.C. § 6103(a) (1994). One of these exceptions, Section 6103(i)(2), requires the Internal Revenue Service to disclose certain information to criminal investigators when it receives a proper request. Plaintiffs, four immigrant rights advocacy groups, filed suit to stop the IRS from providing taxpayer tax return information to the Department of Homeland Security ("DHS") and U.S. Immigration and Customs Enforcement ("ICE") in the future. Under a flawed interpretation of Section 6103, they also are seeking a preliminary injunction commanding the IRS to not release the information and

1

prohibiting DHS and ICE from using any information received from the IRS.[1] ECF No. 28. As grounds for their Motion, Plaintiffs claim they and their members face imminent harm because "the IRS and DHS were close to reaching an agreement on sharing taxpayer information to aid immigration enforcement authorities. . . ." *Id.* at 7. This agreement was signed on April 7, 2024. Contrary to Plaintiffs' theory that this agreement would prove how Defendants would violate Section 6103, the Memorandum of Understanding ("MOU") signed by the Department of the Treasury and DHS reiterates the agencies' commitment to sharing information only in the way that Section 6103 permits and includes clear guardrails to ensure compliance with the law.

Defendants attached a redacted copy of the MOU to their opposition and explained, "Law enforcement sensitive material in the MOU has been redacted." ECF No. 30 at 5 n.2.[2] Plaintiffs file a Motion to Compel seeking an unredacted copy of the Motion. ECF No. 33. As explained more fully below, the Court should deny their Motion. Plaintiffs' waiver argument has no merit and the Declaration of Kevin F. Coenen ("Coenen Decl.") supports the fact that material was correctly withheld as law enforcement sensitive information. Finally, Plaintiffs have not established that it needs the information under the rule of completeness.

## Argument

Routinely, law enforcement agencies withhold information contained in their files or databases that are   law enforcement sensitive to protect "disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and

---

[1] Plaintiffs moved for a Temporary Restraining Order under the same theory, which was denied. ECF No. 16.
[2] Despite Plaintiffs' claims that the MOU was "heavily redacted," only a small portion of the document was redacted. ECF No. 33 at 1 and 2.

2

otherwise prevent interference with an investigation." *Dinler v. City of New York*, 607 F.3d 923, 940-41 (2d Cir. 2010) (citation and quotation omitted); *Friedman v. Bache Halsey Smart Shields, Inc.*, 738 F.2d 1336, 1341 (D.C. Cir. 1984); *Black v. Sheraton Corp. of Am*, 564 F.2d 531 (D.C. Cir. 1977); *see also United States v. Van Horn*, 789 F.2d 1492, 1507 (11th Cir. 1986). Still, Plaintiffs argue that the redacted portions of the MOU should be released for three reasons. First, in a strange "gotcha" argument, Plaintiffs claim that redactions are invalid because Defendants failed to file a Motion to Seal. ECF 33 at 2. Second, Plaintiffs argue that Defendants have failed to show that the redacted information is protected from disclosure; a further explanation of the redactions is below and in the attached Declaration. Third, Plaintiffs argue that the Rule of Completeness in Federal Rule of Evidence 106 requires the entire memo be produced. But the redactions in the MOU do not prevent Plaintiffs from understanding how the MOU works or why it complies with the law. The Court should deny Plaintiffs' Motion.

A. <u>Defendants Did Not Fail to Invoke the Information is Protected as Law Enforcement Sensitive</u>

Plaintiffs argue that Defendants have waived protections from public disclosure by failing to file a motion to seal the document under D.C. Local Rule 5.1(h). ECF No. 33 at 2. Plaintiffs cite no case law or rule in support of this proposition. Simply put, Defendants did not move to seal the document because it did not intend to seal the document in whole or in part.[3] The reason for this is practical: a Motion to Seal under Local Rule 5.1(h) requires the entire document to filed under seal with an unredacted copy provided to the other side and a Motion filed in advance

---

[3] The preliminary injunction briefing schedule is condensed. If more time was permitted, defendants would have evaluated whether it should have filed the unredacted portions *in camera*. In any event, defendants believe the redacted version of the MOU demonstrates that plaintiffs have no harm, no cause of action, and no standing.

3

that allows the Court to approve redactions. The reasoning behind the invocation of the protection made it unpalatable to produce the document unredacted at all. Moreover, because this is a Motion for Preliminary Injunction, there was not time to allow for this briefing as the MOU was signed the same day it was filed. Instead, Defendants filed the document the same way the document would have been produced as part of initial disclosures (i.e., redacted). If that were to happen, plaintiffs would have the opportunity to move to compel the MOU without the redactions. Instead, they argue that the expedited schedule somehow results in a waiver. Plaintiffs cite no caselaw to support their position. Plaintiffs also claim that defendants made a belated attempt to claim the privilege. *Id.*[4] This is an equally odd argument as the simultaneously-filed Opposition explained that the document was being redacted for law enforcement reasons. (ECF No. 30 at 5 n.2.) Plaintiffs know the date of the document, the length of the document, the contents of the document and the claim for which the redactions were made. This is the same information that would have been provided on a privilege log. In fact, plaintiffs cite to *In re Sealed Case*, 856 F.2d 268 (D.C. Cir. 1988), for the standards required to claim the privilege. But in that case, the declaration was not provided until after the plaintiff moved to compel.[5] In this Circuit, the agency head's declaration must accompany claims of governmental protection only when those claims are being asserted to a court in response to a motion to compel or in support of a motion for a protective order. Neither the declaration nor departmental authorization is necessary prior to this. *In re Sealed Case*, 121 F.3d 729, 741 (D.C. Cir. 1997) (White House was not obliged to "formally invoke its [executive] privileges in advance of the

---

[4] It would be more correct to say that plaintiffs' motion is premature as there is no outstanding request for defendants to produce the MOU.
[5] Plaintiffs also cite *Landry v. F.D.I.C.,* 204 F.3d 1125, 1138 (D.C. Cir. 2000), which involves specific FDIC standards for claiming law enforcement privileges. See 12 C.F.R. § 308.25(e).

4

motion to compel"; it was sufficient that it said, in response to a subpoena, that it "believed the withheld documents were privileged"). However, the agency is not asserting LEP, but rather LES. While LEP focuses on protecting investigatory "files," LES information focuses on protecting individual *items of information*—regardless of whether they are contained in a non-law enforcement file, and even if they did not originate as part of an investigation—as long as they were originally compiled for law enforcement purposes and their disclosure would meet the specified threshold for the harm to assert LES. Additionally, the court in *Parhat* did not require the government to provide a rationale for protection that was so specific as to preclude any generalized categorization. In re Guantanamo Bay Detainee Continued Access to Couns., 968 F. Supp. 2d 222, 226 (D.D.C. 2013) (citing *Parhat v. Gates*, 532 F.3d 834, 837 (D.C. Cir. 2008)). Rather, *Parhat* left room for categorized requests in appropriate circumstances. *Id*. Of course, the narrower the category for which the government seeks protection, the more likely the government's rationale will be sufficiently tailored. Thus, there is no basis for the Court to find a waiver. *Id.*

> B. The Redactions Are Supported as the Information is Law Enforcement Sensitive as explained in the attached declaration.

As explained above, the redactions were based on the application of the information being law enforcement sensitive. Nonetheless, Defendants have reexamined the MOU with an eye to what could be released. A more concisely redacted version of the MOU, which releases as much information as possible while still maintaining ICE's law enforcement goals is attached as Exhibit A to the Declaration of Kevin Coenen.  The Court should uphold the remaining redactions based on the information being law enforcement sensitive.[6]

---

[6] To be clear, the government's position is that the information is sensitive but not privileged.

The type of harm contemplated pursuant to LES ranges from undercutting investigations and prosecutions by disclosing investigative techniques, forewarning suspects of ongoing investigation, to deterring witnesses from coming from as confidential informants. *U.S. Dep't of Just. v. Landano*, 508 U.S. 165 (1993).

This protection is a qualified common-law privilege "that allows the federal government to withhold information that would be contrary to the public interest in the effective functioning of law enforcement." *Kusuma Nio v. U.S. Dep't of Homeland Sec.*, 314 F. Supp. 3d 238, 243 (D.D.C. 2018) (internal quotation marks omitted). "The privilege serves to protect 'the integrity of law enforcement techniques and confidential sources, protects witnesses and law enforcement personnel, safeguards the privacy of individuals under investigation, and prevents interference with investigations." *Id.* (internal quotation marks omitted). The privilege is not absolute, however, and courts must balance the needs of the requesting party against the harm to the government if the privilege is lifted. *Tuite v. Henry*, 98 F.3d 1411, 1418 (D.C. Cir. 1996).

Before the Court engages in the balancing test, the government must properly assert the protection. To do so, the head of the department having control over the information must formally assert the protection based on his or her actual personal consideration of the documents and must specify in detail the information for which the protection is claimed and explain why it falls within the scope of the protection. *Kusuma Nio*, 314 F. Supp. 3d at 243 (citing *Landry v. FDIC*, 204 F.3d 1125, 1135 (D.C. Cir. 2000)). Defendants have met this requirement. Defendants attach hereto the Declaration of Kevin F. Coenen. Mr. Coenen is currently an employee of Homeland Security Investigations, Office of Intelligence (HSI Intel), a component within Immigration and Customs Enforcement (ICE) within the Department of Homeland Security (DHS). He currently serves as an Executive Action Officer supporting the Assistant

Director and the Deputy Assistant Director for HSI Intel and regularly handles and marks sensitive materials in his role working with criminal analysis and governance materials applied to that process. Based on his knowledge of the office's mission, Mr. Coenen is a proper individual within ICE to invoke the protection. *See Kusuma Nio v. U.S. Dep't of Homeland Sec.*, 314 F. Supp. 3d 238, 243 (D.D.C. 2018) (permitting Associate Director of Field Operations Directorate at USCIS to invoke the privilege). *See also Landry v. FDIC*, 204 F.3d 1125, 1135-36 (D.C. Cir. 2000) (cautioning that the "head of the department" requirement should not be construed "in the narrowest possible way" because it would begin to erode the requirement that the official carefully and personally consider the assertion of the privilege). Mr. Coenen has personally considered the MOU. Coenen Decl. ¶ 4. And he has explained that disclosing the specific information ICE will seek from the IRS, or the way that ICE identifies individuals to the IRS, may permit third-parties to react, thereby diminishing the usefulness of the information. *See id.* ¶¶ 6-7.

Even though Defendants have properly asserted the LES protection, the Court must also conduct a balancing test. Courts use the ten-factor test first set forth in *Frankenhauser v. Rizzo*, 59 F.R.D. 339, 344 (E.D. Pa. 1973). *See Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F.2d 1336, 1342-43 (D.C. Cir. 1984). These factors are:

> (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information;
> (2) the impact upon persons who have given information of having their identities disclosed;
> (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure;
> (4) whether the information sought is factual data or evaluative summary;
> (5) whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question;
> (6) whether the investigation has been completed;

>    (7) whether any interdepartmental disciplinary proceedings have arisen or may arise from the investigation;
>    (8) whether the plaintiff's suit is nonfrivolous and brought in good faith;
>    (9) whether the information sought is available through other discovery or from other sources; and
>    (10) the importance of the information sought to the plaintiff's case.

738 F.2d 1336 at 1342-43; *see also Chauvin v. Lee*, 2000 WL 6268, at *3 (E.D. La. Jan. 4, 2000); *Segura v. City of Reno*, 116 F.R.D. 42 (D. Nev. 1987 *Sealed Case*, 856 F.2d at 272 (realigned as numerical list).

    These factors favor non-disclosure of the requested information here. The fourth factor weighs in favor of the government. The Coenen Declaration states that revealing the specific information sought would allow bad actors or third parties to evade or interfere with investigations related to criminal offenses enforced by ICE. Although it is publicly known that ICE and IRS have entered into an agreement to share information, the manner which and what type of information being shared is not known. Unredacting the MOU in full would be akin to revealing an investigatory technique that is currently in use. And although the United States believes Plaintiffs and their members do not have standing because their members have not shown that they fall within the class of people whose information is subject to disclosure under the MOU, *see* ECF No. 30 at 8-10, to the extent the Court disagrees, the fifth factor weighs in favor of the government. The sixth factor likewise weighs in the government's favor because the program has not yet begun. The eighth and ninth factors admittedly weigh in Plaintiffs' favor.

    The tenth factor weighs in favor of the government, and given the other factors and the posture of this case, the Court should find it dispositive. Plaintiffs' failure to demonstrate a substantial need for the requested information establishes that there should be no disclosure of the redacted information. The precise information ICE is requesting from the IRS is not relevant, provided that it is "return information (other than taxpayer return information)." *See* I.R.C.

8

§ 6103(i)(2)(A). Nor is the exact way in which ICE is identifying the subjects of a criminal investigation to the IRS. And Plaintiffs have offered no reason to think that those items are relevant.

    C.  The Information Need Not Be Produced Under the Rule of Completeness

Although plaintiffs claim that defendant's MOU was "heavily redacted", they also argue that "a significant portion of the MOU" was released. ECF No. 33 at 3. Relying on *Kusama Nio* and Federal Rule of Evidence 106's rule of completeness, plaintiffs argue that this waives the privilege because "[t]he law enforcement privilege can be waived through voluntary disclosure of a significant portion of the information claimed to be privileged." ECF No. 33 at 3. The majority of the MOU was released because it was not privileged. Instead, the MOA was redacted narrowly to protect only law enforcement sensitive material. As no privileged material was released, there can be no waiver. *Cf. Kusuma Nio*, 314 F. Supp. 3d at 247 (concluding that the release of a summary did not disclose the information that fell within the scope of the law enforcement privilege, so the summary did not waive the privilege).

Similarly, plaintiffs do not explain what about the unredacted material is incomplete that requires the release of the entire document. See *Jordan v. United States Dept. of Labor*, 308 F. Supp. 3d 24, 40 (D.D.C. 2018) ("It is abundantly clear that neither Federal Rule of Evidence 106 nor general notions of fairness require a government agency or a court to release to a FOIA requester portions of a partially released record that the agency contends are protected by a FOIA exemption."). They are able to litigate their case based on the version of the MOU attached to the Coenen Declaration and his statement that the redacted passages only describe the specific information sought by ICE and information ICE will provide to identify the subjects of the investigation.

Conclusion

For the foregoing reasons, the Court should deny plaintiffs' motion to compel.

Date: April 14, 2025

*/s/ Joseph A. Sergi*
Joseph A. Sergi (D.C. Bar No. 480837)
Senior Litigation Counsel

Andrew J. Weisberg (N.Y. Bar No. 5616321)
Trial Attorney
Tax Division
U.S. Department of Justice
P.O. Box 14198
Washington, DC 20044
Telephone: (202) 305-0868
Joseph.A.Sergi@usdoj.gov

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I certify that on April 14, 2025, I filed the foregoing Opposition to Plaintiffs' Motion to Compel Production of Unredacted Exhibit with the Clerk of Court using the CM/ECF system, which will serve counsel for Plaintiffs.

*/s/ Joseph A. Sergi*
Joseph A. Sergi
Senior Litigation Counsel
U.S. Department of Justice