**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Centro de Trabajadores Unidos, et al., | |
| Plaintiffs, | |
| v. | Civil Action No. 25-677 (DLF) |
| Scott Bessent, in his official capacity as Secretary of the Treasury, et al., | |
| Defendants. | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO**
**DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT**

Kevin L. Herrera
    (Admitted *pro hac vice*)
Mark H. Birhanu
    (Admitted *pro hac vice*)
Raise the Floor Alliance
1 N. LaSalle Street, Suite 1275
Chicago, Illinois 60602
(312) 795-9115
kherrera@raisethefloralliance.org

Nandan M. Joshi
    (DC Bar No. 456750)
Michael T. Kirkpatrick
    (DC Bar No. 486293)
Public Citizen Litigation Group
1600 20th Street, NW
Washington, DC 20009
(202) 588-7733
njoshi@citizen.org

Alan B. Morrison
    (DC Bar No. 073114)
George Washington Law School
2000 H Street, NW
Washington, DC 20052
(202) 994-7120
abmorrison@law.gwu.edu

*Counsel for Plaintiffs*

April 21, 2025

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES..................................................................................................ii

INTRODUCTION ............................................................................................................... 1

BACKGROUND .................................................................................................................. 1

    Statutory Framework ...................................................................................................... 1

    Defendants' Data-Sharing Agreement ........................................................................... 5

    This Litigation ................................................................................................................ 6

LEGAL STANDARD .......................................................................................................... 7

ARGUMENT ....................................................................................................................... 7

    I.    Plaintiffs have standing..................................................................................... 7

        A.  CTU, ISD, and Somos have associational standing.................................... 8

        B.  IAC has organizational standing ................................................................ 11

    II.   Plaintiffs have stated claims under the APA and for non-statutory review ................ 15

        A.  Plaintiffs have alleged final agency action ........................................... 15

        B.  Plaintiffs have no adequate alternative remedy ................................... 17

CONCLUSION................................................................................................................... 18

# TABLE OF AUTHORITIES

**Cases**                                                                                       **Page(s)**

*Abbott Laboratories v. Gardner*,
  387 U.S. 136 (1967) ........................................................................................ 16

*AFL-CIO v. DOL*,
  No. CV 25-339 (JDB), 2025 WL 1129227 (D.D.C. Apr. 16, 2025) ........................................ 17

*Air Excursions LLC v. Yellen*,
  66 F.4th 272 (D.C. Cir. 2023)............................................................................ 15

*American Anti-Vivisection Society v. USDA*,
  946 F.3d 615 (D.C. Cir. 2020)............................................................................ 11

*Americans for Safe Access v. DEA*,
  706 F.3d 438 (D.C. Cir. 2013)............................................................................ 14

*Animal Legal Defense Fund, Inc. v. Glickman*,
  154 F.3d 426 (D.C. Cir. 1998)............................................................................ 10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ....................................................................................... 7

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ....................................................................................... 7

*Bennett v. Spear*,
  520 U.S. 154 (1997) ...................................................................................... 15

*Bowen v. Massachusetts*,
  487 U.S. 879 (1988) .................................................................................. 17, 18

*Center for Biological Diversity v. EPA*,
  56 F.4th 55 (D.C. Cir. 2022)............................................................................... 8

*Center for Biological Diversity v. Regan*,
  734 F. Supp. 3d 1 (D.D.C. 2024)........................................................................... 8

*Chrysler Corp. v. Brown*,
  441 U.S. 281 (1979) ...................................................................................... 15

*Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*,
  846 F.3d 1235 (D.C. Cir. 2017)...................................................................... 17, 18

*City of Waukesha v. EPA*,
   320 F.3d 228 (D.C. Cir. 2003) ........................................................................ 11

*Clapper v. Amnesty International USA*,
   568 U.S. 398 (2013) ..................................................................................... 10

*Committee on Judiciary of U.S. House of Representatives v. McGahn*,
   968 F.3d 755 (D.C. Cir. 2020) ........................................................................ 11

*Czyzewski v. Jevic Holding Corp.*,
   580 U.S. 451 (2017) ..................................................................................... 13

*Electronic Privacy Information Center v. IRS*,
   910 F.3d 1232 (D.C. Cir. 2018) ................................................................... 2, 3

*FDA v. Alliance for Hippocratic Medicine*,
   602 U.S. 367 (2024) ..................................................................................... 13

*Food & Water Watch, Inc. v. Vilsack*,
   808 F.3d 905 (D.C. Cir. 2015) ......................................................................... 7

*Garcia v. Vilsack*,
   563 F.3d 519 (D.C. Cir. 2009) ....................................................................... 17

*Grell v. Trump*,
   330 F. Supp. 3d 311 (D.D.C. 2018) .................................................................. 7

*Havens Realty Corp. v. Coleman*,
   455 U.S. 363 (1982) ..................................................................................... 12

*Iowaska Church of Healing v. Werfel*,
   105 F.4th 402 (D.C. Cir. 2024) ...................................................................... 14

*Lepelletier v. FDIC*,
   164 F.3d 37 (D.C. Cir. 1999) ........................................................................ 13

*Lujan v. Defenders. of Wildlife*,
   504 U.S. 555 (1992) ....................................................................................... 7

*National Environmental Development Ass'n Clean Air Project v. EPA*,
   752 F.3d 999 (D.C. Cir. 2014) ....................................................................... 16

*Orangeburg, South Carolina  v. FERC*,
   (D.C. Cir. 2017) ........................................................................................... 10

*People for the Ethical Treatment of Animals v. USDA,*
 797 F.3d 1087 (D.C. Cir. 2015) ......................................................................... 12

*Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic,*
 400 U.S. 62 (1970) .............................................................................................. 15

*Public Citizen, Inc. v. NHTSA,*
 489 F.3d 1279 (D.C. Cir. 2007) ......................................................................... 11

*Radack v. U.S. Department of Justice,*
 402 F. Supp. 2d 99 (D.D.C. 2005) ..................................................................... 18

*Sparrow v. United Air Lines, Inc.,*
 216 F.3d 1111 (D.C. Cir. 2000) ........................................................................... 7

*Tanner-Brown v. Haaland,*
 105 F.4th 437 (D.C. Cir. 2024) .......................................................................... 11

*Tozzi v. U.S. Department of Health and Human Services,*
 271 F.3d 301 (D.C. Cir. 2001) ........................................................................... 14

*Transohio Savings Bank v. Director, Office of Thrift Supervision,*
 967 F.2d 598 (D.C. Cir. 1992) ........................................................................... 18

*U.S. Army Corps of Engineers v. Hawkes Co.,*
 578 U.S. 590 (2016) ........................................................................................... 16

*Venetian Casino Resort, LLC v. EEOC,*
 530 F.3d 925 (D.C. Cir. 2008) ........................................................................... 15

**Statutes**

5 U.S.C. § 704 ............................................................................................................ 15, 17

8 U.S.C. § 1253(a)(1) ................................................................................................... 5, 9

26 U.S.C. § 1 ..................................................................................................................... 1

26 U.S.C. § 2(d) ................................................................................................................ 2

26 U.S.C. § 871 ................................................................................................................. 2

26 U.S.C. § 6103 .................................................................................................... 3, 10, 18

26 U.S.C. § 6103(a) .......................................................................................................... 3

26 U.S.C. § 6103(b)(1) ................................................................................................ 3

26 U.S.C. § 6103(b)(2)(A) ........................................................................................... 4

26 U.S.C. § 6103(b)(6) ................................................................................................ 4

26 U.S.C. § 6103(b)(8) ................................................................................................ 4

26 U.S.C. § 6103(c)–(o) ............................................................................................... 4

26 U.S.C. § 6103(i) ...................................................................................................... 4

26 U.S.C. § 6103(i)(1)(A) ............................................................................................ 5

26 U.S.C. § 6103(i)(1)(A), (i)(4), (i)(5) ...................................................................... 4

26 U.S.C. § 6103(i)(2) .......................................................................................... 4, 5, 6

26 U.S.C. § 6103(i)(2)(A) ............................................................................................ 4

26 U.S.C. § 6103(i)(2)(B) ............................................................................................ 5

26 U.S.C. § 6103(i)(4) ................................................................................................. 4

26 U.S.C. § 6103(i)(5) ................................................................................................. 4

26 U.S.C. § 6109 ......................................................................................................... 2

26 U.S.C. § 6109(a), (d) ............................................................................................. 2

26 U.S.C. § 6109(d) .................................................................................................... 2

26 U.S.C. § 6109(i) ..................................................................................................... 2

26 U.S.C. § 6651 ......................................................................................................... 2

26 U.S.C. § 7201 ......................................................................................................... 2

26 U.S.C. § 7213 ......................................................................................................... 4

26 U.S.C. § 7213A ....................................................................................................... 4

26 U.S.C. § 7431 ................................................................................................... 17, 18

26 U.S.C. § 7701(b)(1) ................................................................................................ 2

Pub. L. No. 94-455 ........................................................................................................... 3

Revenue Act of July 1, 1862, § 15, 12 Stat. 432 ........................................................... 3

Revenue Act of 1918, § 257, 40 Stat. 1057 ................................................................... 3

Revenue Act of 1924, § 257, 43 Stat. 253 ..................................................................... 3

**Rules**

Federal Rule of Civil Procedure 12(b)(1) .................................................................. 1, 7

Federal Rule of Civil Procedure 12(b)(6) ............................................................. 1, 7, 15

Local Civil Rule 7(n)(1) ................................................................................................ 1

**Regulations**

20 C.F.R. § 422.104 ....................................................................................................... 2

**Other Authorities**

Rebecca Beitsch, *IRS, DHS reach deal on information sharing on migrants*, The Hill,
Apr. 8, 2025 .............................................................................................................. 9

Jacob Bogage, *DHS officials ask IRS to use tax data to locate up to 7 million immigrants*,
Wash. Post, Apr. 5, 2025 ........................................................................................... 9

Marshall Cohen & Rene Marsh, *IRS reaches data-sharing deal with DHS to help find
undocumented immigrants for deportation*, CNN, Apr. 8, 2025 ................................ 9

Executive Order 14161, 90 Fed. Reg. 8451 (Jan. 30, 2025) .............................. 5, 6, 8

Internal Revenue Manual 11.3.28.5 ............................................................................. 5

Internal Revenue Service, *Introduction to residency under U.S. tax law*,
https://www.irs.gov/individuals/international-taxpayers/introduction-to-residency-under-us-
tax-law ...................................................................................................................... 2

Internal Revenue Service, Pub. 4369, *Disclosure & Privacy Law Reference Guide* 5-4 (rev.
2012), https://www.irs.gov/pub/irs-pdf/p4639.pdf. ......................................... 5, 14

S. Rep. No. 94-938 ........................................................................................................ 3

## INTRODUCTION

Plaintiffs brought this action seeking declaratory and injunctive relief to prevent the unlawful disclosure and inspection of taxpayer information that the Internal Revenue Service (IRS) intends to share with the Department of Homeland Security (DHS) and U.S. Immigration and Customs Enforcement (ICE) to advance the administration's immigration-enforcement agenda. *See* Am. Compl., ECF 17, ¶¶ 1, 3. Such unlawful data-sharing between the agencies is an unprecedented violation of taxpayer privacy protections that have been in place for nearly 50 years. Once the IRS provides the information to ICE, it will be impossible to undo the harm caused by the unlawful disclosure and inspection of confidential taxpayer information. *Id.* ¶ 7. Plaintiffs therefore seek a declaratory judgment to determine the legality of Defendants' data-sharing plan while there is still time to prevent the harm, and they have moved for a preliminary injunction to maintain the status quo in the interim. *Id.* ¶ 8.

Defendants have filed a motion to dismiss the amended complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing that Plaintiffs have failed to establish Article III standing and failed to state a claim under the Administrative Procedure Act (APA) and for non-statutory review. Mtn. to Dismiss, ECF 31, at 23.[1] The Court should deny the motion to dismiss.

## BACKGROUND

### Statutory Framework

The Internal Revenue Code (IRC) imposes taxes on individuals who work in the United States. 26 U.S.C. § 1. The duty to pay federal taxes applies to all individuals who earn federally

---

[1] Defendants' motion to dismiss is set forth in two paragraphs on page 23 of their opposition to Plaintiffs' motion for preliminary injunction. Defendants did not comply with Local Civil Rule 7(n)(1), which required them to file a certified list of the contents of the administrative record with their dispositive motion.

taxable income regardless of work authorization. *Id.* §§ 2(d), 871, 7701(b)(1). As the IRS has explained, "[a]lthough the immigration laws of the United States refer to individuals who are not U.S. citizens as immigrants, nonimmigrants, and undocumented individuals, the tax laws of the United States refer only to residents and nonresidents," and those laws tax both based on income from "sources within the United States."[2] A taxpayer who fails to file federal income tax returns required by law and to pay taxes on their income is subject to civil liability and penalties, *id.* § 6651, and, in cases of willful attempts to evade taxes, criminal liability including a fine of up to $100,000 and five years in prison, *id.* § 7201.

The IRC requires taxpayers to use an identification number to identify themselves and others, such as dependents, in a tax return. *Id.* § 6109. For citizens, permanent residents, and other individuals who are eligible for a Social Security number (SSN), the taxpayer identification number is the taxpayer's SSN. *Id.* § 6109(a), (d). Undocumented workers, however, are not eligible to receive an SSN. 20 C.F.R. § 422.104. To ensure that anyone without an SSN who has a federal tax obligation can file returns to comply with the law, the IRC authorizes the IRS to issue individual taxpayer identification numbers (ITINs) to them for use on their tax returns. 26 U.S.C. § 6109(i).

In connection with its role in collecting federal taxes, the IRS "acquires and maintains a reservoir of sensitive information about taxpayers." *Elec. Priv. Info. Ctr. v. IRS*, 910 F.3d 1232, 1235 (D.C. Cir. 2018). During early periods of tax law, taxpayer information received little privacy protection. For instance, at one time Congress thought it beneficial to make taxpayers' names,

---

[2] IRS, *Introduction to residency under U.S. tax law*, https://www.irs.gov/individuals/international-taxpayers/introduction-to-residency-under-us-tax-law. An "undocumented individual" who is substantially present in the U.S. will be regarded as a U.S. resident for tax purposes. *Id.*

addresses, and tax owed or paid broadly available. *See*, *e.g.*, Act of July 1, 1862, § 15, 12 Stat. 432, 437; Revenue Act of 1918, § 257, 40 Stat. 1057, 1086–87; Revenue Act of 1924, § 257, 43 Stat. 253, 293. Under that regime, "the President could—for any reason or no reason at all—order the IRS to make that sensitive information public." *Elec. Priv. Info. Ctr.*, 910 F.3d at 1235. "Then the Nixon administration compiled a list of political enemies and ordered the IRS to harass them," resulting in a scandal that "prompted the Congress to enact sweeping legislation to protect taxpayer privacy." *Id.*

The Tax Reform Act of 1976, Pub. L. No. 94-455, tit. XII, § 1202, 90 Stat. 1520, 1667, revised section 6103 to "mandate[] that tax '[r]eturns and return information shall be confidential' unless they fall within one of the statute's narrowly drawn exceptions." *Elec. Priv. Info. Ctr.*, 910 F.3d at 1135 (quoting 26 U.S.C. § 6103(a)). In strengthening the IRC's confidentiality provisions, Congress recognized that "the IRS probably has more information about more people than any other agency in this country," but that "in many cases the Congress has not specifically considered whether the agencies which have access to tax information should have that access." S. Rep. No. 94-938 pt. 1, at 316–17 (1976). As revised by the 1976 law, the new section 6103 addressed that concern by establishing the "General rule" that tax information "shall be confidential" unless a statutory exception applies. Those confidentiality protections protect everyone who pays federal taxes—"the ordinary taxpayer and the President alike." *Elec. Priv. Info. Ctr.*, 910 F.3d at 1135.

To that end, IRC § 6103 expressly bars any "officer or employee of the United States" from "disclos[ing] any return or return information obtained by him in any manner in connection with his service as such an officer or an employee or otherwise or under the provisions of" section 6103. 26 U.S.C. § 6103(a). A "return" includes "any tax or information return" or "claim for refund." *Id.* § 6103(b)(1). "Return information" includes "a taxpayer's identity" and "any other data, received

by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense." *Id*. § 6103(b)(2)(A). A taxpayer's identity is defined to include not just the taxpayer's name but also their mailing address and taxpayer identification number. *Id*. § 6103(b)(6). A "disclosure" occurs by "making known to any person in any manner whatever a return or return information." *Id.* § 6103(b)(8). The IRC makes it unlawful for federal officers and employees to engage in unauthorized disclosure or inspection of confidential taxpayer information. 26 U.S.C. §§ 7213, 7213A.

Subsections (c)–(o) of section 6103 contain specific exceptions to the prohibitions on disclosure and inspection of return and return information in subsection (a). None of these exceptions authorize the disclosure of taxpayer returns and return information to facilitate civil enforcement of immigration laws or identifies DHS or ICE as an agency entitled to request such information. Section 6103(i) authorizes such disclosure for certain criminal investigations and proceedings. Several provisions of section 6103(i) permit disclosure of tax information in criminal matters only pursuant to a court order. *See* 26 U.S.C. § 6103(i)(1)(A), (i)(4), (i)(5).

Section 6103(i)(2) permits the disclosure of certain taxpayer information for criminal matters for purposes of investigation of a non-tax crime. This provision permits the IRS to disclose return information (but not returns or taxpayer return information other than the taxpayer's identity) upon request by the "head of any Federal agency." 26 U.S.C. § 6103(i)(2)(A). The return information may be disclosed only to "officers and employees of such agency who are personally and directly engaged in" preparing for a judicial or administrative proceeding to enforce a specifically designated federal criminal statute, or an investigation which may result in such a

proceeding, or a grand jury proceeding. *Id.* (cross-referencing *id.* § 6103(i)(1)(A)). Return information disclosed under section 6103(i)(2) may be used "solely for the use of such officers and employees" in carrying out those activities. *Id.*

To obtain taxpayer information under section 6103(i)(2), the head of an agency must provide a request in writing that includes "(i) the name and address of the taxpayer with respect to whom the requested return information relates; (ii) the taxable period or periods to which such return information relates; (iii) the [criminal] statutory authority under which the proceeding or investigation described in subparagraph (A) is being conducted; and (iv) the specific reason or reasons why such disclosure is, or may be, relevant to such proceeding or investigation." *Id.* § 6103(i)(2)(B). Because a request under section 6103(i)(2) requires the requesting agency to provide the address of the taxpayer, it cannot be used to obtain address information from the IRS. As the Internal Revenue Manual states: "Requests for addresses only cannot be honored because IRC 6103(i)(2) requires that the requester provide an address." IRM 11.3.28.5. The IRS's Disclosure and Privacy Law Reference likewise states: "Requests under section 6103(i)(2) seeking only taxpayers' addresses do not comply with the section."[3]

**Defendants' Data-Sharing Agreement**

On April 7, 2025, Defendants executed a Memorandum of Understanding (MOU), ECF 38-1, concerning the transfer of taxpayer information from the IRS to DHS. The MOU purports to allow the transfer of taxpayer information only for individuals subject to "criminal investigation under 8 U.S.C. § 1253(a)(1) or another specifically designated Federal criminal statute." MOU § 1.c. The very first paragraph of the MOU undermines that limitation, however, by invoking the

---

[3] IRS Pub. 4369, *Disclosure & Privacy Law Reference Guide* 5-4 (rev. 2012), https://www.irs.gov/pub/irs-pdf/p4639.pdf.

authority of Executive Order 14161, 90 Fed. Reg. 8451 (Jan. 30, 2025). As the MOU explains, Executive Order 14161 directs DHS (and other agencies) "to take immediate steps to identify, exclude, or remove aliens illegally present in the United States." MOU § 1.a.  Thus, Plaintiffs have alleged, DHS will use the taxpayer location information received pursuant to the MOU to apprehend undocumented taxpayers for purposes of removal—a use that is not authorized by the only exception that the MOU invokes, section 6103(i)(2).

**This Litigation**

Plaintiffs Centro de Trabajadores Unidos (CTU) and Immigrant Solidarity DuPage (ISD) initially brought this action against the IRS and Treasury Department and IRS officials based on a report that, despite statutory protections for taxpayer information, the IRS was planning on sharing taxpayer information with DHS and ICE to advance the administration's immigration enforcement agenda. Compl., ECF 1. They moved for a temporary restraining order, ECF 11, that the Court denied, finding that "[a] single news report about future cooperation between the IRS and DHS does not establish that the plaintiffs' members are facing imminent injury." Order, ECF 16, at 2.

On March 26, 2025, Plaintiffs filed an amended complaint following reports that a data-sharing agreement between the IRS and DHS was imminent. The amended complaint added additional plaintiffs Somos Un Pueblo Unidos (Somos) and Inclusive Action for the City (IAC), and added DHS, ICE, and their respective agency heads as defendants. On March 31, 2025, Plaintiffs filed a motion for preliminary injunction, ECF 28, to stop Defendants from sharing or accessing the information at issue while this litigation is ongoing. Defendants responded on April 7, 2025, and revealed the existence of the MOU. On April 16, 2025, the Court heard oral argument on the motion for preliminary injunction and set a schedule for filing supplemental materials.

Defendants have moved to dismiss Plaintiffs' amended complaint on two of the grounds on which they oppose Plaintiffs' pending motion for preliminary injunction.

## LEGAL STANDARD

In deciding Defendants' motion to dismiss, under Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6), the Court must "treat the complaint's factual allegations as true … and must grant [P]laintiff[s] the benefit of all inferences that can be derived from the facts alleged." *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (citation omitted); *see, e.g.*, *Grell v. Trump*, 330 F. Supp. 3d 311, 315 (D.D.C. 2018). "[D]etailed factual allegations" are not necessary, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), but "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Thus, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, but Defendants' motion may be denied even if "recovery is very remote and unlikely," *id.* at 556.

## ARGUMENT

### I.    Plaintiffs have standing.

Article III requires that a plaintiff have an injury in fact, caused by the challenged conduct, and redressable by the relief requested. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Each must be supported "with the manner and degree of evidence required at the successive stages of the litigation." *Id.* at 561. As organizations, Plaintiffs have two routes to demonstrate standing: associational standing, based on their members' injuries, or organizational standing, based on their own injuries. *See Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 914, 919 (D.C. Cir. 2015). Although only one Plaintiff must establish standing for the Court to exercise jurisdiction, all have standing here.

**A. CTU, ISD, and Somos have associational standing.**

Associational standing requires that "'(1) at least one member of the association has standing to sue in her own right (based on a showing of harm, causation, and redressability), (2) the interests the association seeks to protect by suing on its members' behalf are germane to its purpose, and (3) neither the asserted claim nor the relief requested requires individual members to participate in the litigation.'" *Ctr. for Biological Diversity v. Regan*, 734 F. Supp. 3d 1, 32 (D.D.C. 2024) (quoting *Ctr. for Biological Diversity v. EPA*, 56 F.4th 55, 66 (D.C. Cir. 2022)). Here, Defendants contest Plaintiffs' showing only as to the first element of the associational standing test. *See* Defs. Opp. to Prelim. Inj., ECF 31, at 8–9. Their arguments lack merit.

CTU, ISD, and Somos are membership organizations that serve undocumented workers who use ITINs to file their taxes. Am. Compl. ¶¶ 10–12, 58–59; *see* Decl. of Ana Guajardo, ECF 28-6, ¶¶ 1–4; Decl. of Cristobal Cavazos, ECF 28-7, ¶¶ 1–4; Decl. of Marcela Diaz, ECF 28-8, ¶¶ 1–4. Their members who use ITINs have relied on assurances that the IRS will not share their tax information with other agencies. Their members' risk of removal would increase significantly if DHS had access to tax returns and related records, putting them at great risk of severe harm. Am. Compl. ¶¶ 10–12, 58–59; *see* Guajardo Decl., ¶¶ 5–6; Cavazos Decl., ¶¶ 5–6; Diaz Decl., ¶¶ 5–6. Plaintiffs' members Jane Doe, John Doe, and James Doe have each described the harm they face if the IRS shares their tax information with DHS. *See* Decl. of Jane Doe, ECF 28-9, ¶¶ 2–6; Decl. of John Doe, ECF 28-10, ¶¶ 2–7; Decl. of James Doe, ECF 28-11, ¶¶ 2–9.

Defendants argue that Plaintiffs lack standing because they have not identified a member under criminal investigation by DHS or ICE. The very first paragraph of the MOU, however, invokes the authority of Executive Order 14161, 90 Fed. Reg. 8451. As the MOU explains, Executive Order 14161 directs DHS (and other agencies) "to take immediate steps to identify,

exclude, or remove aliens illegally present in the United States." MOU § 1.a. And according to DHS, the MOU is designed to "solve" the problem of "millions of illegal aliens" who have been "lost … due to incompetence and improper processing" and "is essential to identify who is in our country …."[4] DHS's statement that the MOU will aid in locating millions of "lost" individuals is consistent with reporting that "[f]ederal immigration officials are seeking to locate up to *7 million people* suspected of being in the United States unlawfully by accessing confidential tax data at the Internal Revenue Service."[5] Thus, the MOU affects the interests of all immigrant taxpayers, including Plaintiffs' members Jane Doe, John Doe, and James Doe, who, like most ITIN users, do not stand accused of having committed a crime, but are at risk of removal whether or not they have willfully overstayed a removal order.

Moreover, for purposes of the MOU, ITIN filers, including Plaintiffs' members, do not need to have "committed a crime" to be "under criminal investigation." Defs. Opp. to Prelim. Inj. 9. Rather, under the MOU, being "under criminal investigation" is a designation that DHS can confer on any individual. The MOU states that DHS "has identified numerous aliens illegally present in the United States whom [it has] represented are under final orders" of removal, and DHS "has represented that each of the above-referenced individuals is under criminal investigation for violations of one or more specifically designated Federal criminal statutes," including 8 U.S.C. § 1253(a)(1), which makes it unlawful for an individual willfully to remain in the country 90 days after a final order of removal. But the MOU does not limit transfer of taxpayer information to

---

[4] Rebecca Beitsch, *IRS, DHS reach deal on information sharing on migrants*, The Hill, Apr. 8, 2025.

[5] Jacob Bogage, *DHS officials ask IRS to use tax data to locate up to 7 million immigrants*, Wash. Post, Apr. 5, 2025 (emphasis added); *see* Marshall Cohen & Rene Marsh, *IRS reaches data-sharing deal with DHS to help find undocumented immigrants for deportation*, CNN, Apr. 8, 2025 ("In a recent video call, DHS officials told IRS officials they needed access to their data to help them locate up to 7 million suspected undocumented immigrants.").

individuals who are under investigation for a violation of 8 U.S.C. § 1253(a)(1). The MOU allows data-sharing if DHS *represents* that the targeted individual is under investigation for a violation of *any* federal criminal statute that DHS designates. MOU § 1.e. Because the MOU enables DHS to obtain confidential taxpayer information for any immigrant it can identify simply by declaring that the individual is under criminal investigation—without meaningfully substantiating that allegation—and because officials have stated their intent to use the information to identify millions of taxpayers, *see supra* at 9 n.5, Plaintiffs' members are at risk. In any event, Plaintiff Somos has members who file federal tax returns and have outstanding removal orders. *See* Diaz Decl., ¶ 9.

Defendants also assert that the data-sharing plan does not cause harm to Plaintiffs' members because the risk of removal for any particular immigrant is speculative. *See* Defs. Opp. to Prelim. Inj. 10. But Defendants have stated their intention to use the information to aid in mass removal, and Plaintiffs' members who are not authorized to be in the United States are entitled by law to the protection of section 6103, which does not permit disclosure for that purpose. The unprecedented policy change and unlawful interpretation of section 6103 reflected in the MOU deprives Plaintiffs' members who comply with their duty to file federal tax returns of the statutory protection that bars sharing their personal information with immigration authorities. The "causation requirement for constitutional standing" is therefore met, because "the challenged agency action authorizes the conduct that allegedly caused the [P]laintiff[s'] injuries" and "that conduct would allegedly be illegal otherwise." *Orangeburg, S.C. v. FERC*, 862 F.3d 1071, 1080 (D.C. Cir. 2017) (quoting *Animal Legal Def. Fund, Inc. v. Glickman*, 154 F.3d 426, 440 (D.C. Cir. 1998) (en banc)). This case is thus not like *Clapper v. Amnesty International USA*, 568 U.S. 398 (2013), where the plaintiffs lacked standing to challenge a surveillance program that required a court order before the plaintiffs' communications could be surveilled. *Id.* at 414 (declining "to

endorse standing theories that rest on speculation about the decisions of independent actors," there, the Foreign Intelligence Surveillance Court). Here, the harm to Plaintiffs' members does not turn on the actions of additional actors, but on the decision of the IRS to allow confidential taxpayer information to be used by ICE to locate individuals for immigration enforcement. "If the agency action causes an individual or individual members of an organization to face an increase in the risk of harm that is 'substantial,' and the ultimate risk of harm also is 'substantial,' then the individual or organization has demonstrated an injury in fact." *Pub. Citizen, Inc. v. NHTSA*, 489 F.3d 1279, 1296 (D.C. Cir. 2007) (opinion of Kavanaugh, J.). DHS has stated that it will use the information to remove millions of people, *see supra* at 9, and the Court should take the agency at its word.

Finally, Defendants contend that Plaintiffs lack standing because data-sharing between the IRS and DHS would be lawful. *See* Defs. Opp. to Prelim. Inj. 8. In conducting the standing inquiry, however, the Court "must be careful not to decide the questions on the merits for or against the plaintiff, and must therefore assume that on the merits the plaintiffs would be successful in their claims." *Tanner-Brown v. Haaland*, 105 F.4th 437, 444 (D.C. Cir. 2024) (quoting *City of Waukesha v. EPA*, 320 F.3d 228, 235 (D.C. Cir. 2003) (per curiam)); *see Comm. on Judiciary of U.S. House of Representatives v. McGahn*, 968 F.3d 755, 762 (D.C. Cir. 2020) (en banc) ("When determining whether a plaintiff has Article III standing, the court must assume that the [plaintiff] will prevail on the merits."). Thus, in evaluating Plaintiffs' standing, the Court must assume that IRS intends to share taxpayer information with ICE in violation of the confidentiality requirement of section 6103.

### B. IAC has organizational standing.

Organizational standing has two requirements. First, an organization must face a "concrete and demonstrable injury to … [its] activities," more than "simply a setback to … [its] abstract

social interests." *Am. Anti-Vivisection Soc'y v. USDA*, 946 F.3d 615, 618 (D.C. Cir. 2020) (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)). Second, the organization must divert "resources to counteract that" injury. *People for the Ethical Treatment of Animals v. USDA*, 797 F.3d 1087, 1094 (D.C. Cir. 2015). IAC meets this test.

IAC is a certified Community Development Financial Institution whose mission is to serve underinvested communities by improving access to capital and advancing policies that help low-income workers and entrepreneurs. Am. Compl. ¶ 13; Decl. of Rudy Espinoza, ECF 28-12, ¶ 1. Many of IAC's clients use ITINs to file their tax returns, open bank accounts, apply for loans, seek business permits, and establish and build credit.  Am. Compl. ¶ 60; Espinoza Decl. ¶¶ 3–4. IAC encourages prospective borrowers who lack SSNs to apply for ITINs to make it possible to obtain mortgages, business loans, and other required licenses and permits. Am. Compl. ¶ 60; Espinoza Decl. ¶ 5.

IAC will be harmed if the IRS provides DHS with ITIN-related information because immigrant-owned businesses are a major market for IAC's services and a significant number of those small business owners rely on ITINs. If information submitted to the IRS is shared with DHS, immigrants will be discouraged from operating small businesses, which will diminish the demand for IAC's services. Am. Compl. ¶ 60; Espinoza Decl. ¶ 8. Immigrant small business owners will also be less likely to apply for or continue to use ITINs, which will cause the loss of business permits and result in business closures. Am. Compl. ¶ 60; Espinoza Decl. ¶¶ 6–8. IAC may also be harmed by higher default rates from its borrowers who use ITINs, and ITIN holders will be less likely to file federal tax returns, which will make it more difficult for IAC to analyze the financial situation of potential borrowers. Am. Compl. ¶ 60; Espinoza Decl. ¶¶ 8–9. IAC may

not be able to lend to such borrowers, or it will be required to expend more time and resources to analyze the credit-worthiness of potential borrowers. Am. Compl. ¶ 60; Espinoza Decl. ¶ 9.

Arguing that IAC lacks standing, Defendants assume that sharing of taxpayer information under the MOU is permitted by section 6103(i)(2). *See* Defs. Opp. to Prelim. Inj. 11–12. As explained above, that argument is irrelevant. Again, for purposes of evaluating standing, the Court must assume that Defendants' data-sharing plan violates section 6103.

Defendants also contend that IAC lacks standing because the Supreme Court has rejected the idea that "standing exists when 'an organization diverts its resources in response to a defendant's actions.'" *Id.* at 12 (quoting *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024). Defendants misstate that decision's holding. *Alliance* holds that an organization's diversion of resources for the purpose of "opposing those policies" that it seeks to challenge is not a sufficient basis for standing. 602 U.S. at 395. Thus, "an organization that has not suffered a concrete injury caused by a defendant's action cannot spend its way into standing simply by expending money to gather information and advocate against the defendant's action." *Id.* at 395. IAC, however, does not argue that it has suffered harm because it has expended money for those purposes. Rather, IAC asserts that Defendants' actions will directly impair IAC's mission because its clients rely on the confidentiality protections in section 6103 to obtain ITINs to file their tax returns and obtain business licenses. Defendants' failure to adhere to those protections will shrink IAC's prospective client base, raise default rates for IAC's borrowers, and increase IAC's cost to evaluate the creditworthiness of immigrant entrepreneurs. *See* Espinoza Decl., ¶¶ 1–9. This loss of "business opportunity satisfies the injury requirement." *Lepelletier v. FDIC*, 164 F.3d 37, 42 (D.C. Cir. 1999); *see also Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 464 (2017) ("For standing purposes, a loss of even a small amount of money is ordinarily an 'injury.'").

Defendants alternatively argue that IAC's economic injuries are not traceable to Defendants' actions because they are caused by the independent actions of IAC's clients or prospective clients, not by Defendants' unlawful sharing of those clients' tax information. *See* Defs. Opp. to Prelim. Inj. 13. An injury is traceable to agency action, however, where "the agency action is at least a substantial factor motivating the third parties' actions." *Tozzi v. U.S. Dep't of Health & Hum. Servs.*, 271 F.3d 301, 308 (D.C. Cir. 2001) (internal quotation marks omitted); *see Americans for Safe Access v. DEA*, 706 F.3d 438, 447–49 (D.C. Cir. 2013). Here, the *sole* motivating factor that would cause IAC's client base to forgo participation in the tax system, and in the broader economy, is the IRS's decision to renege on its decades-long commitment not to share taxpayer information with ICE. *See* Espinoza Decl., ¶¶ 6–7. Indeed, the IRS itself has recognized that immigrants—and all taxpayers—rely on the assurance of confidentiality when participating in the tax system. *See* IRS Pub. 4369, at 1-9.

Finally, Defendants' reliance on *Iowaska Church of Healing v. Werfel*, 105 F.4th 402 (D.C. Cir. 2024), is misplaced. There, the D.C. Circuit permitted a church to challenge denial of its tax-exempt status but held that the church lacked standing to raise a separate claim under the Religious Freedom Restoration Act (RFRA) relating to its use of a hallucinogenic tea in its religious ceremonies. Solely with respect to the RFRA claim, the D.C. Circuit held that the church's loss of income from membership donations was not traceable to the IRS but instead depended on the "independent decisions of third-party donors." *Id.* at 413 (internal quotation marks omitted). In that case, the IRS lacked authority to grant the church a religious exemption from the Controlled Substances Act, the statute that made the church's use of the tea unlawful. *Id.* at 406, 411. Here, the IRS has the authority—indeed, the legal duty—to abstain from sharing taxpayer information

for immigration enforcement purposes. The financial harm that IAC will suffer is directly traceable to the IRS's failure to do so.

## II.    Plaintiffs have stated claims under the APA and for non-statutory review.

Unlike on a typical motion to dismiss under Rule 12(b)(6), Defendants have already presented the Court with their legal arguments in the context of opposing a motion for preliminary injunction, and the contours of the challenged agency action have been revealed by the production of an MOU, executed and revealed after the filing of the amended complaint, that sets forth certain details of the data-sharing agreement between the agencies. That record, however, cannot be considered in deciding Defendants' motion to dismiss for failure to state a claim. The Court is limited to reviewing the allegations as set forth in the operative complaint. *See Air Excursions LLC v. Yellen*, 66 F.4th 272, 277 (D.C. Cir. 2023). Defendants ignore this black-letter law and rest their argument entirely on the MOU. *See* Mtn. to Dismiss 23. In any event, the allegations in the amended complaint are sufficient to state Plaintiffs' APA and non-statutory review claims.

### A.  Plaintiffs have alleged final agency action.

The APA authorizes judicial review of "final agency action." 5 U.S.C. § 704. Courts have held that an agency's decision to disclose information to others is final agency action subject to judicial review. *Chrysler Corp. v. Brown*, 441 U.S. 281, 318 19 (1979) (holding that a "decision to disclose [reports under the Freedom of Information Act] is reviewable agency action" under the APA); *Venetian Casino Resort, LLC v. EEOC*, 530 F.3d 925, 931 (D.C. Cir. 2008) ("Adopting a policy of permitting employees to disclose confidential information without notice" is final agency action). Agency action is final when it "mark[s] the 'consummation' of the agency's decisionmaking process," that is, it is not "of a merely tentative or interlocutory nature," and the action is one "by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Bennett v. Spear*, 520 U.S. 154, 178 (1997) (quoting *Port of Boston*

15

*Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 71 (1970)). Courts take a "pragmatic" approach in applying these factors. *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 599 (2016) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967)).

Defendants argue that the amended complaint does not state an APA claim "because there is no final agency action." Mtn. to Dismiss 23. Defendants are wrong. Plaintiffs allege that the IRC does not permit disclosure or inspection of taxpayer information to facilitate the civil enforcement of immigration laws, Am. Compl. ¶ 4; Defendants' data-sharing plan will circumvent the IRC's limits on disclosing and inspecting taxpayer information to facilitate ICE's ability to find, arrest, and remove individuals from the United States under its civil enforcement authority, *id.* ¶ 6; the IRS has previously announced to the public that section 6103 does not authorize it to share tax data with ICE, *id.* ¶ 56; and entering an information sharing agreement with DHS requires the IRS to change its interpretation of section 6103 and conclude that section 6103 authorizes the sharing of tax data with ICE, *id.* ¶ 56. Such a change in IRS policy and the abandonment of its previous position by the signing of an MOU with DHS marks the consummation of the agency's decisionmaking process about whether IRS will share taxpayer information with immigration authorities, and it will affect rights and obligations. *See Nat'l Env't Dev. Ass'n Clean Air Project v. EPA*, 752 F.3d 999, 1007 (D.C. Cir. 2014) (finding action to be final where it provided "firm guidance to enforcement officials about how to handle permitting decisions."). The only open question is when the IRS will use its new authorization. It need not inform Plaintiffs in advance that the disclosures to ICE will be made, and once made, it will be too late for Plaintiffs to seek relief from this Court.

**B. Plaintiffs have no adequate alternative remedy.**

The APA provides that "final agency action for which there is no other adequate remedy in a court [is] subject to judicial review." 5 U.S.C. § 704. To determine "whether an alternative remedy is 'adequate' and therefore preclusive of APA review, [courts] look for 'clear and convincing evidence' of 'legislative intent' to create a special, alternative remedy and thereby bar APA review." *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, 846 F.3d 1235, 1244 (D.C. Cir. 2017) (*CREW*) (quoting *Garcia v. Vilsack*, 563 F.3d 519, 523 (D.C. Cir. 2009)). While "[a]n alternative that provides for de novo district-court review of the challenged agency action offers ... evidence of Congress' will" to displace an APA remedy, *id.* at 1245, the potency of this evidence is fatally diminished where there is a significant "gap between the relief [the alternative] provides and the relief ... [sought] under the APA," *id.* at 1246 (emphasis added). For example, the availability of "a naked money judgment against the United States" under an alternative statutory scheme is not "an adequate substitute for prospective relief" under the APA where a plaintiff seeks "entry of declaratory or injunctive relief that requires the [government] to modify future practices." *Bowen v. Massachusetts*, 487 U.S. 879, 905 (1988); *cf. Garcia*, 563 F.3d at 525 (holding that an alternative remedial scheme was adequate where a successful plaintiff could "obtain declaratory and injunctive relief against [an] agency itself, in addition to money damages, and such remedies would presumably deter [the agency] to the same extent as a successful APA claim"); *AFL-CIO v. DOL*, No. CV 25-339 (JDB), 2025 WL 1129227, at *14 (D.D.C. Apr. 16, 2025) (holding that availability of damages under the Privacy Act did not bar APA claim because "[d]amages and injunctions belong to different genres: one compensates for harm while the other prevents it.").

Contrary to Defendants' suggestion, 26 U.S.C. § 7431, which provides a damages remedy for knowing or negligent disclosure or inspection of tax return or return information in violation of section 6103, does not provide the relief that Plaintiffs seek: declaratory and injunctive relief to prevent the IRS from unlawfully sharing taxpayer information for purposes of locating individuals for immigration enforcement. *Cf. Bowen*, 487 U.S. at 903 (noting that Congress withheld APA remedies when an adequate alternative remedy already existed so as not to "duplicate existing procedures for review of agency action"); *Radack v. U.S. Dep't of Justice*, 402 F. Supp. 2d 99, 104 (D.D.C. 2005) ("Because Radack seeks declaratory and injunctive relief in addition to damages, the Privacy Act does not provide an 'adequate remedy.'" (citing *Transohio Sav. Bank v. Dir., Off. of Thrift Supervision*, 967 F.2d 598, 608 (D.C. Cir. 1992)). Defendants' argument that "the statutory text [of section 7431]" does not indicate "that Congress intended to permit any other remedy," Defs. Opp. to Prelim. Inj. 17, is misplaced. Because Congress did not expressly foreclose an APA remedy in section 7431, the relevant question is whether section 7431 represents "'clear and convincing evidence' of 'legislative intent'" to bar APA review." *CREW*, 846 F.3d at 1244. The answer to that question is "no."

Defendants assert, without explanation, that "[t]his Court should also deny Plaintiffs' request for equitable relief because there is a clear statutory remedy" under section 7431. Mtn. to Dismiss 23. Surely, no non-citizen who has been removed from this country because of an unlawful disclosure in violation of section 6103 would consider that the right to sue the United States Government for money damages is an adequate substitute for remaining in this country. Defendants have wholly failed to carry the burden of showing that the possibility of money damages under section 7431 is a proper basis for foreclosing Plaintiffs' claim for equitable relief.

## CONCLUSION

The Court should deny Defendants' motion to dismiss the amended complaint.

18

Dated: April 21, 2025                                    Respectfully submitted,

                                                        /s/ Michael T. Kirkpatrick
Kevin L. Herrera                                        Michael T. Kirkpatrick
  (admitted *pro hac vice*)                               (DC Bar No. 486293)
Mark H. Birhanu                                         Nandan M. Joshi
  (admitted *pro hac vice*)                               (DC Bar No. 456750)
Raise the Floor Alliance                                Public Citizen Litigation Group
1 N. LaSalle Street, Suite 1275                         1600 20th Street, NW
Chicago, Illinois 60602                                 Washington, DC 20009
 (312) 795-9115                                         (202) 588-7733
kherrera@raisetheflooralliance.org                      njoshi@citizen.org

                                                        Alan B. Morrison
                                                          (DC Bar No. 073114)
                                                        George Washington Law School
                                                        2000 H Street, NW
                                                        Washington, DC 20052
                                                        (202) 994-7120
                                                        abmorrison@law.gwu.edu

                     *Counsel for Plaintiffs*