**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CENTRO DE TRABAJADORES UNIDOS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> SCOTT BESSENT, in his official capacity as Secretary of the Treasury, et al., <br><br> Defendants. | Civil Action No. 25-677 (DLF) |

**DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS**

**INTRODUCTION**

The IRS *must* disclose certain tax return information to other federal agencies when it receives a valid request connected to a criminal investigation. I.R.C. (26 U.S.C.) § 6103(i)(2). Treasury and DHS have memorialized through an MOU how Immigration and Customs Enforcement ("ICE") can make such a request. *See* ECF No. 38-1. The MOU requires both agencies to abide by Section 6103's restrictions. *See id.* at 6 ¶ 3, 6 ¶ 5(B), 7 ¶ 6(B), 7 ¶ 6(E). Despite being confronted with proof that the IRS has no intention of violating federal law restricting disclosures of tax return information, Plaintiffs continue to speculate that ICE will request, and the IRS will disclose, tax return information for civil immigration enforcement. *See* ECF No. 45. They ask the Court to "assume that IRS intends to share taxpayer information with ICE in violation of the confidentiality requirement of section 6103." *Id.* at 18.

But that "injury" is conjectural and hypothetical. It cannot confer standing on Plaintiffs. Underlining this point, Plaintiffs still have not produced any declarations from members who have violated a criminal statute and may be subject to the MOU's information sharing to support associational standing. *See* ECF Nos. 28-9, 28-10, 28-11. And any future harm to IAC is too speculative and attenuated from the United States' conduct to create organizational standing. Nor is standing the only problem with this suit. Plaintiffs argue that their APA claim is valid because there is final agency action, but they ignore the non-discretionary terms of Section 6103(i)(2) that prevent the IRS from engaging in any decisionmaking process. And even though the monetary remedy for unlawful disclosures of return information proscribed by Section 7431 may seem inadequate to address possible deportation, Congress intended Section 7431's damages action to be the exclusive remedy for violations of Section 6103.

1

Thus, the United States requests that the Court grant its motion to dismiss the Amended Complaint.[1]

## ARGUMENT

### I. Plaintiffs Cannot Allege an Injury In Fact.

Plaintiffs have failed to allege facts sufficient to show an injury in fact. An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). If a plaintiff stakes its standing on a future injury, the Supreme Court has "repeatedly reiterated that threatened injury must be *certainly impending* to constitute injury in fact, and that allegations of possible future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).

In evaluating Plaintiffs' standing, the Court must treat the well-pleaded facts in the Amended Complaint as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). On the other hand, the Court need not accept as true a legal conclusion couched as a factual allegation. *Id.* And the Court must decide whether the factual matter in the complaint plausibly gives rise to an entitlement to relief. *Id.*

#### A. Associational Standing

Plaintiffs continue to maintain that CTU, ISD, and Somos have associational standing because, according to newspapers and Executive Order 14161, all alien taxpayers "are at risk of

---

[1] Plaintiffs claim the United States failed to follow Local Rule 7(n)(1) by not filing a certified list of contents of the administrative record. Local Rule 7(n)(1) applies to "cases involving judicial review of administrative agency actions." The United States' position is that APA review is unavailable in this case, and therefore it does not fall under Local Rule 7(n)(1). If the Court denies the United States' motion to dismiss, the United States requests that it be given 30 days from the filing of its answer to submit a certified list of the contents of the administrative record.

removal whether or not they have willfully overstayed a removal order." ECF No. 45 at 16. Plaintiffs argue that all their members are at risk because the MOU permits information sharing about any taxpayer under criminal investigation for any crime under Section 6103(i)(2). According to Plaintiffs, the United States has admitted its "intention [is] to use the [tax return] information to aid in mass removal." *Id.* at 17.

To establish associational standing, Plaintiffs must show that their individual members were injured and would have individual standing. *See Elec. Privacy Info. Ctr. v. United States Dep't of Commerce (EPIC)*, 928 F.3d 95, 100–01 (D.C. Cir. 2019). But none of the individual declarations Plaintiffs offer state that the declarant has committed a crime that might fall within ICE's investigative jurisdiction. *See* ECF Nos. 28-9, 28-10, and 28-11. Plaintiffs note in passing that Somos has members who file tax returns and have outstanding removal orders. ECF No. 45 at 17. But "[w]hen a [plaintiff] claims associational standing, it is not enough to aver that unidentified members have been injured." *Chamber of Commerce of United States v. EPA*, 642 F.3d 192, 200 (D.C. Cir. 2011). Plaintiffs speculate that ICE might, at some point, launch an investigation without meaningful support solely as a pretext to receive tax return information from the IRS and use it for civil immigration enforcement. *See* ECF 45 at 17. That is too speculative to support standing—it is merely conjecture that in the future, the United States may break the law.

Plaintiffs cannot point to a specific action of the United States that will harm them. The IRS has not received any requests from ICE and has not disclosed any return information under the MOU. *See* Declaration of John J. Walker at ¶¶ 4–5, attached as **Exhibit A**. Plaintiffs are instead trying to stop a hypothetical future action that might violate Section 6103(i)(2). That "allegation[] of possible future injury" is not an injury in fact. *See Clapper*, 568 U.S. at 409. If

3

Plaintiffs' allegations were sufficient to confer standing, the United States would be powerless to defend itself against any litigant who sought an injunction requiring the Government to follow the law because it might harm them specifically by violating it on some undetermined future date. See *City of Los Angeles v. Lyons*, 461 U.S. 95, 105-06 (1983) (plaintiff lacked standing to seek injunctive relief against police violating the law because he could not assert that police always choked citizens they encountered; that the city authorized that violation of the law; or that he was realistically threatened by officers acting within the letter of the city's policy). Plaintiffs offer nothing apart from unsourced allegations in newspaper articles to suggest the IRS will violate the law. The MOU between DHS and Treasury only allows information sharing under Section 6103(i)(2). Nothing in the MOU contradicts the requirements of Section 6103(i)(2). Executive Order 14161 states that "it shall be implemented consistent with applicable law," signifying that it is not meant to supersede Section 6103(i)(2).

     Plaintiffs also ask the Court to ignore the MOU and assume, for standing, that they would be successful on the merits. ECF No. 45 at 18. This case is solely focused on the allegation that DHS and Treasury have agreed to unlawfully share tax return information. ECF No. 17 ¶¶ 5–7. Plaintiffs cannot expect the Court to ignore the information sharing agreement itself now that it is signed, and Plaintiffs can see it offers no avenue for unlawful information sharing. Without the MOU to tie together their theory of the case, Plaintiffs are left with no more than an amorphous belief that the United States is determined to violate the law. And a desire to see the government follow the law is not enough to confer standing. See *Bernstein v. Kerry*, 962 F. Supp. 2d 122 (D.D.C. 2013) (citing *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 482–83 (1982)) (Huvelle, J.).

### B. Organizational Standing

IAC maintains that it has organizational standing because the information sharing agreement between Treasury and DHS will discourage immigrants "from operating small businesses, which will diminish the demand for IAC's services." ECF No. 45 at 19. IAC insists that the harm stems from immigrants' reliance on the IRS's representations that their tax return information will be kept confidential. *Id.* at 20. But in its original enactment, as now, Section 6103(i)(2) required the IRS to provide applicable return information when it received a request that met the statute's requirements. Plaintiffs offer no reason to think that the IRS's past statements were intended to contradict that statutory directive.

And the same is true now. The MOU between Treasury and DHS only allows for tax return information to be shared if the requirements of Section 6103(i)(2) are met. *See* MOU attached to ECF No. 38-1. There is no indication in the MOU that tax return information will be shared for civil immigration purposes or that Section 6103(i)(2) is being interpreted to allow for information to be shared for that purpose. *Id.*

Thus, any future harm IAC suffers will not be traceable to the United States, but to its customers' mistaken belief—either that the IRS's past statements meant that it would not turn over information for *criminal* immigration enforcement, which does not fit with the statute, or that the IRS has now agreed to provide tax return information for *civil* immigration enforcement, which does not fit with either the statute or the MOU—and its customers' decision not to file federal income tax returns. The only immigrants at risk from information the IRS provides to ICE are the ones under criminal investigation. *See* ECF No. 38-1. Under the MOU, the IRS will only release return information if ICE provides it with the date of a final order of removal for the target of the investigation and the related case number. *See id.* at 7. To be clear, although the MOU requires ICE to provide information about the taxpayer's final order of removal, ICE can

5

seek information under Section 6103(i)(2) to investigate a variety of immigration crimes. Any harm resulting from a deportation is traceable to particular immigrant's status, including the underlying order of removal, not the release of tax return information.

## II. Plaintiffs Do Not Plead a Valid Cause of Action Under the APA.

Plaintiffs first claim that the Court cannot consider the MOU for the United States' motion to dismiss because it is limited to the allegations in the complaint. But on a motion to dismiss, under the incorporation-by-reference doctrine, a court can consider a document that is repeatedly referenced in the complaint and essential to the claims. *See Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1133 (D.C. Cir. 2015). Plaintiffs' entire Amended Complaint is based on what they thought was in the information sharing agreement between Treasury and DHS. *See* ECF No. 17 ¶¶ 37–38, 51, 56–57, 61. They cannot now ask the Court to ignore the foundation of their claim just because they have reviewed the unredacted MOU and see that it merely reiterates the United States must follow Section 6103 when sharing tax return information.

Similarly, Plaintiffs maintain that the MOU is a change in policy, in part because they claim Internal Revenue Manual ("IRM") 11.3.28.4(5) and IRS Publication 4639 prohibit the IRS from disclosing addresses under Section 6103(i)(2).[2] ECF No. 45 at 12. The IRS is not bound to follow the IRM, which "do[es] not have the force and effect of law." *Marks v. Commissioner*, 947 F.2d 983, 986 n.1 (D.C. Cir. 1991) (citing *Pomeroy v. United States*, 864 F.2d 1191, 1994–95 (5th Cir. 1989)). Similarly, IRS publications are not legally binding on the agency. *See United States v. Josephberg*, 562 F.3d 478, 498–99 (2d Cir. 2009) (internal citations omitted). But if the

---

[2] Plaintiffs appear to intend to cite IRM 11.3.28.4(5), rather than IRM 11.3.28.5. *See* ECF No. 45 at 12. Both paragraphs are available at https://www.irs.gov/irm/part11/irm_11-003-028#idm140113599747280. Publication 4639 is available at https://www.irs.gov/pub/irs-pdf/p4639.pdf. Plaintiffs mistakenly refer to it as Publication 4369. *See* ECF No. 45 at 12 and 21.

Court were to consider the IRM and Publication 4639, neither of them intended to prevent the IRS from complying with its statutory obligation under Section 6103(i)(2). The statement in IRM 11.3.28.4(5) that "requests for addresses only are invalid [under IRC 6103(i)(2)]" may well anticipate another agency's request that does not include the taxpayer's address as required by Section 6103(i)(2)(B)(i). Likewise, Publication 4639's statement on page 5-4 that "requests under section 6103(i)(2) seeking only taxpayers' addresses do not comply with" Section 6103(i)(2) may presume the requester did not provide the address as the statute requires.

Plaintiffs claim that there is final agency action because the information sharing agreement will result in civil immigration enforcement, and the execution of the MOU "marks the consummation of the [agencies'] decisionmaking process about whether the IRS will share taxpayer information with immigration authorities." *See* ECF No. 45 at 22. The MOU makes no reference to civil immigration enforcement, and in fact requires DHS to share background information about the criminal investigation to the IRS to prove the request is not a pretext for civil deportation. *See* MOU attached to ECF No. 38-1. The MOU is not part of the decisionmaking process because it merely reiterates the requirements of Section 6103(i)(2). Even if the MOU did not exist, Plaintiffs and their members would be in the same position because the IRS has no discretion on whether to release tax return information if the requirements of Section 6103(i)(2) are met. Irrespective of what the MOU says or whether it even exists, the IRS has always been obligated to release tax return information to DHS or ICE if the request complied with Section 6103(i)(2). The IRS's compliance with Section 6103(i)(2) is not equivalent to an agency determining "rights and obligations" because the IRS cannot decide not to follow its statutory obligations. *Vill. of Bald Head Island v. Army Corp of Eng'rs*, 714 F.3d 186, 193 (4th

7

Cir. 2013), *aff'g* 833 F. Supp. 2d 524, 532 (E.D.N.C. 2011).³ Instead, the MOU is better characterized as "a preliminary, procedural, or intermediate agency action," which is typically only reviewable "on the review of the final agency action." *See, e.g.*, *Vanda Pharms., Inc. v. U.S. Food & Drug Admin.*, 123 F.4th 513, 521 (D.C. Cir. 2024) (internal quotation marks and bracket omitted); *see also* 5 U.S.C. § 704. The final agency action will not occur until information is requested and disclosed under the MOU. At that point, the legality of the MOU will be properly teed up for a court to evaluate.

And APA relief is unavailable because anyone injured by an unlawful disclosure of return information has another adequate remedy. Plaintiffs, and indeed deported immigrants, may not consider monetary compensation under Section 7431 for an unlawful release of tax return information to be an adequate legal remedy. But a remedy is adequate if there is a clear indication that Congress created an independent cause of action to address harm. *See Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988) ("§ 704 'does not provide additional judicial remedies in situations where the Congress has provided special and adequate review procedures.'"); *Citizens for Responsibility & Ethics in Washington v. DOJ*, 846 F.3d 1235, 1245 (D.C. Cir. 2017). Section 7431 is the exclusive remedy Congress created for taxpayers to challenge unlawful disclosures of tax return information. *United States v. Orlando*, 281 F.3d 586, 596 (6th Cir. 2002); *Hobbs v. United States*, 209 F.3d 408, 411 (5th Cir. 2000) (citing 26 U.S.C. §§ 6103 and 7431). A prosecutor can bring criminal penalties under Section 7213 against IRS employees who willfully and unlawfully release tax return information. *Orlando*, 281 F.3d at 596. Courts

---

³ The MOU does not change the requirements of Section 6103(i)(2), but it still has a significant role to play in terms of information sharing between IRS and ICE. Under Section 6103(p)(4), an agency receiving return information under Section 6103(i)(2) must show that the information will be properly safeguarded. The MOU accomplishes that. *See* ECF No. 38-1 at 10-13 ¶ 9.

have repeatedly found that suppression of evidence obtained in violation of Section 6103 is not appropriate because Congress already created an exclusive remedy. *Id.* at 595–96; *Nowicki v. Commissioner*, 262 F.3d 1162, 1163 (11th Cir. 2001) ("Congress has specifically provided civil (I.R.C. § 7431) as well as criminal penalties (I.R.C. § 7213) for violations of § 6103. There is no statutory provision requiring exclusion of evidence obtained in violation of § 6103 and we will not invent one."); *United States v. Michaelian*, 803 F.2d 1042, 1048–50 (9th Cir. 1986). There is no independent cause of action or waiver of sovereign immunity other than Section 7431 that Congress has authorized to seek redress for an unlawful disclosure of return information. *See Perry Capital LLC v. Mnuchin*, 864 F.3d 591, 620–21 (D.C. Cir. 2017) (there is no cause of action under the APA if plaintiff already has an adequate legal remedy).

## CONCLUSION

Plaintiffs have failed to demonstrate that any of their members have suffered a harm or are at risk of imminent harm. Without a showing that any individual members have standing, Plaintiffs cannot prove associational standing. IAC cannot show that any harm it will suffer from the release of tax return information is traceable to the United States' conduct, and thus there is no organization standing. Plaintiffs also have no cause of action under the APA because the IRS's non-discretionary compliance with a statute is not an agency action, and Congress's clear intent to create an exclusive means of redress for unlawful releases of tax return information is an adequate legal remedy.

Therefore, for all the reasons stated above, the Court should grant the United States' motion to dismiss the Amended Complaint.

Date: April 28, 2025

> */s/ Andrew J. Weisberg*
> Joseph A. Sergi (D.C. Bar No. 480837)
> Senior Litigation Counsel

Andrew J. Weisberg (N.Y. Bar No. 5616321)
Trial Attorney
Tax Division
U.S. Department of Justice
P.O. Box 14198
Washington, DC 20044
Telephone: (202) 305-0868
Joseph.A.Sergi@usdoj.gov
*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I certify that on April 28, 2025, I filed the foregoing Reply to Plaintiffs' Opposition to Motion to Dismiss with the Clerk of Court using the CM/ECF system, which will serve counsel for Plaintiffs.

*/s/ Andrew J. Weisberg*
Andrew J. Weisberg
Trial Attorney, Tax Division
U.S. Department of Justice
