**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Centro de Trabajadores Unidos, et al., | |
| Plaintiffs, | |
| v. | Civil Action No. 25-677 (DLF) |
| Scott Bessent, in his official capacity as Secretary of the Treasury, et al., | |
| Defendants. | |

**PLAINTIFFS' SUPPLMENTAL MEMORANDUM**
**IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**
**[UNDER SEAL]**

Pursuant to the Court's minute order of April 16, 2025, Plaintiffs submit this supplemental memorandum to address Defendants' Memorandum of Understanding (MOU), which had not been executed when Plaintiffs filed their motion for a preliminary injunction. The MOU confirms the need for a preliminary injunction because it enables sharing of taxpayer information that 26 U.S.C. § 6103(i)(2) does not permit. Longstanding IRS precedent forbids the use of section 6103(i)(2) to obtain a taxpayer's address from the IRS. The MOU makes clear, however, that the *only* information that DHS and ICE will seek from the IRS under the MOU is taxpayer address information. Because the MOU enables unlawful information sharing, a preliminary injunction is needed to avoid irreparable harm pending a final decision in this case. Plaintiffs below propose a revised preliminary injunction order to address these concerns.

**I.      Section 6103(i)(2) does not allow the sharing of taxpayer address information.**

Section 6103(i)(2) authorizes the disclosure of certain taxpayer information to other agencies without a court order. But the type of information that can be disclosed is limited. Returns

may not be disclosed, and neither may taxpayer return information. *See* 26 U.S.C. § 6103(a), (b)(1), (b)(3), (i)(2)(A). Instead, only return information that is *not* taxpayer return information is subject to disclosure. *See id*. § 6103(b)(3), (i)(2). Although a taxpayer's address is taxpayer return information, an exception in section 6103(i)(2), enacted in 1978, provides that a taxpayer's identity, including the taxpayer's address, should not be treated as taxpayer return information for purposes of that provision, when other information is being provided. *Id*. § 6103(i)(2)(C). The unredacted MOU, first made available to Plaintiffs at the April 16 hearing, confirms that Defendants seek to invoke this exception to share address information—and *only* address information—between the IRS and ICE. *See* MOU §§ 1.e., 3, 5, 6.A. In order words, DHS and ICE do not intend to use the MOU to seek return information relevant to a criminal investigation, but to access information under the guise of § 6103(i)(2) for an unlawful purpose.

Internal Revenue Manual 11.3.28.5(4) provides that, in response to a request for taxpayer information under 26 U.S.C. § 6301(i)(2), the IRS should:

> Disclose the name and address of the taxpayer under IRC 6103(i)(2) **only if** other than taxpayer return information is also requested. Requests for addresses only cannot be honored because IRC 6103(i)(2) requires that the requester provide an address.

(emphasis added). During the April 16 hearing, Defendants suggested that the foregoing policy does not necessarily reflect the IRS's official position on whether section 6103(i)(2) authorizes the IRS to disclose a taxpayer's address where no other information relevant to a criminal investigation is sought. That is incorrect. The policy set out in the Internal Revenue Manual embodies a longstanding agency position established by senior agency officials, the White House, and Congress.

When Congress first enacted section 6103(i)(2) in 1976, it did not authorize the IRS to disclose a taxpayer's name and address to prosecutors pursuing criminal matters. *See* Tax Reform

Act of 1976, Pub. L. No. 94-455, § 1202(a), 90 Stat. 1520, 1676. Then, as now, section 6103(i)(2) did not permit the IRS to disclose "taxpayer return information," which is return information furnished by or on behalf of the taxpayer. *See* 26 U.S.C. §§ 6103(b)(3), 6103(i)(2)(A). Congress later recognized that "[i]n order for the IRS to transmit" the information that could be furnished under section 6103(i)(2), "it is necessary, of course, to provide the name and address of the taxpayer." S. Rep. No. 95-745, at 61 (1978). "Because the taxpayer furnishes his name and address on his return," it was "arguable that the IRS would not be able to provide this information to the Justice Department or other Federal agency, thus completely negating the purpose and operation" of the provision. *Id*. Congress accordingly amended section 6103(i)(2) to "permit the IRS to transmit … the name and address of a taxpayer along with return information … pertaining to, but not furnished by or on behalf of, the taxpayer." *Id*. at 63; *see* H.R. Rep. No. 95-700, at 53, 55 (same); Revenue Act of 1978, Pub. L. No. 95-600, § 701(bb), 92 Stat 2763, 2922 (1978).

In 1982, the White House, the Treasury Department, and the IRS weighed whether section 6103(i)(2) permitted "disclosure of taxpayer information to the Selective Service to aid in the prosecution of non-registrants." Memorandum from Fred F. Fielding, Counsel to the President, for Craig L. Fuller, White House Cabinet Secretary (Aug. 6, 1982), at 1 (Fielding Memo) (attached as Exhibit A). The IRS had noted that, although "an argument can be made that the Service can discuss current address information for the purpose of locating and prosecuting violators of the Selective Service Act," section 6103(i)(2) could "be read to support a different and much more restrictive result." Memorandum from Joel Gerber, Deputy Chief Counsel, IRS to Roscoe L. Egger, Jr., Commissioner (Apr. 2, 1982), at 2 (attached as Exhibit B). Because "one prerequisite for a proper request" is providing "the name and address of the taxpayer," the requirement presumes that the purpose of section 6103(i)(2) was to provide "information other than the

taxpayer's current address." *Id*. Moreover, looking at section 6103 "as a whole," "when Congress intended for other agencies to receive address information, it specifically provided for such disclosure." *Id*. at 2–3. The IRS also observed that the legislative history of the 1978 amendment "does not reveal any indication that Congress intended to open up a new source of information to the Department of Justice," but rather "was designed simply to correct a technical defect in the statute." *Id*. at 3.

A subsequent memorandum to the general counsel of the Treasury Department reached the same conclusion. Memorandum from John J. Kelleher to Peter J. Wallison, General Counsel, Treasury Dep't (May 11, 1982) (attached as Exhibit C). In addition, the memorandum noted that permitting prosecutors to use section 6103(i)(2) to obtain location information conflicted with the Reagan administration's support for a bill that would later become section 6103(i)(5), "allow[ing] disclosure of certain tax information" to locate fugitives from justice. *Id*. at 2. As the memorandum explained, "It would seem that there would be no need for such a change if [the] Justice [Department] could, under current law (section 6103(i)(2)), simply write to IRS and request the current addresses of fugitives from Justice." *Id*.

On the basis of the foregoing analyses, General Counsel Wallison advised Treasury Secretary Donald Regan against disclosing taxpayer address information "if the purpose of such disclosure is to aid in the prosecution of non-registrants." Memorandum from Peter J. Wallison, General Counsel, Treasury Dep't, to Treasury Secretary Donald Regan (May 17, 1982), at 1 (attached as Exhibit D). Likewise, the Fielding Memo conducted its own "preliminary review" and, adopting the same analysis, recommended that "further action on the Administration's proposal to permit such disclosure [of address information] be postponed pending a thorough review of the legal and policy issues presented." Fielding Memo at 1.

4

Any lingering doubt about whether section 6103(i)(2) authorized the disclosure of taxpayer address information where no other information relevant to a criminal investigation was sought ended a few months later when Congress enacted Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. No. 97-248, 96 Stat. 324. The 1982 law rewrote paragraphs (1) through (5) of section 6103(i) into substantially its current form. *Id*. § 356, 96 Stat. at 641. As relevant here, in enacting section 6103(i)(5), Congress adopted the proposal supported by the Reagan administration to enable the Department of Justice to seek and obtain a court order authorizing access to tax records to locate fugitives from justice. *See* 96 Stat. at 644. In doing so, Congress recognized that, as the administration had concluded, section 6103(i)(2) cannot be used for the purpose of locating individuals for prosecution and that "taxpayer identity information [should] be treated as taxpayer return information [i.e., ineligible for disclosure under section 6103(i)(2)] unless return information (other than taxpayer identity information) is requested and disclosed." H.R. Rep. No. 97-760, at 674 (1982). By enacting section 6103(i)(5), Congress definitively foreclosed use of section 6103(i)(2) "to obtain current addresses of fugitives or other subjects of non-tax criminal investigations." Fielding Memo at 1.

This history shows why the IRS is not permitted to provide only taxpayer addresses. And immigrants have reasonably relied on the IRS's longstanding promise of confidential treatment when obtaining individual taxpayer identification numbers (ITINs) and filing their tax returns. When the IRS first adopted the ITIN program in 1996, it assured immigrant taxpayers that, generally, "tax returns and tax return information are confidential, as required by 26 U.S.C. 6103." 61 Fed. Reg. 26788, 26788 (1996); *see also* 60 Fed. Reg. 30211, 30213 (1995) (proposed rule stating, "Section 6103 strictly prohibits the disclosure of [ITIN] information to other government agencies, private entities, or citizens."). As former IRS commissioner Mark W. Everson explained

to Congress, the IRS is "broadly restricted under Section 6103 of the Code from sharing taxpayer information with third parties, including other government agencies, except in very limited circumstances," and that "any sharing of confidential taxpayer information, directly or indirectly, with immigration authorities would have a chilling effect on efforts to bring ITIN holders, and potential ITIN holders, into the U.S. tax system." *Social Security Number and Individual Taxpayer Identification Number Mismatches and Misuse: Hearing before the Subcomms. on Oversight & on Social Security of the H Comm. on Ways and Means*, 108th Cong., 2d Sess. 12 (2004). A decade later, another IRS commissioner echoed the same sentiment about the loss of trust that would arise if the IRS did not protect immigrant data: "If we start pursuing employers and undocumented aliens, then nobody is going to file their taxes because that will be another exposure point. And the decision was made so long before I got here that it was in the government's interest for undocumented citizens to pay taxes to the extent that they want to." *The Internal Revenue Service's Response to Committee Recommendations Contained in its August 5, 2015 Report: Hearing before the S. Comm. on Finance*, 104th Cong., 1st Sess. 28 (2015) (testimony of IRS Commissioner Koskinen).

Congress has also understood that section 6103(i)(2) protects immigrant taxpayers from having their tax information used against them in the enforcement of the immigration laws. For instance, during congressional debates on comprehensive immigration reform in the mid-2000s, Senator Nelson proposed to amend section 6103(i) to authorize the IRS to disclose return information for investigations that may lead to the "civil or criminal enforcement proceeding against an alien." 152 Cong. Rec. S2825 (Apr. 6, 2006); 152 Cong. Rec. S4988 (May 23, 2006). Congress, however, has not enacted such an amendment, or any other amendment directed at

immigration enforcement, despite amending section 6103 more than 75 times to address other policy concerns.

In light of the foregoing history, there is no basis for Defendants' suggestion that the policy against disclosing taxpayer address information set out in the Internal Revenue Manual reflects anything other than the agency well-established view of the limits of section 6103(i)(2)—or for any suggestion that any reliance by immigrant taxpayers on the IRS's adherence to those limits was unreasonable. Accordingly, to the extent the IRS and DHS have agreed to share taxpayer address information to locate immigrants to facilitate the administration's mass deportation agenda—as opposed to sharing such information in connection with a proper, individualized request under section 6103(i)(2) for other types of evidence relevant to an ongoing criminal investigation—their agreement cannot be reconciled with section 6103(i)(2) and should be preliminarily enjoined.

## II.    The Court should adopt Plaintiffs' revised proposed order.

Plaintiffs submitted their proposed preliminary injunction order before Defendants finalized their MOU to enable sharing of taxpayer information. In light of the MOU, Plaintiffs hereby submit a revised proposed order as an attachment. The revised proposed order seeks to prevent the irreparable harm that would arise if the IRS were to depart—without reasonable explanation—from its traditional position that address-only information is not the proper subject of a section 6103(i)(2) request, by maintaining the status quo as to that policy pending the final resolution of this action.

At the same time, the revised proposed order does not flatly bar all sharing arrangements that between DHS and the IRS where consistent with Congress's intention to allow limited information disclosures for purposes of a criminal investigation or proceeding, and subject to safeguards to avoid the improper sharing of information for civil immigration enforcement. The

revised proposed order requires the request for information to be made in good faith for the purpose of seeking evidence (and not taxpayer addresses) relevant to an actual criminal investigation, and guards against the risk of the information being improperly used for non-criminal matters. The revised proposed order also provides that any information sharing that occurs must occur pursuant to the MOU or an amendment thereto to prevent the use of other arrangements to achieve the type of unlawful sharing at issue in this litigation.

## CONCLUSION

The Court should grant the motion for a preliminary injunction.


Dated: April 23, 2025                                     Respectfully submitted,

                                                          /s/ Nandan M. Joshi
Kevin L. Herrera                                          Nandan M. Joshi
  (admitted pro hac vice)                                   (DC Bar No. 456750)
Mark H. Birhanu                                           Michael T. Kirkpatrick
  (admitted pro hac vice)                                   (DC Bar No. 486293)
Raise the Floor Alliance                                  Public Citizen Litigation Group
1 N. LaSalle Street, Suite 1275                           1600 20th Street, NW
Chicago, Illinois 60602                                   Washington, DC 20009
 (312) 795-9115                                           (202) 588-7733
kherrera@raisetheflooralliance.org                       njoshi@citizen.org

                                                         Alan B. Morrison
                                                           (DC Bar No. 073114)
                                                         George Washington Law School
                                                         2000 H Street, NW
                                                         Washington, DC 20052
                                                         (202) 994-7120
                                                         abmorrison@law.gwu.edu

              *Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| Centro de Trabajadores Unidos, et al., |
| Plaintiffs, |
| v. |
| Scott Bessent, in his official capacity as Secretary of the Treasury, et al., |
| Defendants. |

Civil Action No. 25-677 (DLF)

**[REVISED PROPOSED] ORDER GRANTING A PRELIMINARY INJUNCTION**

Upon consideration of Plaintiffs' motion for a preliminary injunction, the opposition of Defendants, and the full record before the Court including the hearing held on April 16, 2025, and the supplemental submissions of the parties, it is hereby

**ORDERED** that Plaintiffs' motion for a preliminary injunction is **GRANTED,** as provided herein.

It is further **ORDERED** that, pending the final resolution of this action, except as provided below, (1) Defendants Secretary of the Treasury Scott Bessent, the Internal Revenue Service (IRS), and the acting Commissioner of Internal Revenue are enjoined from disclosing any returns or return information to the U.S. Department of Homeland Security (DHS), Secretary of Homeland Security Kristi Noem, U.S. Immigration and Customs Enforcement (ICE), and acting ICE Director Todd M. Lyons, or to persons acting at their direction or on their behalf; and (2) Defendants DHS, Secretary Noem, ICE, and acting Director Lyons are enjoined from inspecting or using any returns or return information obtained from Secretary of the Treasury Scott Bessent, the Internal Revenue Service, or the acting Commissioner of Internal Revenue.

It is further **ORDERED** that the foregoing prohibitions of this Order do not apply to information furnished pursuant to a court order.

It is further **ORDERED** that the foregoing prohibitions of this Order do not apply to a request that (1) does not seek the taxpayer's identity (including the taxpayer's address), (2) includes an address for the taxpayer that the agency head (or the individual providing the information to the agency head) has a good faith belief is an actual address for that taxpayer and the address matches the address for the taxpayer in IRS records for the tax years at issue, (3) seeks information relevant to an actual pending investigation or proceeding involving a criminal statute to which 26 U.S.C. § 6103(i)(2) relates and that is identified in the request, and (4) otherwise complies with 26 U.S.C. § 6103(i)(2).

It is further **ORDERED** that, with respect to information obtained under the preceding paragraph, the information (1) may not be used for civil immigration enforcement and (2) must be destroyed or returned to the IRS if the criminal investigation or proceeding concludes without an arrest on criminal charges of the individual to whom the information pertains.

It is further **ORDERED** that (1) any disclosure under § 6103(i)(2) must be made pursuant to Defendants' Memorandum of Understanding (MOU) and (2) any amendments to the MOU shall not be effective until 14 days after a copy thereof is provided to Plaintiffs' counsel.

A copy of the redacted MOU is attached to this Order.

**SO ORDERED**.

Dated: _____, 2025

_____
DABNEY L. FRIEDRICH
United States District Judge

2

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| Centro de Trabajadores Unidos, et al., |
| Plaintiffs, |
| v. |
| Scott Bessent, in his official capacity as Secretary of the Treasury, et al., |
| Defendants. |

Civil Action No. 25-677 (DLF)

**DECLARATION OF NANDAN M. JOSHI**

I, Nandan M. Joshi, declare as follows:

1.    I am an attorney at Public Citizen Litigation Group and represent the plaintiffs in this action.

2.    Exhibit A hereto is a Memorandum from Fred F. Fielding, Counsel to the President, to Craig L. Fuller, White House Cabinet Secretary, dated Aug. 6, 1982.

3.    Exhibit B hereto is a Memorandum from Joel Gerber, Deputy Chief Counsel, Internal Revenue Service, to Roscoe L. Egger, Jr., Commissioner of Internal Revenue, dated Apr. 2, 1982.

4.    Exhibit C hereto is a Memorandum from John J. Kelleher to Peter J. Wallison, General Counsel, Treasury Department, dated May 11, 1982.

5.    Exhibit D hereto is a Memorandum from Peter J. Wallison, General Counsel, Treasury Department, to Secretary of the Treasury Donald Regan, dated May 17, 1982.

6.    The foregoing exhibits were excerpted from the Ronald Reagan President Library Digital Library Collections, Richard A. Hauser Collection, Box OA10601, Folder:

1

Selective    Service/Social    Security    Number    (2),    available    online    at
https://www.reaganlibrary.gov/public/2024-07/40-233-12008797-OA10601-003-
2023.pdf.  The  exhibits  consist  of  pages  7–8,  34–36,  and  40–47  of  the  PDF
document available at that address.

I declare under penalty of perjury that the foregoing is true and correct to the best of my
knowledge and belief.

/s/ Nandan M. Joshi
Nandan M. Joshi

EXHIBIT A

**THE WHITE HOUSE**

WASHINGTON
August 6, 1982

MEMORANDUM FOR CRAIG L. FULLER

FROM:            FRED F. FIELDING

SUBJECT:      IRS Disclosures of Address Information to
                 Selective Service System in Aid of
                 Criminal Prosecutions

Recently the Internal Revenue Service, at the request of the
Selective Service System, forwarded warning letters to non-
registrants who had filed tax returns.  If these non-registrants
fail to respond, it is contemplated that the addresses of the
non-registrants will be turned over to the Department of
Justice and Selective Service System to aid in possible
criminal prosecutions.

This office has conducted a preliminary review of the legal
issues raised by Internal Revenue Service disclosure of
taxpayer information to the Selective Service System to aid in
the prosecution of non-registrants.  For the reasons stated
below, we urge that futher action on the Administration's
proposal to permit such disclosure be postponed pending a
thorough review of the legal and policy issues presented.

Our recommendation to commit the proposal to further study is
based on the following considerations:

  ° The Internal Revenue Code prohibits the IRS from
    disclosing tax return information to facilitate non-
    tax criminal investigations by other Federal agencies
    except under limited conditions.  While the relevant
    Code section [6103(i)(2)] can be read literally to
    permit disclosure of current address information to
    agencies filing written requests with the IRS, we are
    concerned that this literal interpretation of § 6103(i)(2)
    conflicts with the Justice Department's legislative
    proposal to amend § 6103(i)(1) to permit disclosure
    of current addresses of fugitives from Justice.  There
    would appear to be no need for such a change if Justice
    could, under § 6103(i)(2), simply write to IRS to obtain
    current addresses of fugitives or other subjects of non-
    tax criminal investigations, including non-registrants.

° An examination of 26 U.S.C. § 6103 as a whole suggests that where Congress intends for Federal agencies to receive taxpayer address information, it specifically provides for such disclosures [e.g., for child support purposes, 26 U.S.C. § 6103(i)(6), and for persons who have defaulted on student loans, 26 U.S.C. § 6103(m)(4)]. When Congress passed the Department of Defense Authorization Act of 1982, Pub. L. 97-86, it authorized HHS to furnish Social Security information to Selective Service, but deleted language authorizing the IRS to furnish Selective Service with more current addresses than are available in Social Security records.

° Given the absence of explicit authority for IRS disclosure of non-registrants' addresses, such disclosure will certainly be challenged by the affected individuals as an illegal invasion of their privacy. Opponents of draft registration have demonstrated a sophisticated understanding of Federal privacy laws, and have already forced Congress to amend certain registration provisions that the courts had deemed violative of the Privacy Act of 1974. Any or all of the estimated 550,000 non-registrants could challenge the IRS' disclosures under 26 U.S.C. § 7217, which establishes a minimum damage award of $1,000 per plaintiff in class actions proving unauthorized disclosures. Although § 7217(b) states that no liability arises with respect to good faith but erroneous interpretations of 26 U.S.C. § 6103, a court decision against the Government in any § 7217 action could, in light of the potential class of persons involved, result in a substantial damage award.

° The benefits from IRS disclosure of non-registrants' addresses are not readily apparent. Selective Service has already received from HHS the names and current addresses of more non-registrants than it is capable of prosecuting.

For the foregoing reasons, we urge postponement of action requiring IRS disclosure of taxpayer addresses for prosecution purposes pending further legal analysis and consideration of the policy issues presented.

Approve         _____

Disapprove      _____

Comment    _____

EXHIBIT B

TAB A

# Internal Revenue Service
## memorandum

date: ♄ APR 1982

to: Roscoe L. Egger Jr.
Commissioner
(SIGNED) JOEL GERBER

from: Joel Gerber
Deputy Chief Counsel                    CC



subject: Disclosure to the Selective Service System

The purpose of this memorandum is to advise you on whether the
Service is permitted to disclose certain address information from the
Individual Master File to the Selective Service System. After careful
consideration, it is my opinion that although support can be found to
justify such disclosures, the more defensible legal position is that the
disclosures cannot be made.

## FACTS

On January 7, 1982, President Reagan announced his decision to
continue the military registration program promulgated under the Military
Selective Service Act. The program requires that all men born on or
since January 1, 1960 register with the United States Post Office within
30 days of their eighteenth birthday. Upon conviction for noncompliance
with the program, a non-registrant may be punished by imprisonment for
not more than five years or a fine of not more than $10,000, or by both.
50 U.S.C. App. §462.

In order to implement the registration program, the President has
directed the Secretary of Health and Human Services to furnish the
Selective Service System with Social Security Account Number data
that can be used to identify possible non-registrants. This data will be
matched with the Selective Service registration files in order to identify
violators. It is our understanding that the Selective Service, acting
through the Department of Justice, may then submit a request to
the Service pursuant to I.R.C. § 6103(i)(2) in order to obtain taxpayer
address information in a further effort to locate and prosecute violators
of the program.

## RELEVANT STATUTORY PROVISIONS

Section 6103(i) was added to the Internal Revenue Code by the Tax
Reform Act of 1976 in order to limit the circumstances under which other
Federal agencies could obtain tax information for use in nontax cases. Prior
to that time, attorneys of the Department of Justice could have virtually
unrestricted access to IRS files where necessary in the performance of
their official duties. 26 C.F.R. § 301.6103(a)-1(f) and (g) (1976). Under

- 2 -

present law, the Department of Justice may obtain tax data only for nontax criminal cases, and then only after it follows specifically enumerated procedural requirements set forth in the statute. These procedures specify that information obtained from the taxpayer or the taxpayer's representative may be disclosed only after the grant of an ex parte order from a Federal district court judge. Information obtained from sources other than the taxpayer or the taxpayer's representative may be disclosed only upon a written request that specifies the name and address of the taxpayer, the kind of tax involved, the taxable period involved, and the reason why inspection is desired.

In 1978, the Congress reviewed the procedures which regulated the circumstances in which the Service could disclose information under section 6103(i)(2). At that time, it recognized that if the Service was to respond to a written request for information which was not furnished by or on behalf of the taxpayer, it could not, as a practical matter, transmit the information without providing the name and address of the requested individual. Since the ultimate source of the name and address would have been the taxpayer's return, a technical argument existed that the Service could not provide the information without an ex parte court order. This would, of course, have completely negated the purpose and operation of the written request provision. As a result, section 6103(i)(2) was amended so that if the Service received a proper written request, it could disclose name and address information under the same circumstances that it could disclose other information which was not received from or on behalf of the taxpayer. Pub. L. No. 95-600, § 701 (b)(b)(3), 92 Stat. 2922 (1978), 1978-3 C.B. 156 (Vol. 1); S. Rep. No. 95-745, 95th Cong., 2nd Sess. 61, 63 (1978); H. Rep. No. 95-700, 95th Cong., 1st Sess. 53, 55 (1977).

## ANALYSIS

Upon review, it is my opinion that the literal language of the amended section 6103(i)(2) can be read to permit the disclosure of current address information for the administration of nontax Federal criminal laws. As presently written, the statute places an affirmative obligation on the Service to transmit return information (other than taxpayer return information) upon receipt of a proper written request. The statute also specifically states that "the name and address of the taxpayer shall not be treated as taxpayer return information." Should the Department of Justice file a request pursuant to section 6103(i)(2), an argument can be made that the Service can disclose current address information for the purpose of locating and prosecuting violators of the Selective Service Act. I have been advised that such an interpretation has, in fact, been adopted by the Service so as to permit the disclosure of address information in other, more limited, situations.

However, it is also my view the statute can be read to support a different and much more restrictive result. For example, one prerequisite for a proper request under section 6103(i)(2) is that the Department of Justice provide the name and address of the taxpayer with respect to whom it wishes to obtain information. This requirement presumes that the purpose of section 6103(i)(2) was to provide the Department of Justice with information other than the taxpayer's current address. This view is supported by an examination of section 6103 as a whole, for such an examination suggests that when Congress

- 3 -

intended for other agencies to receive address information, it specifically provided for such disclosures. See sections 6103(l)(6) and (m). The most compelling argument in favor of nondisclosure of address information is the rationale for the adoption of the change to section 6103(i)(2) in 1978. Prior to this amendment, there was no question that the Service could not provide address data from the Individual Master File to the Department of Justice for nontax criminal purposes simply upon written request. Instead, the Department of Justice could receive such data only after obtaining an ex parte order pursuant to section 6103(i)(1). The legislative history for the 1978 change does not reveal any indication that Congress intended to open up a new source of information to the Department of Justice. The amendment was designed simply to correct a potential technical defect in the statute which could be read to prevent the Service from effectively transmitting identifiable information pursuant to a proper request.

I would note that if the Service concludes it can disclose current address information to the Selective Service System, such action will certainly be challenged by the affected individuals as an unwarranted, and possibly illegal, invasion of their individual privacy. Those opposed to draft registra- tion have demonstrated a sophisticated understanding of Federal privacy laws, and have already forced Congress to amend the registration provisions because such provisions were being carried out in violation of the Privacy Act of 1974. Pub. L. No. 97-86, § 916, 95 Stat. 1129 (1981), overruling Wolman v. United States of America, Selective Service System, 501 F. Supp. 310 (D.D.C. 1980). The Selective Service System estimates that there are approximately 550,000 individuals in the non-registrant category. Any or all of these individuals could challenge the Service's participation in the registration program under he civil damage provisions of section 7217 by claiming that the resulting disclosures were not permitted by section 6103. Section 7217 provides for actual and punitive damages for unauthorized disclosures, and also establishes a minimum damage award of $1000 for such disclosures. Although section 7217(b) states that no liability arises with respect to a good faith but erroneous interpre- tation of section 6103, a court ruling against the Government in any section 7217 action could, in light of the potential class of individuals involved, result in a substantial damage award.

## CONCLUSION

Section 6103(i)(2) can be literally read to permit the disclosure of current address data to the Department of Justice to locate and prosecute individuals for failing to register under the Selective Service Act. However, such an interpretation is vulnerable to attack, since an overall reading of section 6103 and its legislative history would favor the opposite result. Although either interpretation can be supported, the Government would be subject to substantial damages in this case if the courts do not uphold a literal reading of the statute.

EXHIBIT C



**DEPARTMENT OF THE TREASURY**
OFFICE OF THE GENERAL COUNSEL
WASHINGTON, D.C. 20220

TO:    Peter J. Wallison                     MAY 1 1 1982
        General Counsel

FROM:  John J. Kelleher

SUBJECT:  Disclosure to the Selective Service System


        This is in response to your request for an analysis of
whether the Internal Revenue Service may disclose certain address
information from its Individual Master File to the Selective
Service System in connection with the Selective Service's program
to identify and locate possible non-registrants under the
Military Selective Service Act.

        The Deputy Chief Counsel of the IRS in a memorandum dated
April 2, 1982, (copy attached at Tab A) to the Commissioner set
out the facts and relevant statutory provisions concerning this
matter and, following a comprehensive legal analysis, concluded
that although support can be found to justify such disclosures,
the more defensible legal position is that the disclosures cannot
be made.  The Deputy Chief Counsel noted that the literal lan-
guage of the amended 6103(i)(2) can be read to permit disclosure
of current address information for the administration of nontax
federal criminal laws, and that such an interpretation has, in
fact, been adopted by the IRS so as to permit the disclosure of
address information in other, more limited, situations.  However,
he pointed out that one prerequisite for a proper request under
section 6103(i)(2) is that the requester provide the name and
address of the taxpayer about whom it wishes to obtain informa-
tion.  This requirement presumes that the purpose of the section
is to provide the requester with information other than the
taxpayer's current address.

        In addition, the IRS memorandum states that in the past when
Congress intended for other agencies to receive address
information, it specifically provided for such disclosures (e.g.,
for child support purposes (6103(l)(6)) and for individuals who
have defaulted on student loans (6103(m)(4))).  And, more
importantly, the legislative history of the 1978 change to
section 6103(i)(2) does not reveal any indication that Congress
intended to open up a new source of information (address
information) to Justice or other agencies.

        Finally, the IRS memorandum points out that pursuant to the
civil damages provision of section 7217, the Government could be
subjected to substantial damages (a minimum of $1,000 to each

-2-

plaintiff entitled to recover with respect to each instance of unauthorized disclosure) if the courts do not agree with the Government's position.  Section 7217(b) does provide, however, as IRS points out, that no liability arises with respect to a good faith but erroneous interpretation of section 6103.  Reliance upon an opinion from counsel would not necessarily, by itself, establish such a defense.

The IRS memorandum concludes, as noted above, that although support can be found to justify IRS disclosure of address information in this instance, the more defensible legal position is that the disclosures cannot be made.  It is clear from the analysis that there is no easy, clear-cut answer to the question of whether such disclosures are permissible.  There are, however, two additional factors which appear to be relevant to the consideration of the question and which were not mentioned in the IRS memorandum.  The first factor would seem to tilt the balance toward nondisclosure while the second would appear to provide support for either interpretation.

The first factor involves the current efforts being made to amend section 6103.  As you know, Senator Roth has introduced a bill (S. 1891), strongly supported by the Administration, which would make a number of significant changes in section 6103.  One of those changes would permit Justice Department officials to seek a court order under section 6103(i)(1) to allow disclosure of certain tax information if Justice shows that an arrest warrant has been issued for an individual who is a fugitive from Justice, the information is sought exclusively for use in locating such individual, and there is reasonable cause to believe that the information may be relevant to determining the location of the individual.

It would seem that there would be no need for such a change if Justice could, under current law (section 6103(i)(2)), simply write to IRS and request the current addresses of fugitives from Justice.  And if, as could be argued, the change is suggested only to clarify current law, then it implies that the addresses of fugitives may currently be obtained only pursuant to court order (under section 6103(i)(1)) and not pursuant to written request from the head of an agency (section 6103(i)(2)).  The Selective Service proposal, as you know, contemplates obtaining the address information by written request pursuant to section 6103(i)(2).

The second factor to consider in deciding whether IRS may disclose the address information involves recent Congressional action taken to amend the Military Selective Service Act.  In Wolman v. United States of America, Selective Service System, 501 F.Supp. 310 (D.D.C. 1980), the district court for the District of Columbia ruled that there was no legal authority in the Selective Service System to require registrants to furnish their individual Social Security numbers as a condition of valid registration.  Legislation was thereafter introduced and passed in Congress

-3-

which permits such use of the Social Security numbers (Pub.L. No.
97-86, §916, 95 Stat. 1129 (1981)).  The legislative history of
Public Law 97-86 is instructive concerning the question of
whether IRS may disclose current addresses of non-registrants.

Public Law 97-86, the Department of Defense Authorization
Act of 1982, involved primarily the appropriations for fiscal
year 1982 for the Armed Forces.  It also contained amendments to
the Military Selective Service Act.  The Senate bill (S. 815) was
passed in lieu of the House bill (H.R. 3519) after much of the
Senate bill's language was amended to contain much of the text of
H.R. 3519.  The Selective Service changes which were enacted, as
will be explained more fully below, came from the House bill.

S. 815, as originally introduced, contained provisions which
would allow the Director of the Selective Service System to
require registrants to provide their Social Security numbers
(legislatively overruling the Wolman decision) and, more
importantly for the current discussion, would allow the Director
access to information in the records of any other department or
agency of the federal government pertaining to the names, ages
and addresses of persons required to register.  Both provisions
were dropped from S. 815 on May 13, 1981, following a floor
amendment by Senators Jepsen and Exon.  The floor debates (copy
of the debates attached at Tab B) indicate that several Senators
raised the question of the suitability of these provisions
regarding the Selective Service and access to Social Security
records appearing in S. 815, and felt that such matters should be
considered as an independent matter.

Of significance for the current question is the following
paragraph from Senate Report Number 97-58 (page 150) (copy
attached at Tab C), from the Armed Services Committee, which
accompanied S. 815:

In the view of the Selective Service System, it is
essential that the list of registrants be matched by
Social Security number with Social Security records by
year of birth for the purpose of identifying those who
apparently violated the Military Selective Service Act.
The next step would involve obtaining the current
addresses of non-registrants from the Internal Revenue
Service (IRS) because the addresses contained in the
Social Security file are generally not current.  The
acquisition of current addresses from IRS files is
currently authorized by the U.S. Code which, in 26
U.S.C. and 6103(i)(2), explicitly states that a
taxpayer's name and address are not treated as taxpayer
return information when an agency head requests them
for use in an administrative or judicial proceeding.
In fact, many government agencies utilize this IRS
information for several purposes and the IRS utilizes
the Social Security file for income tax enforcement.

-4-

Thus, at least in the view of the Senate Armed Services Committee, the IRS is authorized under current law (section 6103(i)(2)) to provide the current addresses of non-registrants.

H.R. 3519 was introduced May 12, 1981 (a copy of the relevant portions of H.R. 3519 is attached at Tab D). H.R. 3519 had three main provisions to facilitate Selective Service registration:

1. Registrants could be required to provide their Social Security number.

2. The President was given authority to require the Secretary of Health and Human Services to furnish to the Director of the Selective Service, from records available to the Secretary of HHS, the name, date of birth, Social Security number and address of those required to register.

3. In order to enforce the Selective Service Act and to ensure the registration of all persons required to register, the President was given the authority to require the Secretary of the Treasury to furnish to the Director of the Selective Service, from records available to the Secretary, the address of any individual whose name is furnished to the Secretary by the Director.

The first two provisions passed the Congress (following a conference where the Senate receded to the House on these provisions) and are part of Public Law 97-86. It is pursuant to this authority that the President has directed the Secretary of HHS to furnish the Selective Service System with the Social Security account number data that can be used to identify possible non-registrants. However, the third provision, permitting the President to require the Secretary of the Treasury to furnish the Director of the Selective Service with the addresses of individuals for the purpose of enforcing the registration requirements, was dropped from H.R. 3519 pursuant to an amendment offered by Congressman Nichols on July 15, 1981, and is therefore not a part of Public Law 97-86. The House Armed Services Committee favored allowing the IRS to provide current adresses and stated, in House Report Number 97-71, Part I (page 161) (copy attached at Tab E), which accompanied H.R. 3519, that it considered it "an appropriate purpose for the government to use identifying information within its control for the purposes of enforcing the registration requirement." However, the House Ways and Means Committee succeeded on the floor in getting the House to drop the third provision. The floor debates, and House Report Number 97-71, Part 3, from the Committee on Government Operations, to which H.R. 3519 was also referred, indicate that Congress did not necessarily believe it to be inappropriate for the Selective Service System to have access to current addresses within the control of the Government to enforce the registration requirement, but that such authority should only be given after a formal Administration request for a legislative remedy, separate

-5-

examination of the issue, public hearings and by amendment of
section 6103.  (A copy of the relevant floor debates from July
15, 1981, and a copy of the relevant portions of House Report No.
97-71, Part III, are attached at Tabs F and G respectively.)

     The legislative history of Public Law 97-86 set out above
makes it clear that Congress within the last year considered the
question of whether IRS should provide to the Selective Service
the current addresses on non-registrants under the Military
Selective Service Act.  It could be argued that since both the
House and Senate bills had provisions authorizing such action,
and since, for whatever reasons, both houses dropped those pro-
visions, Congress has indicated its disapproval of such IRS
action.  However, it could also be argued that the legislative
history is murky and the reasons for the Congressional action are
not clear, and that the only really clear statement concerning
the authority of IRS to disclose addresses under current law is
that contained in Senate Armed Services Committee Report Number
97-58 -- that is, that "the acquisition of current addresses from
IRS files is currently authorized by the U.S. Code which, in 26
U.S.C. and 6103(i)(2), explicitly states that a taxpayer's name
and address are not treated as taxpayer return information when
an agency head requests them for use in an administrative or
judicial proceeding."

EXHIBIT D

INFORMATION
**Date:**  May 17, 1982

**MEMORANDUM FOR:**    SECRETARY REGAN
THRU:                    Deputy Secretary McNamar

**From:**   Peter J. Wallison
         General Counsel

**Subject:** Disclosure to the Selective Service System


        Confirming our discussion this morning, this memorandum
outlines my views on whether the Internal Revenue Service may
disclose certain address information from its Individual Master
File to the Selective Service System.  For reasons which are set
out below, I believe that IRS should not in this instance
disclose such information if the purpose of such disclosure is to
aid in the prosecution of non- registrants.  However, to the
extent that Selective Service desires only to notify
non-registrants of their obligations, the IRS may on a
reimbursable basis undertake such notification for the Selective
Service.

        Attached is a copy of a memorandum dated April 2, 1982, from
the Deputy Chief Counsel of IRS which sets out the facts, rele-
vant statutory provisions, and a legal analysis of this matter.
The Deputy Chief Counsel concluded that while section 6103(i)(2)
can be read literally to permit the disclosure of current address
data to the Justice Department to locate and prosecute indivi-
duals for failing to register under the Selective Service Act,
the more defensible legal position, based on an overall reading
of section 6103 and its legislative history, is that the dis-
closures cannot be made.  The IRS memorandum also noted the
possibility of a substantial damage award being made against the
Government in a class action law suit if a court were to rule
that the disclosures were contrary to law.

        I am in substantial agreement with the analysis set out in
the Deputy Chief Counsel's memorandum.  In coming to this con-
clusion, I am relying also on two other considerations -- not
addressed in the IRS memorandum -- which I believe tilt the
balance toward nondisclosure.  These are discussed in detail in
the attached memorandum, and are summarized below.

| | Initiator | Reviewer | Reviewer | Reviewer | Reviewer | Ex. Sec. |
|---|---|---|---|---|---|---|
| Surname | | | | | | |
| Initials / Date | | | | | | |

OS F 10-01.11 (2-80) which replaces OS 3129 which may be used until stock is depleted

First, the Administration, through the Department of Justice, is currently seeking to amend section 6103(i)(1) to permit IRS disclosure, pursuant to court order, of the current addresses of fugitives from justice. There would appear to be no reason to seek such an amendment if Justice could, under current law (section 6103(i)(2)), simply write to the IRS and request the current addresses of fugitives. As you know, the Selective Service proposal contemplates obtaining address information by just such a written request under section 6103(i)(2).

Second, in enacting Public Law 97-86 (the Department of Defense Authorization Act of 1982) Congress considered the very program which is now being proposed by the Selective Service System -- that is, to require registrants to provide their Social Security numbers, to require HHS to provide Selective Service with the name, date of birth, Social Security number and address of those required to register, and to require IRS to furnish the current addresses for any names supplied to IRS by the Selective Service.

Although (as detailed in the attached memorandum) the legis-lative history of Public Law 97-86 on this point is far from clear, the fact is that ultimately Congress approved the furnishing of social security data by HHS but eliminated the furnishing of address information by the IRS. This action, despite the ambiguities with which it was taken, seriously under-mines any legal argument which might be made to support dis-closure; it also indicates (as was strongly suggested in the comments by the House Ways and Means Committee) that disclosure would likely be viewed as a challenge to Congressional prero-gatives.*

The costs of IRS disclosure also seem high. Congress is likely to raise strong institutional objections, and will be strongly supported by various civil libertarian groups.  A potentially costly and burdensome class action law suit is likely to be filed on behalf of those whose addresses were disclosed, and the publicity generated by the event will inevitably have some effect on the public's willingness to disclose information voluntarily to the IRS.

---

\*      To be sure, as the attached memorandum indicates, the legislative history contains some support for disclosure -- most notably a statement by the Senate Armed Services Committee, in its Report on the bill, that disclosure would be lawful. However, this is a statement by a Committee which is not expert in the tax laws and there is no indica-tion that advice on this subject was sought or received from the Senate Finance Committee. House Ways and Means, as noted above, expressed an apparently contrary view.

-3-

The benefits from such disclosure are not as readily apparent. If the Selective Service System is seeking current addresses in order to prosecute a number of non-registrants, it will have a huge inventory of prosecutions if it merely proceeds with the tens of thousands of accurate current addresses which it will obtain from HHS.

For these reasons, if the purpose of the Selective Service in soliciting names and addresses from the IRS is prosecution, I recommend against disclosure. However, it may be that the intent of the Selective Service is simply to notify non-registrants personally of their responsibility to register. If so, the IRS already has in place procedures (copy attached) which would permit such notification for other federal agencies on a reimbursable basis. I see no reason why Selective Service cannot simply prepare appropriate communications to non-registrants and request that the IRS use its facilities to address and mail the envelopes. IRS would then not be making any arguably illegal disclosure, and non-registrants would be receiving notification of their responsibilities.

Attachments