UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| CENTRO DE TRABAJADORES UNIDOS, et al. | ) ) ) ) |
| *Plaintiffs*, | ) ) |
| v. | )  Case No. 25-cv-677-DLF ) |
| SCOTT BESSENT, in his official capacity as Secretary of the Treasury, et al. | ) ) ) ) ) |
| *Defendants.* | ) ) |

**MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE
AND FOR ACCESS TO JUDICIAL DOCUMENTS**

American Oversight, a non-partisan nonprofit committed to promoting transparency and ensuring government accountability, seeks to intervene for the limited purpose of moving this Court to unseal and make available judicial records not currently available to the public in this matter.[1]

The principal case before the Court—whether the Internal Revenue Service ("IRS") may share with other agencies taxpayer data to further the Trump Administration's deportation goals— carries significant national interest. The public, including those who will be most affected by the sharing of their taxpayer data, has a right to access judicial records in this case so that it may understand the arguments and issues before the Court. That right cannot be fully exercised when judicial records are shielded from public view. Prospective intervenor American Oversight

---

[1] Although Federal Rule of Civil Procedure 24 typically requires a prospective intervenor to attach a separate pleading setting out "the claim or defense for which intervention is sought," no such filing is required where, as here, intervention is sought "not to litigate a legal claim or defense on the merits, but rather to gain access to court records." *See In re Fort Totten Metrorail Cases*, 960 F. Supp. 2d 2, 5 n.3 (D.D.C. 2013) (cleaned up).

respectfully requests this Court grant its motion to intervene, set aside any previous orders authorizing parties to file briefs or documents under seal, and make publicly available all sealed judicial records in this case.

I.   BACKGROUND

On March 7, 2025, following public reporting that the Department of Homeland Security ("DHS") was seeking taxpayer data from the IRS for individuals who could be subject to deportation,[2] Plaintiffs Centro de Trabajadores Unidos and Immigrant Solidarity DuPage filed suit, requesting declaratory and injunctive relief forbidding Defendants—agency and agency officials—from sharing taxpayer information with other federal or state agencies for the purposes of assisting in the enforcement of immigration laws. Compl. ¶ 1, ECF No. 1.

On March 31, 2025, Plaintiffs moved for a preliminary injunction, noting that "Treasury Defendants and DHS Defendants are close to finalizing an agreement under which the IRS would disclose taxpayer address information to DHS Defendants in violation of the confidentiality requirements of Internal Revenue Code," and asserting that "Plaintiffs [would] suffer imminent and irreparable injury if such unlawful disclosure and access takes place." Pls.' Mot. Prelim. Inj. 1-2, ECF No. 28. In their response to the motion for a preliminary injunction, Defendants stated that a memorandum of understanding ("MOU") had been executed "to create a framework for information sharing between the agencies." Defs.' Resp. Pl.'s Mot. Prelim. Inj. 4–5, ECF No. 30. The redacted MOU was submitted with the response, ECF No. 30-1, although no motion seeking the Court's permission to redact information from the public document appears on the docket.

---

[2] Jacob Bogage et al., *DHS Asks IRS For Addresses of People Believed to Be in U.S. Illegally*, Wash. Post. (Feb. 28, 2025), https://www.washingtonpost.com/business/2025/02/28/immigration-enforcement-trump-administration-irs/.

Plaintiffs moved to compel an unredacted version of the MOU as well as a related agreement guiding how the MOU would be implemented in practice. Pls.' Mot. Compel Produc. Unredacted Ex., ECF No. 33. On April 16, 2025, before any resolution on the motion to compel, this Court held a hearing on the preliminary injunction. *See* Min. Entry Prelim. Inj. Hr'g (Apr. 16, 2025). Following an agreement on the record at the preliminary injunction hearing, the parties filed a joint motion for protective order pertaining to the MOU and the implementation agreement. *See* Joint Mot. Protective Order, ECF No. 44; Protective Order, ECF No. 46. Upon information and belief, at that hearing, Defendants submitted to the Court the unredacted MOU, but did not file on the docket the unredacted MOU or a motion to seal the MOU.

The Court ordered additional briefing in Plaintiff's motion for preliminary injunction, and on April 23, 2025, Plaintiffs filed a partially redacted supplemental memorandum, and a sealed motion for leave to file a document under seal relating to an exhibit. Pls.' Suppl. Mem. Supp. Mot. Prelim. Inj., ECF Nos. 47, 48. On April 28, 2025, Defendants filed a response to Plaintiffs' supplemental memorandum, as well as a sealed motion for leave to file a document under seal, apparently seeking to seal their *entire* response, not just an exhibit or portions of the response. ECF No. 50. On April 29, 2025, this Court granted both motions to file documents under seal in a Minute Order.

American Oversight now moves to intervene to request the Court make public the judicial records under seal, as well as any records submitted to the Court at the April 16, 2025 hearing that do not appear on the docket.

**II.    ARGUMENT**

American Oversight should be permitted to intervene for the limited purpose of the requesting access to judicial records in this case because its motion is timely filed, will not cause undue delay or prejudice, and the requested relief in the motion is sufficiently linked to the

3

principal case. The Court should further make publicly available the judicial records under seal—or otherwise in the custody of the Court but not on the public docket—because there is an urgent need for public access to the documents, no substantiated interests counsel against such access, and the sealed documents will be considered in the Court's decision whether to grant relief.

### A.     American Oversight Should be Permitted to Intervene.

This Court should grant permissive intervention because American Oversight has a substantial interest in the issues here, its motion is timely, the motion will not cause undue delay or prejudice, and the requested relief is sufficiently linked with the underlying litigation.

Permissive intervention under Federal Rule of Civil Procedure 24(b) is the appropriate mechanism for non-parties to an action to seek access to judicial records. *See, e.g.*, *League of Women Voters of U.S. v. Newby*, 963 F.3d 130, 132 (D.C. Cir. 2020); *E.E.O.C. v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998); *Fort Totten Metrorail Cases*, 960 F. Supp. 2d at 5-6 (D.D.C. 2013). Permissive intervention typically requires a prospective intervenor to demonstrate (1) an independent ground for subject matter jurisdiction; (2) timeliness, and (3) a claim or defense "that has a question of law or fact in common with the main action." *True the Vote, Inc. v. Internal Revenue Serv.*, No. CV 13-734 (RBW), 2024 WL 2803332, at *3 (D.D.C. May 31, 2024) (internal citations omitted). However, where—as here—intervention is sought for a collateral purpose like unsealing documents, "the ordinary requirements for permissive intervention are relaxed." *See*, *e.g.*, *Vanda Pharms., Inc. v. Food & Drug Admin.*, 539 F. Supp. 3d 44, 50 (D.D.C. 2021) (providing that "'[a]n independent jurisdictional basis is . . . unnecessary when the movant seeks to intervene only for the limited purpose of obtaining access to documents covered by seal . . . because the third party does not ask the court to rule on the merits of a claim or defense.'" (internal citation omitted)). Accordingly, "no particularly strong nexus of fact or law need exist between the underlying litigation and the case for which the intervenor is seeking to

access the sealed documents," and courts have held "the issue of the scope or need for [prohibiting public access] itself presents a common question that links the movant's challenge with the main action." *E.E.O.C. v. Nat'l Children's Ctr., Inc. ("E.E.O.C. I")*, 146 F.3d 1042, 1047-48 (D.C. Cir. 1998) (internal citations omitted). American Oversight meets the relaxed requirements for permissive intervention and should be allowed to intervene in this matter.

### 1. American Oversight Has an Interest in the Issues Before the Court.

American Oversight is a non-partisan, nonprofit organization committed to promoting transparency and ensuring accountability of government officials. American Oversight accomplishes those goals by filing FOIA requests, analyzing government documents to determine potential legal or policy action, litigating cases to promote access to public documents, and disseminating the information it receives through open records requests on its website.[3] *See* Decl. of Daniel Martinez (May 1, 2025) at ¶¶ 2–3, attached as Exhibit A. Following public reporting about the MOU, American Oversight filed FOIA requests with the Department of Treasury, IRS, DHS, and Immigration and Customs Enforcement ("ICE") seeking, among other items, any data-sharing agreements regarding immigration enforcement. *See* Martinez Decl. at ¶¶ 4–11.

American Oversight seeks to intervene in this action for the limited purpose of moving to make public judicial records that are currently unavailable under seal or otherwise unavailable to the public in this case. The issues raised in the documents sealed by the United States District Court for the District of Columbia, or otherwise in custody of the court but unavailable to the public, have significant implications for those who are directly affected by the outcome of this case, and to the public who seeks to fully understand the issues before the Court. Undocumented

---

[3] American Oversight regularly publishes the documents it receives via public records requests or through litigation on its website. *See e.g.*, Featured Documents, American Oversight, https://americanoversight.org/our-work/featured-documents/.

individuals who would be most impacted by enforcement of the MOU require clarity on the specifics of how their personal data may be used against them, and information currently under seal would enable direct service providers who work in immigrant communities to advise clients in fear of imminent deportation more effectively.[4] As set forth in detail *infra*, this case—and the particular documents submitted to this Court under seal—holds widespread media and public interest. American Oversight seeks to vindicate that interest. American Oversight also holds a separate interest in making the records public so that American Oversight may analyze them and determine its own legal, policy, or other responses as appropriate based on the contents of these records.

## 2. American Oversight's Motion is Timely.

Intervention is timely because American Oversight seeks to unseal documents filed under seal less than two weeks ago.

Permissive intervention requires a prospective intervenor to file a timely motion. *See* Fed. R. Civ. P. 24(b)(1). For the purposes of a motion seeking permissive intervention, timeliness is generally determined by a totality of the circumstances. *Sierra Club v. Van Antwerp*, 523 F. Supp. 2d 5, 10 (D.D.C. 2007) (citing *NAACP v. New York,* 413 U.S. 345, 365–66, (1973)). However, when intervention is sought for a "collateral purpose," such as unsealing judicial records, the

---

[4] *See* Catherine E. Shoichet & Marshall Cohen, *'People Are Feeling Betrayed': They Paid Taxes in Good Faith and Now Fear it Could Lead to Their Deportation*, CNN (Apr. 15, 2025 5:30 AM), https://amp.cnn.com/cnn/2025/04/15/us/irs-dhs-taxes-immigrants-betrayed-cec (highlighting that "[p]arts of the 15-page 'memorandum of understanding' between the IRS and DHS are redacted, making it difficult to discern exactly what the IRS will provide," referencing an attorney who received an "avalanche" of "concerned emails" from clients, and quoting an immigrant rights advocate expressing community concerns: "They understand the legality of paying taxes and they understand this duty of paying taxes. . . . But it's a very confusing thing to navigate where this duty that I have, that I'm about to do, it's something that can cost me, you know, family separation and sometimes even my life.").

concern that an untimely motion would prejudice the adjudication of the primary dispute is not present, and a motion for permissive intervention may be granted "long after a case has been terminated." *See Nat'l Children's Ctr.*, 146 F.3d at 1047 (internal citations omitted).

American Oversight's motion is timely by any measure. This action was initiated less than two months ago. ECF No. 1. Documents were filed under seal just four days prior to this filing. ECFs No. 47, 50. A protective order was entered pertaining to two documents, the unredacted memorandum and implementation agreement, on April 21, 2025, shortly after a hearing where documents those may also have been submitted directly to the Court. *See* Protective Order, ECF No. 46. At the time of this filing, decisions on both Defendants' motion to dismiss and Plaintiffs' motion for a preliminary injunction are pending. Accordingly, American Oversight's motion is timely.

### 3. American Oversight's Motion Will Not Cause Undue Delay or Prejudice.

Intervention will not cause undue delay or prejudice because the pending substantive motions in the underlying case are already fully briefed and American Oversight seeks only public access to judicial records.

When considering a motion for permissive intervention, a court will consider whether the motion will cause undue delay or prejudice. Fed. R. Civ. P. 24(b)(3). Here, American Oversight's requested relief—public access to judicial records—is separate from the merits of the principal case. To the extent that the parties to the case may be required to brief the issue of access to judicial records, it should have no effect on the pending motions before the Court, as both Plaintiffs' motion for a preliminary injunction and Defendants' motion to dismiss have been fully briefed. Additionally, it is incumbent on any party seeking to maintain a seal on judicial records to fully demonstrate *why* such records should not be made publicly available. If parties have made those

7

arguments in sealed filings, they would simply be required to make them publicly now. If those arguments have not been made before the Court, briefing on the issue now would just require them to do only what they have been obligated to do all along, so any such effort is not "undue."

### 4. The Requested Relief is Sufficiently Linked with the Underlying Litigation.

American Oversight's requested relief—making publicly available judicial records—is sufficiently linked with the underlying litigation because it seeks the records already filed in this litigation, and American Oversight seeks permissive intervention for that limited purpose.

A motion for permissive intervention for a collateral matter need only meet a relaxed standard for Rule 24(b)'s requirement of a "common issue of law or fact." *See Vanda Pharms.*, 539 F. Supp. 3d at 50 (noting that the D.C. Circuit has "eschewed strict readings of the phrase 'claim or defense,'" embracing a flexible reading of Rule 24(b) "when the proposed third-party intervention does not fit the model of a non-litigant seeking to stake a claim in an ongoing civil action"). In a motion for permissive intervention brought for the purpose of moving for public access to judicial records, "no particularly strong nexus of fact or law need exist" between the primary dispute and the prospective intervenor's motion. *Id.* The "propriety of publicly releasing previously sealed docket entries" is a sufficient "common issue of law or fact" to establish commonality requirements for limited intervention. *True the Vote*, 2024 WL 2803332, at *4 (D.D.C. May 31, 2024) (internal citation omitted).

American Oversight meets the relaxed standard for permissive intervention in this case, as it seeks intervention for the limited purpose of requesting that judicial records under seal or otherwise in the custody of the Court be made public. Because American Oversight meets the requirements for permissive intervention, its motion to intervene should be granted.

8

B. **The Court Should Set Aside its Orders Granting the Motions to Seal.**

The Court should set aside its orders summarily granting Plaintiffs' and Defendants' motions to seal with no written analysis. While "the decision as to access to judicial records is one best left to the sound discretion of the trial court," that discretion must be "exercised in light of the relevant facts and circumstances of the particular case." *U.S. v. Hubbard*, 650 F.2d 293, 316–17 (D.C. Cir. 1980) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 599 (1978)). In exercising that discretion, "it is imperative that [the] court articulate its reasons for electing to seal or not to seal a record." *E.E.O.C. Nat'l Children's Ctr., Inc. ("E.E.O.C. II")*, 98 F.3d 1406, 1410 (D.C. Cir. 1996).

The D.C. Circuit requires a district court, when considering whether to seal judicial records, to apply six factors laid out in *Hubbard*:

> (1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings.

*Id.* (citing *Hubbard*, 650 F.2d at 317-22).

Failure to provide the mandatory detailed written analysis of these factors is reversible error. *See MetLife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 666, 675 (D.C. Cir. 2017) (reversing district court's order granting motion to seal briefs without the required *Hubbard* analysis, even though the court had "state[d] that it had 'reviewed the record and all of the briefs . . . and [found] that large parts . . . should be redacted from the public view'") (internal citation omitted); *Johnson v. Greater Southeast Community Hospital Corp.*, 951 F.2d 1268, 1277 (D.C. Cir. 1991) (when court entered brief order explaining its reasoning without engaging in the required analysis, remanding to "reconsider the need for sealing. . . in light of the *Hubbard*

9

principles"); *see also Primas v. Dist. Of Columbia*, 719 F.3d 693, 699 (D.C. Cir. 2013) ("[W]e have nothing to review because the district court gave no reasons at all. . . .").

Here, both Plaintiffs and Defendants submitted motions for leave to file documents under seal, ECF Nos. 47 and 50. Plaintiffs filed what appeared to be a redacted version of the document, ECF No. 48, while Defendants filed their entire document—their response to Plaintiff's Supplemental Brief—under seal, at ECF No. 50. The Court entered these sealed documents on its docket at ECF Nos. 51 and 52. However, the Court's April 29, 2025 Minute Order granting the motions to seal did not provide the required analysis under *Hubbard*. Nor did it include reasoning "with specific reference to the particular documents or group of documents" to which it applied the *Hubbard* factors. *See Metlife*, 865 F.3d at 675 (quoting *Hubbard*, 650 F.2d at 324). The Court should set aside its April 29, 2025 Minute Order and, for the reasons explained below, make public the documents filed under seal in this case.

### C. The Court Should Make Public the Judicial Records Under Seal.

#### 1. The Documents Are Judicial Records.

The documents sought are judicial records—legal briefs and attachments thereto submitted to the Court in support of the parties' positions on substantive motions—and are therefore subject to the *Hubbard* analysis.

A court must engage in the *Hubbard* analysis if the records themselves are judicial records. That question "depends on 'the role it plays in the adjudicatory process.'" *S.E.C. v. Am. Int'l Grp.*, 712 F.3d 1, 3 (D.C. Cir. 2013) (quoting *United States v. El–Sayegh*, 131 F.3d 158, 163 (D.C. Cir. 1997)). In *El-Sayegh*, the D.C. Circuit noted that "the concept of a judicial record 'assumes a judicial decision,' and with no such decision, there is 'nothing judicial to record.'" *Id.*

Here, American Oversight seeks to unseal all documents submitted to the Court under seal, including the unredacted memorandum of understanding, and a number of filings by Plaintiff and

Defendants related to Plaintiff's Motion for Preliminary Injunction. As each of these documents are "aspects of court proceedings" and "bear[] on monitoring judicial conduct," they are undoubtedly judicial records. *S.E.C.*, 712 F.3d at 5; *see also MetLife*, 865 F.3d at 675 ("common-law right of public access applies to the briefs").

### 2. American Oversight Has a Common Law Right of Access to These Documents under the *Hubbard* Factors.

This Court should lift the seal on non-public judicial records in this case because American Oversight can demonstrate a common law right to access to those records under longstanding D.C. Circuit precedent. Public access to records is critical to "ensuring the integrity of judicial proceedings." *Hubbard*, 650 F.2d at 314–15, and courts have generally recognized the "right to inspect and copy public records and documents, including judicial records and documents," *MetLife,* 865 F.3d at 665 (quoting *Nixon*, 435 U.S. at 597).

The application of the *Hubbard* factors weighs in support of making public the relevant documents.

#### a. There is an Urgent Need for Public Access to the Documents at Issue.

The public has an urgent need to know the contents of the sealed information: what information the IRS intends to disclose to immigration authorities, in contravention of the law and longstanding agency precedent. The prospect of enforcement of the MOU has caused fear and confusion for individuals and communities who have long relied on the government's promise that data submitted to the IRS would not be used against them.[5] Because Defendants' *entire* filing is sealed, *see* ECF No. 52, it is impossible to know what arguments are being marshaled in defense

---

[5] *See, e.g.*, Shoichet and Cohen, *supra* n. 4 (quoting an immigrant rights advocate: "It's scary to think that you are going to be hunted through a method that you have used for years in order to give back to your communities," she says. "And it also begs the question, 'Why would they be using this tactic, which is based on my honesty . . . against me?'")

11

of the underlying MOU. But the MOU itself (or at least, the portions publicly known) has been a subject of substantial national interest, including in major national media.[6]

Key to this inquiry is the "public's need to access the *information that remains sealed*, not the public's need for other information sought in the overall lawsuit." *CNN v. Fed. Bureau. of Investigation*, 984 F.3d 114, 119 (D.C. Cir. 2021) (emphasis added). In *CNN*, the plaintiff sought the unsealing of a redacted declaration filed by a senior-level FBI official explaining why the agency had redacted another set of memos, written by former FBI Director James Comey. *Id.* at 116. While the *CNN* Court acknowledged the intense interest in the Comey Memos themselves, it found there was "little public value" in the particular non-public snippets of information redacted from the agency officials' declaration. *Id.* at 119. That is not the case here, where the parties have made no public demonstration that the specific information redacted in the MOU and within the entirely sealed briefs are not useful for the public's understanding of the case. And "[w]ithout access to the sealed materials, it is impossible to know which parts of those materials" might persuade the Court, and why. *MetLife*, 865 F.3d at 668. For those reasons, the first *Hubbard* factor supports unsealing the documents.

     **b.**  **There was No Previous Public Access to the Documents, which is a Neutral Factor.**

The second *Hubbard* factor is "whether more liberal access should be granted to materials formerly properly accessible on a limited basis through legitimate public channels and to a determination whether further dissemination of already accessible materials can be restrained."

---

[6] *See, e.g.*, Andrew Duehren, *Top I.R.S. Officials Said to Resign After Deal to Give ICE Migrants' Data*, N.Y. Times (Apr. 8, 2025), https://www.nytimes.com/2025/04/08/us/politics/irs-ice-tax-data-deal.html; Joel Rose, *The IRS Finalizes a Deal to Share Tax Information with Immigration Authorities*, NPR (Apr. 8, 2025, 5:59 PM), https://www.npr.org/2025/04/08/g-s1-59056/irs-dhs-information-sharing-deal-immigrants-tax-records; Jacob Bogage & Jeff Stein, *IRS Nears Deal with ICE to Share Addresses of Suspected Undocumented Immigrants*, Wash. Post (Mar. 22, 2025), https://www.washingtonpost.com/us-policy/2025/03/22/ice-irs-immigrants-deport/.

*Hubbard*, 650 F.2d at 318; *see also CNN*, 984 F.3d at 119. However, "where there has been no previous access," this factor is neutral. *Grynberg v. BP P.L.C.*, 205 F. Supp. 3d 1, 3 (D.D.C. 2016) (quoting *Am. Prof'l Agency v. NASW Assurance Servs.*, 121 F. Supp. 3d 21, 24 (D.D.C. 2013)). That is the case here, where none of the documents at issue—Plaintiffs' and Defendants' filings, as well as the unredacted MOU—have been released. As such, this factor is neutral.

### c. No Third-Party Objections Weigh Against Disclosure.

No third party has publicly objected to disclosure of the relevant documents. Only Defendants have opposed American Oversight's motion. While a party-litigant's objection to disclosure may be "noted," a party's objection does "not have the same strength as a third-party objection." *Hyatt v. Lee*, 251 F. Supp. 3d 181, 185 (D.D.C. 2017); *McConnell v. Fed. Election Comm'n*, 251 F. Supp. 2d 919, 932 (D.D.C. 2003) ("litigants to this proceeding have a lesser claim to privacy than third parties"). Here, the absence of third-party objections supports disclosure.

Moreover, the government has not substantiated in the public record any special governmental interest at issue here, such as national security obligation, *see CNN*, 984 F.3d at 119–20, or one that would compromise government sources. *In re N.Y. Times Co.*, Misc. Action No. 21-91 (JEB), 2021 WL 5769444, at *5 (D.C. Cir. Dec. 6, 2021) ("[DOJ] has a unique interest in protecting the integrity of its investigations, and it would be difficult for another third party—such as the source, a witness, or a specific law-enforcement officer—to object without revealing precisely the information the Government seeks to protect."). But here, given the context of previous public filings in this case and the claims at issue in the action, there is no evidence suggesting that the sealed filings implicate a specific investigation or source to be protected, and Defendants would not be able to point an individual whose privacy requires protection as in other cases. As a result, this factor weighs in favor of disclosure.

### d.     No Property or Privacy Interests Weigh Against Disclosure.

It is unlikely that any property or privacy interests are implicated if the documents are disclosed. The key question is whether "secrecy plays an outsized role in the specific context." *CNN*, 984 F.3d at 120. Unlike in other cases, no one has suggested that a specific investigation would be compromised, nor would there be a loss of "ability to obtain truthful information from subjects or witnesses." *NY Times*, 2021 WL 5769444 at *6. Taxpayers themselves already have strong privacy protections, through the IRS' own laws preventing the sort of data-sharing that it now seeks to engage in, with the details under cover of the Court's seal.

### e.     No Prejudice Weighs Against Disclosure.

The government—the only known source of opposition to disclosure—has not publicly demonstrated a "possibility of prejudice." *E.E.O.C. II*, 98 F.3d at 1409. This is not a case where there could be "dire consequences" if sources in an intelligence or law enforcement operation were disclosed, "impair[ing] intelligence gathering and caus[ing] sources to close up like a clam." *CNN*, 984 F.3d at 114 (citing *C.I.A. v. Sims*, 471 U.S. 159, 175 (1985) (cleaned up)). ICE claims that the redactions in the MOU are designated "law enforcement sensitive" because "disclosure of this information would allow third parties to evade or interfere with investigations related to criminal offenses enforced by ICE," and "third parties might be able to manipulate the information provided to the IRS." Decl. of Kevin Coenen ¶ 6, ECF No. 38-1. ICE's argument with regards to sensitive law enforcement is unavailing. In its opposition to Plaintiffs' Motion to Compel, Defendants stated that ICE:

> is not asserting [the law enforcement privilege], but rather [law enforcement sensitive]. . . [which] focuses on protecting *individual items of information* – regardless of whether they are contained in a non-law enforcement file, and even if they did not originate as part of an investigation – **as long as they were originally compiled for law enforcement purposes** and their disclosure would meet the specified threshold for the harm to assert [law enforcement sensitive].

14

Defs.' Opp. Pls.' Mot. Compel Produc. Unredacted Ex. at 5, ECF No. 38 (italics in original; bold added). First, the information originally compiled—"specific information ICE is requesting from IRS," Coenen Decl.¶ 6, ECF No. 38-1—was not compiled for a law enforcement purpose; it is submitted by taxpayers themselves to the IRS. Second, information in the documents that would be made public *is unlikely to contain any information about specific sources*, only categories of information that IRS plans to hand over for enforcement action by ICE. Finally, citing the definition of "law enforcement sensitive information" from an internal agency directive (a directive which itself is entirely redacted on ICE's website[7]), ICE warns that "disclosure . . . would allow third parties to evade or interfere with investigations related to criminal offenses enforced by ICE." Coenen Decl.¶¶ 4–6. Beyond this conclusory statement, ICE has not provided any specific information—at least publicly—to demonstrate why this would be the result, beyond that "third parties might be able to manipulate the information provided to the IRS." *Id.* ¶ 6. Considering the existence of the MOU and accompanying implementation agreement may actually reduce the likelihood that undocumented noncitizens submit taxpayer information altogether, ICE's fears are misplaced. Because the possibility of prejudice cannot exist in this context, this factor weighs in favor of disclosure as well.

### f. The Sealed Documents are Central to the Decision Whether to Grant Relief, Including to Plaintiff's Motion for Preliminary Injunction.

The MOU and both Plaintiffs' and Defendants' legal brief were introduced for the purpose of supporting substantive motions pending before the Court, which weighs in favor of disclosure. When the documents at issue are considered part of the judicial decisionmaking, it "will oftentimes

---

[7] ICE Directive 4003.2, *Safeguarding Law Enforcement Sensitive Information* (May 20, 2014), *available at*
https://www.ice.gov/doclib/foia/policy/4003.2_SafeguardingLawEnforcementSensitiveInfo.pdf.

carry great weight." *CNN*, 984 F.3d at 120. Two of the sealed documents—Plaintiff's Supplemental Memorandum, ECF No. 51, and Defendants' Response, ECF No. 52—were filed intending to persuade the Court to grant (or deny) the requested relief. That in itself weighs in favor of public disclosure. *See N.Y. Times,* 2021 WL 5769444 at *7 ("Although it is not clear from the [protective order] which material most influenced [the Court's] decision to issue the Order and whether that material has now been unsealed, it seems likely that at least some of the redacted information might be among that material.").

In sum, five of the six factors weigh in favor of disclosure (and one is neutral). Because the factors do not rebut the presumption of open access, the Court should order the documents unsealed for the public to view.

### III.  CONCLUSION

For the foregoing reasons, American Oversight respectfully requests that this Court grant its motion to intervene and make available all documents not currently available to the public, including any documents proffered to the Court at the April 16, 2025 hearing that are not on the public docket.

Dated: May 1, 2024

Respectfully submitted,

*/s/ Daniel Martinez*
Daniel Martinez
D.C. Bar No. 90025922
Loree Stark
D.C. Bar No. 90021926
AMERICAN OVERSIGHT
1030 15th Street NW, B255
Washington, DC 20005
(202) 897-2465
danny.martinez@americanoversight.org
loree.stark@americanoversight.org

*Counsel for Prospective Intervenor American Oversight*