UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CENTRO DE TRABAJADORES UNIDOS, et al.,

    Plaintiffs,

    v.

SCOTT BESSENT, in his official capacity as Secretary of the Treasury, et al.,

    Defendants.

Civil Action No. 25-677 (DLF)

**DEFENDANTS' RESPONSE TO AMICUS BRIEFS**

Cambridge Economic Opportunity Committee, Inc., and Center for Economic Development of Southeastern Massachusetts and 105 members of Congress moved for leave (ECF Nos. 53 and 55) on April 29, 2025, to file amicus briefs. The United States did not oppose the requests on the condition it be given seven days after the briefs were filed to respond. ECF No. 53 at 1; ECF No. 55 at 2 ¶ 2. The Court granted the motions on April 30, 2025, and the briefs were filed the same day. *See* ECF Nos. 57 and 58.

The briefs filed by the amici do not raise any new arguments that would alter the Court's analysis of the pending motions for preliminary injunction or the motion to dismiss the Amended Complaint. The amici's summaries of past IRS policy positions and potential consequences stemming from the MOU fail to advance Plaintiffs' claims of standing. CTU, ISD, and Somos still have not demonstrated that at least one of their members will be harmed directly by the release of return information and therefore has individual standing. IAC has still not shown a concrete injury traceable to the United States' conduct necessary to confer organizational

1

standing. Nor does the amici's analysis of Section 6103 aid Plaintiffs in overcoming their standing obstacles.

The amici continue to rely on newspaper reports and unsourced speculation to assert that the IRS is planning to process requests received under Section 6103(i)(2) in large batches rather than undertake a request-by-request approach to ensure the statutory requirements are met. ECF No. 57 at 30 ¶ 24; ECF No. 58 at 24. The MOU never mentions any type of batch production of tax return information. Section Six of the MOU requires ICE to provide individualized information, and Section Five obliges the IRS to "[r]eview each request for completeness and validity." ECF No. 38-1 at 6-7. The amici also take issue with the language in Section Nine of the MOU, which they claim implies tax returns will be released in violation of Section 6103(i)(2). *See* ECF No. 57 at 32 ¶ 30. Section Nine incorporates many of the information privacy safeguards of Section 6103(p)(4), which consistently refers to "returns and return information." ECF No. 38-1 at 10–13. The language of Section Nine of the MOU does not supersede Section 6103(i)(2)'s restriction barring the IRS from releasing "return information other than taxpayer return information." *See also id.* at 15 ¶ 17 ("Any provision of this MOU which conflicts with Federal law will be null and void.").

The amici, like Plaintiffs, claim that the IRS's past statements and actions have led immigrants to believe return information will never be shared with ICE. ECF No. 57 at 9–11. The IRS cannot share information under Section 6103(i)(2) for civil immigration enforcement. Moreover, the fact remains that Section 6103(i)(2) is an exception to the confidentiality mandate for the purposes of non-tax criminal investigations. It does not exclude any particular agency from its authority and does not mandate any specific mechanism or manner for information disclosure. It is a "shall" provision that requires disclosure of certain return information so long

2

as the requesting agency such as ICE follows the statutory requirements of Section 6103(i)(2): if the statute is met, the IRS is obligated to turn over return information other than taxpayer return information.[1] *See* 26 U.S.C. § 6103(i)(2).

        Finally, the members of Congress suggest that the information sharing between ICE and the IRS goes beyond the statutory authorization for releasing tax return information. *See* ECF No. 58 at 16–24. There is nothing in the statutory text of Section 6103(i)(2) preventing the IRS from releasing tax return information to ICE pursuant to an investigation of a criminal offense. Indeed, the IRS must release such information if ICE's request meets the statutory requirements. The members of Congress acknowledge that "Congress has amended § 6103 when it felt that circumstances necessitated tightly bound disclosures." *Id.* at 17. If Congress intended to restrict DHS or ICE from availing itself of the information sharing permitted under Section 6103(i)(2), it could have drafted the exception to identify specific agencies that could receive return information or specific federal crimes that would satisfy the statutory requirements for a request. When Congress amended Section 6103(i)(2) in 1982, it *broadened* the disclosure authority from requiring disclosed information be "material" to the investigation to merely being "relevant." *Compare* 26 U.S.C. § 6103(i)(2)(B)(iv) (1982) (relevance standard) *with* 26 U.S.C. § 6103(i)(2)(D) (1976) (materiality standard). The legislative history shows that Congress broadened the statutory exception out of a concern that the materiality standard was too difficult to meet and thus "had a highly detrimental effect on [the nation's] Federal law enforcement system." 128 Cong. Rec. S11, 588 (1982) (statement of Sen. Samuel Nunn).

---

[1] One additional note for completeness. Notwithstanding the mandatory requirements of Section 6103(i)(2), the IRS cannot disclose return information if the Secretary of the Treasury determines that the release of information "would identify a confidential informant or seriously impair a civil or criminal tax investigation." *See* 26 U.S.C. § 6103(i)(6).

Although the members of Congress cite examples in legislative history of failed efforts to broaden information sharing with DHS and ICE, these are not equivalent to evidence of Congress intending at the time Section 6103(i)(2) was adopted or amended for it not to apply to the agencies. *See* ECF No. 58 at 22–24. "[S]ubsequent legislative history is a hazardous basis for inferring the intent of an earlier Congress. It is a particularly dangerous ground on which to rest an interpretation of a prior statute when it concerns, as it does here, a proposal that does not become law." *Pension Ben. Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 650 (1990) (internal quotation marks and citation omitted). The Court should apply the plain meaning of the statute Congress enacted, which demonstrates that the MOU only provides a framework for the otherwise lawful disclosure of information pursuant to ICE's request.

Thus, the United States requests that the Court deny Plaintiffs' motion for a preliminary injunction and grant its motion to dismiss the Amended Complaint.

Date: May 7, 2025

>*/s/ Andrew J. Weisberg*
>Joseph A. Sergi (D.C. Bar No. 480837)
>Senior Litigation Counsel
>
>Andrew J. Weisberg (N.Y. Bar No. 5616321)
>Trial Attorney
>Tax Division
>U.S. Department of Justice
>P.O. Box 14198
>Washington, DC 20044
>Telephone: (202) 305-0868
>Joseph.A.Sergi@usdoj.gov
>*Counsel for Defendants*

4

## CERTIFICATE OF SERVICE

    I certify that on May 7, 2025, I filed the foregoing Response to Amicus Briefs with the Clerk of Court using the CM/ECF system, which will serve counsel for the movant and all other parties to this action.

                                  */s/ Andrew J. Weisberg*
                                  Andrew J. Weisberg
                                  Trial Attorney, Tax Division
                                  U.S. Department of Justice