## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CENTRO DE TRABAJADORES UNIDOS,
*et al.*,

    *Plaintiffs*,

  v.            No. 25-cv-0677 (DLF)

SCOTT BESSENT, *et al.*,

    *Defendants*.

### MEMORANDUM OPINION & ORDER

Plaintiffs Centro de Trabajadores Unidos, Immigrant Solidarity DuPage, Somos Un Pueblo Unido, and Inclusive Action for the City bring this action seeking declaratory and injunctive relief to prevent the Internal Revenue Service (IRS) from sharing personal tax information with the Department of Homeland Security (DHS) for immigration enforcement purposes. Before the Court is the plaintiffs' Motion for Preliminary Injunction, Dkt. 28. For the reasons that follow, the Court will deny the motion.

## I.  BACKGROUND

The Internal Revenue Code requires taxes to be paid on all income earned in the United States, regardless of the earner's status in the country. Am. Compl. ¶ 39, Dkt. 17. United States citizens file taxes using a Social Security Number. *Id.* ¶ 40. Noncitizens generally cannot obtain SSNs, so they typically register with the IRS to obtain an Individual Taxpayer Identification Number (ITIN). *Id.* ¶ 41. To do so, registrants must provide their full name, address, and other identifying information. *Id.* Under the tax code, those records are kept confidential and may not be shared outside the IRS, unless a particular statutory exception applies. 26 U.S.C. § 6103(a).

As relevant here, one such exception, § 6103(i)(2), allows the head of any federal agency to request tax return information to aid in investigating or preparing for a judicial or administrative proceeding to enforce designated criminal statutes. *Id.* § 6103(i)(2); Am. Compl. ¶ 48. The agency head must first submit the request in writing and must specifically identify the name and address of the taxpayer, the relevant taxable periods, the statutory basis for the enforcement proceeding, and the need for the disclosure. 26 U.S.C. § 6103(i)(2)(B).

The plaintiffs allege that DHS is seeking access to taxpayer information to identify, locate and remove illegal immigrants, in violation of § 6103. Am. Compl. ¶ 35. In support, the plaintiffs point to newspaper articles reporting that DHS requested that the IRS provide identifying records for at least 700,000 illegal immigrants. *Id.* ¶ 36. As alleged, that request was denied. *Id.* ¶ 37. But according to certain media outlets and other unnamed IRS sources, the acting IRS commissioner is "negotiating an agreement" with DHS and is "reportedly close to terms." *Id.* Under the terms of this agreement, as alleged, the IRS would unlawfully provide address information so that DHS can locate illegal immigrants for civil enforcement proceedings. Am. Compl. ¶ 55.

On April 7, 2025, the defendant agencies entered into a Memorandum of Understanding, Dkt. 38-1, which sets forth a process for exchanging information under 26 U.S.C. § 6103(i)(2). As the Memorandum provides, its purpose is to establish procedures enabling "requests for addresses of persons subject to *criminal* investigation." *Id.* § 3 (emphasis added). Consistent with § 6103(i)(2), the head of DHS must first submit a written request to the IRS that satisfies the statutory requirements necessary for disclosure, and only then can the IRS provide DHS with certain tax return information. Memorandum § 5(B) (requiring the IRS to "[r]eview each request

for completeness and validity and return to ICE any requests not meeting the requirements necessary for disclosure pursuant to IRC § 6103(i)(2)").

The plaintiffs are four nonprofit organizations representing the interests of immigrants. Centro de Trabajadores Unidos (Centro) and Immigrant Solidarity DuPage (Immigrant Solidarity) are located in Illinois and work to "build immigrant and worker power" and "advance the dignity of workers." *Id.* ¶¶ 10, 11. Somos Un Pueblo Unidos (Somos) is a Santa Fe, New Mexico nonprofit working to provide "education and legal support" to communities in New Mexico, including immigrant communities. *Id.* ¶ 12. Inclusive Action for the City (IAC) provides low-interest loans to entrepreneurs, including immigrants with ITINs. *Id.* ¶ 13. The plaintiffs seek to enjoin the IRS from disclosing tax information to DHS pursuant to the agencies' agreement. Pls.' Mot. at 2.

## II.    LEGAL STANDARDS

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)). To prevail, a party seeking preliminary injunctive relief must make a "clear showing that four factors, taken together, warrant relief: likely success on the merits, likely irreparable harm in the absence of preliminary relief, a balance of the equities in its favor, and accord with the public interest." *League of Women Voters v. Newby*, 838 F.3d 1, 6 (D.C. Cir. 2016) (citations and internal quotation marks omitted). Where a federal agency is the defendant, the last two factors merge. *See Am. Immigr. Council v. DHS*, 470 F. Supp. 3d 32, 36 (D.D.C. 2020).

## III.    ANALYSIS

The Court's analysis begins and ends with the likelihood of success on the merits. To succeed on the merits, "[a] plaintiff must show a likelihood of success encompass[ing] not only

substantive theories but also establishment of jurisdiction," including standing to sue. *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015) (quoting *Mills v. D.C.*, 571 F.3d 1304, 1308 (D.C. Cir. 2009)). "In the context of a preliminary injunction motion, [courts] require the plaintiff to show a substantial likelihood of standing under the heightened standard for evaluating a motion for summary judgment." *Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity,* 878 F.3d 371, 377 (D.C. Cir. 2017) (cleaned up). The plaintiff "bear[s] the burdens of production and persuasion." *Qualls v. Rumsfeld*, 357 F. Supp. 2d 274, 281 (D.D.C. 2005) (citing *Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir. 2004)). A plaintiff's "inability to establish a substantial likelihood of standing requires denial of the motion for preliminary injunction." *Food & Water Watch*, 808 F.3d at 913.

### A.    Standing

To establish standing, a plaintiff must show: (1) an "injury in fact"; (2) a "causal connection between the injury" and the challenged action; and (3) a likelihood that the "injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal quotation marks omitted). When an organization seeks to bring suit on behalf of its members—that is, to assert associational standing—it must show that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wa. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). An organization's members have standing to sue in their own right when they can demonstrate that they would suffer an "injury in fact" that is "(a) concrete and particularized" and "(b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560–61 (cleaned up).

Claims for declaratory or injunctive relief carry "a significantly more rigorous burden to establish standing." *Swanson Grp. Mfg. LLC v. Jewell*, 790 F.3d 235, 240 (D.C. Cir. 2015) (internal quotation marks omitted). That is because when "plaintiffs seek declaratory and injunctive relief, past injuries alone are insufficient to establish standing." *Dearth v. Holder*, 641 F.3d 499, 501 (D.C. Cir. 2011). Instead, a plaintiff must show an "ongoing injury" or "immediate threat of injury." *Id.*

Three of the plaintiff organizations—Centro, Immigrant Solidarity, and Somos—assert associational standing on behalf of their members. Rough Hr'g Tr. at 7. Because "a plaintiff must demonstrate standing for each claim he seeks to press," *Davis v. FEC*, 554 U.S. 724, 734 (2008), the plaintiffs must establish that each alleged injury is imminent. The plaintiffs allege that their members will be injured by (1) the IRS sharing address information with DHS, in violation of 26 U.S.C. § 6103; (2) DHS using the information for civil enforcement purposes; and (3) the IRS disrupting settled reliance interests without due consideration. Pls.' Mot. at 15, 17; Rough Hr'g Tr. at 10. To assess whether the plaintiffs have standing, the Court will assume that the IRS's decision to share address information violates § 6103. *Tanner-Brown v. Haaland*, 105 F.4th 437, 444–45 (D.C. Cir. 2024) (assuming for the standing analysis the legal merits of plaintiffs' alleged injury). For the reasons that follow, all three plaintiffs have associational standing to challenge whether the IRS acted arbitrarily and capriciously by entering into an information sharing agreement with DHS, as reflected in the Memorandum, and Somos has standing to challenge the lawfulness of the agreement.

### 1. IRS Disclosure of Information

Unlike at the Temporary Restraining Order stage, Somos has established an imminent and particularized risk of injury based on its claim that the IRS is poised to share information with

DHS, in violation of 26 U.S.C. § 6103. The Court now has the benefit of the Memorandum which explicitly authorizes the sharing of certain tax return information for criminal immigration enforcement purposes. Memorandum § 1. Somos, an organization that represents the interests of immigrants, has submitted a declaration attesting that its members have provided information to the IRS and are currently subject to final removal orders, *see, e.g.*, Diaz Decl. ¶ 9, Ex. G, Dkt. 28-8.[1] This evidence establishes that the IRS and DHS intend to share taxpayer information and that this information is likely be used against Somos' members. This is a cognizable injury that is both traceable to the IRS's interpretation of § 6103 and redressable by a court decision prohibiting the IRS from interpreting the statute in the manner that is contemplated by the IRS's agreement with DHS. And it is not necessary that Somos' members participate in this lawsuit. *Hunt*, 432 U.S. at 343. Accordingly, Somos has established associational standing to challenge the information-sharing agreement, and the Court will reach the merits of its claim that the agreement is unlawful under § 6103.

2.      DHS Use of Information for Civil Immigration Enforcement Proceedings

The plaintiffs next claim that IRS disclosures will be used to "facilitate the *civil* enforcement of immigration laws," in violation of § 6103. Pls.' Mot. at 14 (emphasis added); Am. Compl. ¶¶ 63, 65. The Court agrees that requesting and receiving information for civil enforcement purposes would constitute a cognizable injury, but none of the organizations have established that such an injury is imminent. As the plaintiffs acknowledge, the Memorandum only allows sharing information for *criminal* investigations and "the terms on the page [of the

---

[1] By contrast, Centro and Immigrant Solidarity submitted declarations from members stating that they had provided information to the IRS, but not that they were subject to final removal orders. *See* Doe Decl. ¶ 5, Ex. I, Dkt. 28-10; Doe Decl. ¶¶ 3–6, Ex. J, Dkt. 28-11; Doe Decl. ¶ 5, Ex. H, Dkt. 28-9. Thus, they have not established that any member is likely to be imminently subject to the information-sharing agreement.

Memorandum] do appear to comply with the requirements" of § 6103(i)(2). Rough Hr'g Tr. at 12. Even so, they argue that it is not "plausible" that DHS has the resources to conduct individualized criminal investigations on the large numbers of immigrants it seeks to remove from the United States. *Id.* at 15. For support, they rely on a newspaper article that reports that DHS is seeking location information for 700,000 or alternatively seven million, illegal immigrants, Pls.' Mot. at 15; Reply at 5, Dkt. 32. Plaintiffs also point to Executive Order No. 14161, which directs agencies to take "immediate steps to identify, exclude, or remove aliens illegally present in the United States." Memorandum, §1(a) (citing 90 Fed. Reg. 8451 (Jan. 20, 2025)).

On this limited record, the Court cannot assume that DHS intends to use the shared information to facilitate civil rather than criminal proceedings. *Waite v. Macy*, 246 U.S. 606, 609 (1918). The language of the Memorandum is clear: It authorizes the sharing of information related to individuals who are "under criminal investigation for violations of one or more specifically designed Federal criminal statutes," Memorandum § 1(c), and it affirms that its specific purpose is to assist DHS in criminal investigations and proceedings, *id.* § 3. The government's representations at the hearing confirm this explicit understanding. Counsel for the government unequivocally assured the Court that if the IRS received a request from DHS for information to support a civil proceeding, the IRS would deny that request. *See, e.g.,* Rough Hr'g Tr. at 58. Counsel also confirmed that, should DHS decide to abort the criminal investigation and exclusively pursue deportation, DHS would not be allowed to rely on the information from the IRS and would have to return it. *Id.* at 61. At this stage, the plaintiffs have not established that it is likely that IRS disclosures will be used to "facilitate the civil enforcement of immigration laws," Pls' Mot. at 14, in violation of § 6103, and thus, they lack standing to raise this claim.

3.    Arbitrary and Capricious IRS Action

The plaintiffs do, however, have standing to pursue their claim that the IRS acted arbitrarily and capriciously in reversing its position on the sharing of tax information with DHS. The plaintiffs offer declarations that their members relied on the IRS's past assurances that tax information would not be shared for immigration enforcement purposes. *See, e.g.*, Doe Decl. ¶ 6, Ex. H; Doe Decl ¶ 6, Ex. I. These individuals now fear that they will be harmed for relying on those assurances and for filing their taxes as obligated. Ex. H ¶ 6; Ex. I ¶ 6–7. And if the IRS reverses course without properly considering their reliance interests, as they allege, the plaintiffs' members will suffer injury. This injury is both traceable to the IRS's change in position and redressable by a court order requiring the IRS to consider the plaintiff members' reliance interest before implementing the Memorandum. The Court therefore will proceed to the merits on the claim that the defendants acted arbitrarily and capriciously by changing their policy to permit information sharing between the IRS and DHS.

\*    \*    \*

In sum, Centro, Immigrant Solidarity, and Somos have established standing to challenge the agencies' agreement to share information as arbitrary and capricious, and Somos alone has established standing to challenge the agreement as in excess of the IRS's statutory authority. The Court need not determine at this early stage whether IAC also has organizational standing to bring these claims. For the reasons stated above, all of the plaintiffs, including IAC, lack standing to pursue their claim that the agencies will share information for *civil* enforcement purposes, in violation of § 6103.

B.      **Merits**

Turning to the merits, the plaintiffs argue that the information sharing agreement between the IRS and DHS violates the Administrative Procedures Act in two ways—it is "not in accordance with law" and was entered into "arbitrarily" and "capriciously." 5 U.S.C. § 706(2)(A).[2]  According to the plaintiffs, § 6103(i)(2) does not allow the IRS to disclose *only* address information to DHS, as the Memorandum provides.  Pls.' Mot. at 14; Pls.' Suppl. Mem. at 3, Dkt. 48.  The plaintiffs further argue that the Memorandum is arbitrary and capricious because it constitutes a change in policy and the agency failed to adequately consider the reliance interests of immigrant taxpayers or provide a reasoned explanation.  Pls.' Mot. at 17–18.

The Court disagrees.  Section 6103 mandates that the IRS disclose address information to DHS, if DHS complies with the statutory provision.  Thus, the plaintiffs cannot show a likelihood of success on the merits.

1.      *Accordance with Law*

The Court begins, as it must, with the statutory text.  Under § 6103(i)(2), the IRS can share limited tax return information with other agencies if the information may assist in criminal enforcement proceedings or any "investigation which may result in such a proceeding."  26 U.S.C. § 6103(i)(2)(A).  To obtain information, the head of the federal agency conducting an investigation must first submit a written request to the Secretary of the Treasury identifying

> "(i) the name and address of the taxpayer with respect to whom the requested return information relates; (ii) the taxable period or periods to which such return information relates; (iii) the statutory authority under which the proceeding or investigation … is being

---

[2] The plaintiffs also raise non-statutory *ultra vires* claims.  The Court need not address those claims because "if the plaintiff's claims would fail review under the APA," then those claims necessarily "could not succeed under" ultra vires review, which has an even "narrow[er] scope[.]"  *Trudeau v. FTC*, 456 F.3d 178, 190 (D.C. Cir. 2006).

conducted; and (iv) the specific reason or reasons why such disclosure is, or may be, relevant to such proceeding or investigation."

*Id.* § 6103(i)(2)(B)(i)–(iv). If the request meets those requirements, the IRS must comply with it. *See* § 6103(i)(2)(A) (providing that the Secretary "shall disclose" the requested information).

Not all tax return information, however, can be disclosed under the statute. Section 6103(i)(2) exempts "taxpayer return information" from disclosure under this provision. *Id.* § 6103(i)(2)(A). And a related provision defines taxpayer return information as return information filed "by or on behalf of the taxpayer to whom such return information relates." *Id.* § 6103(b)(3). In other words, the IRS can disclose information it obtains itself (such as through audits), but not information it obtains exclusively from the taxpayer (such as a tax return filed by the taxpayer). Despite this broad prohibition on the disclosure of taxpayer return information, § 6103(i)(2)(C) allows one exception: "For purposes of this paragraph, a taxpayer's identity shall not be treated as taxpayer return information." *Id.* § 6103(i)(2)(C). A taxpayer's identity is further defined as the taxpayer's name, address, taxpayer identifying number, or some combination thereof. *Id.* § 6103(b)(6). To summarize, the IRS must disclose limited taxpayer identity information (e.g., the taxpayer's name and address) to assist another agency in criminal investigations and proceedings, if the agency has satisfied the statutory prerequisites in its written request.

The challenged Memorandum outlines the procedures that DHS and the IRS must follow when the agencies share information under 26 U.S.C. § 6103(i)(2)(B). *See* Memorandum §§ 5–6. The Memorandum explicitly states that the IRS must first determine whether DHS's request meets the statutory requirements necessary for disclosure, and it can provide information only if it falls within an exception. *Id*. § 5(B) (requiring the IRS to "[r]eview each request for completeness and validity and return to ICE any requests not meeting the requirements necessary for disclosure pursuant to IRC § 6103(i)(2)"). The Memorandum also explains that its purpose is to establish

procedures enabling "requests for addresses of persons subject to *criminal* investigation." *Id.* § 3 (emphasis added).

The plaintiffs concede that the statute requires the IRS to share certain return information with DHS for the purposes of enforcing identified criminal statutes, if DHS submits a proper request. Rough Tr. at 11; *see* 26 U.S.C. § 6103(i). Nonetheless, they contend that § 6103(i)(2) does not allow the IRS to provide *only* address information in response to a DHS request. Pls.' Mot. at 14; Rough Hr'g Tr. at 10. According to the plaintiffs, the provision authorizes the IRS to disclose a taxpayer's address only where other information relevant to a criminal investigation is sought. Pls.' Suppl. Mem. at 2.

The plaintiffs' reading of § 6103(i)(2) does not comport with the text of the statute. By its plain language, the statute mandates that the IRS share a taxpayer's name and address with another agency, as long as its request for information is complete and valid and "meets the requirements of [§ 6103(i)(2)(B)]." 26 U.S.C. § 6103(i)(2)(A). The Court cannot read additional restrictions into the statute's clear text.

Resisting this conclusion, the plaintiffs rely on two internal IRS publications that purportedly prohibit the IRS from releasing address information under this provision. *See* I.R.M. 11.3.28.5(4) (July 23, 2018) ("Requests for addresses only cannot be honored because IRC 6103(i)(2) requires that the requester provide an address.")[3]; IRS Publication No. 4639, *Disclosure & Privacy Law Reference Guide* at 5-4 (Oct. 2012 ed.) ("Requests under section 6103(i)(2) seeking only taxpayers' addresses do not comply with the section."). The meaning of this language is

---

[3] Presently, the Internal Revenue Manual discusses address-only requests in a different sub-section of the manual and uses different language than that cited by the plaintiffs. *See* I.R.M. 11.3.28.4(5) (Apr. 17, 2025) ("Requests for addresses only are invalid because IRC 6103(i)(2) requires that the requester provide an address").

unclear.  *See* Gov't's Reply at 7, Dkt. 49 (noting that the quoted statement from the Internal Revenue Manual "may well anticipate another agency's request that does not include the taxpayer's address as required by Section 6103(i)(2)(B)(i)" and the quoted statement from Publication 4639 "may presume the requester did not provide the address as the statute requires"). But even accepting the plaintiffs' interpretation of these internal IRS manuals, they cannot supplant the plain meaning of the statute.  For one, the manuals do not have the force of law. *Marks v. Commissioner*, 947 F.2d 983, 986 n.1 (D.C. Cir 1989); IRS Publication No. 4639, at iii ("This guide was prepared for reference purposes only; it may not be used or cited as authority for setting or sustaining a legal position.").  For another, the Court is not obligated to defer to the IRS's interpretation of the statute.  *See Loper Bright Enters. v. Raimundo*, 603 U.S. 369, 400 (2024). The Court instead must independently interpret the statute's plain meaning.  *Id.*  As explained above, the plain language of § 6103(i)(2) allows DHS to request address information as long as DHS first provides the taxpayer's name, address, and other requisite information in its written request.

The plaintiffs further argue that § 6103(i)(2) cannot be used to locate individuals because another provision of the statute, § 6103(i)(5) (the "fugitive" provision), provides the only mechanism for using tax records to locate individuals.  Pls.' Mot. at 14.  Although a statute's text should be interpreted in the context of the whole statute, *see* Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts* 167 (2012); Pls.' Motion at 14, § 6103(i)(5) serves an entirely different purpose than § 6103(i)(2).  It permits the Department of Justice to obtain vastly more information from the IRS—a taxpayer's tax return or taxpayer return information—as opposed to just a taxpayer's name and address.  But to obtain such extensive tax return information, the Department of Justice must first obtain a court order and a federal arrest

warrant for the fugitive. *Id.* § 6103(i)(5)(B). That the fugitive provision authorizes the IRS to release more extensive tax return information to the Department of Justice (assuming it meets the more onerous prerequisites in § 6103(i)(5)(B)) does not preclude the IRS from releasing a taxpayer's name and address to an agency (assuming it satisfies the much less demanding procedure set forth in § 6103(i)(2)). These two statutory provisions establish separate information sharing mechanisms for different but potentially overlapping purposes.

The plaintiffs also invoke historical context—including earlier versions of the statute, legislative history, and other internal Treasury memoranda, to support their narrow interpretation of § 6103(i)(2). *See generally* Pls.' Suppl. Mem. at 1–7. But as explained, supra at 12, internal memoranda cannot override the plain meaning of the statute. And "when a statute's language is plain on its face, courts do not ordinarily resort to legislative history." *Pub. Citizen, Inc. v. Rubber Mfrs. Ass'n*, 533 F.3d 810, 818 (D.C. Cir. 2008) (internal quotation marks omitted). For the reasons stated, the text of § 6103(i)(2) is clear—the provision plainly exempts taxpayer address information from the general prohibition on sharing taxpayer return information and requires that information to be disclosed upon a valid written request. As long as the agency has a name and an address for a taxpayer, it can request address and name information from the IRS to assist the requesting agency in a criminal investigation or proceeding, and the IRS must comply.

Although the plaintiffs do not argue that the government's interpretation of § 6103(i)(2) is absurd, *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1068 (D.C. Cir. 1998) (quoting *Holy Trinity Church v. United States*, 143 U.S. 457, 459–60 (1892)), they question its reasonableness. Rough Hr'g Tr. at 22–24. As they argued at the hearing, there would be no reason for an agency to request a taxpayer's address information from the IRS if the agency already had it. *Id.* But as the government explained, there are a number of reasons why such information could be helpful to

DHS. For instance, if DHS is investigating an immigrant for remaining 90 days past a final removal order, a recent address could confirm that the immigrant did in fact overstay the order. *See* Rough Hr'g Tr. at 59; *see also* 8 U.S.C. § 1253(a)(1). An address could also confirm that an individual re-entered the U.S. *Id.* at 54, 60. And if a final removal order was issued in absentia, DHS might send a notice letter to ensure that the immigrants was aware of the order. *See* 8 U.S.C. § 1253(a)(1).

Putting aside the reasonableness of the agency's current interpretation of the statute, the Court's duty is to exercise independent judgment in determining its meaning. *See Loper Bright*, 603 U.S. at 400. Under the statute, the IRS must comply with an agency's request for information so long as the agency has complied with the statutory prerequisites. Thus, even in the absence of the information sharing memorandum between the IRS and DHS, the IRS would be statutorily required to release requested information if DHS met the requirements of § 6103(i)(2). Because the information sharing agreement is consistent with § 6103(i)(2), the plaintiffs cannot establish success on the merits of their APA challenge.

### 2.    *Arbitrary or Capricious*

The plaintiffs further claim that IRS acted arbitrarily and capriciously by changing its position on whether it can lawfully provide address information to DHS without considering the immigrant taxpayers' reliance interests. Am. Compl. ¶ 69. In support, the plaintiffs again rely on IRS guidance publications, IRM 11.3.28.5 and IRS Publication No. 4639, and similar public assurances in which the IRS stated that it lacked "authorization under this provision to share tax data with ICE." Pls.' Mot. at 13 (citing Maria Sacchetti, *Undocumented and Paying Taxes, They Seek a Foothold in the American Dream*, Wash. Post. (Mar. 11, 2017), https://perma.cc/QU33-EYWM).

As noted, however, the IRS guidance documents can be read another way.  *See supra* 11-12.  On the government's reading, these internal memoranda do not categorically bar the IRS from sharing information with another agency so long as the agency first provides a taxpayer's name and address and satisfies the other statutory requirements, 26 U.S.C. § 6103(i)(2); Rough Hr'g Tr. at 47–48.  The IRS's public statements similarly affirm that taxpayer information must be kept confidential and can only be disclosed under particular statutory conditions.[4]   Under this interpretation, the IRS has not reversed course.

But even assuming that the IRS has changed its position, this type of policy change is not actionable under the APA because the cited IRS manuals do not create binding rules.  *See* 5 U.S.C. § 553(b)(A); *Syncor Int'l Corp. v. Shalala*, 127 F.3d 90, 93 (D.C. Cir. 1997).  They are instead nonbinding policy statements that set out a procedure for information requests.  *Id*.  This is especially true here because § 6103(i)(2) does not give the IRS the discretion to turn down a lawful request for information.  As the Court has found, § 6103(i)(2) allows DHS to obtain address information from the IRS, as long it first provides the IRS with the taxpayer's name and an address and satisfies the other statutory criteria.  In such circumstances, the agency "*shall* disclose return information," 26 U.S.C. § 6103(i)(2)(A) (emphasis added), i.e., name and address information, *id.* § 6103(i)(2)(C), to the agency.  Any substantive change under the challenged Memorandum thus stems not from the IRS's change in position but from the Administration's decision to use certain statutorily authorized tools to further criminal investigations.  Because the plaintiffs have not established that the Memorandum constitutes a reviewable change in agency action under the

---

[4] The plaintiffs rely on a newspaper article quoting a statement from the IRS, Sacchetti, *Undocumented and Paying Taxes, They Seek a Foothold in the American Dream*, Wash. Post. (Mar. 11, 2017), but neither party has been able to locate or provide the underlying IRS report that the article references, *see* Rough Tr. at 46.

APA, they have not shown a substantial likelihood of success on their claim that the IRS acted arbitrarily and capriciously by reaching an agreement with DHS.

*       *       *

At its core, this case presents a narrow legal issue: Does the Memorandum of Understanding between the IRS and DHS violate the Internal Revenue Code?  It does not.  The plain language of 26 U.S.C. § 6103(i)(2) mandates disclosure under the specific circumstances and preconditions outlined in the Memorandum.  For this reason, the plaintiffs have failed to show they are likely to succeed on their claims.  Accordingly, it is

**ORDERED** that the plaintiffs' Motion for Preliminary Injunction, Dkt. 28, is **DENIED**.

DABNEY L. FRIEDRICH
United States District Judge

May 12, 2025

16